Coleman W. Watson, Esq.
Watson LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801.
coleman@watsonllp.com

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BARBARA BERNIER, §§§ | |
| Plaintiff, § | Case No.: 6:16-cv-00970-RBD-TBS |
| vs. §§ | |
| INFILAW CORPORATION; CHARLOTTE SCHOOL OF LAW, LLC, §§§ | **MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT** |
| Defendants. §§§§ | |

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 1
Case No.: 6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

Relator, BARBARA BERNIER, pursuant to M.D. Fla. R. 3.01(b), files this memorandum of law in opposition to the motion to dismiss amended complaint, Doc. 53, served by Defendants, INFILAW CORPORATION ("Infilaw") and CHARLOTTE SCHOOL OF LAW, LLC ("CSOL"), and states as follows:[1]

## I.   INTRODUCTION

Defendants do not argue against the allegations that are actually alleged in the amended complaint; instead, they argue against what they would *like* them to be.  To touch the issue squarely on the chest, the motion to dismiss is nothing more than Defendants' delicate attempt to use a scalpel to dissect certain facts, out of context, to have this court conclude that Bernier is merely a stranger to the allegations in the lawsuit who seeks to capitalize on Defendants' fraud, pursuant to the award provisions of the False Claims Act, 29 U.S.C. § 3729, *et seq.* (the "FCA").  This, of course, is divorced from the facts that are *actually alleged* in amended complaint.  The motion to dismiss is due to be denied, or alternatively, the court should grant leave to amend.

## II.   BACKGROUND

Infilaw and CSOL are both for-profit corporation entities involved in legal education.  Doc. 48 at 9, 15.  As for-profit institutions, <u>investors</u>, not students, are top-of-mind.  *Id.* at 9.  Infilaw touts itself as serving the underserved (*i.e.*, minorities), but in

---

[1] On October 23, 2017, the court entered an order permitting Bernier to serve an opposition to Defendants' motion to dismiss the complaint that may be up to twenty-five pages in length.  *Cf.* M.D. Fla. R. 3.01(d) (allowing twenty pages for opposition briefs).  Bernier filed an amended complaint that mooted the initial motion to dismiss; however, the undersigned assumes the court's leave to serve an opposition up to twenty-five pages in length applies equally to the motion to dismiss the <u>amended</u> complaint.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 2
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

reality, Infilaw takes advantage of the underserved for a handsome profit.  *Id.* at 10.

Infilaw owns several law schools, including CSOL.  *Id.* at 11.

CSOL gained provisional accreditation from the American Bar Association

("ABA") in 2008 and full accreditation in 2011.  *Id.* at 16.  After full accreditation, CSOL

was eligible to participate in the United States Department of Education's (the "DOE")

student loan programs, implemented under Title IV of the Higher Education Act ("Title

IV"), 20 U.S.C. § 1070, *et seq.*, and thereafter entered into an initial Program

Participation Agreement ("PPA") with the DOE in exchange for distribution of federal

financial aid under Title IV.  *Id.*  After attaining full accreditation, CSOL, controlled by

Infilaw, began intentionally and recklessly admitting academically underqualified

students and repeatedly retained students who should have otherwise been dismissed for

lack of satisfactory progress.  Doc. 48 at 17.

CSOL hired Bernier as a professor of law on January 1, 2013.  *Id.* at 2.  In this

capacity, CSOL required Bernier to directly engage in various departments, including,

but not limited to, CSOL's financial aid and admissions departments.  *Id.*  Bernier's role

essentially morphed into a quasi-administrative/faculty role because she was exposed to

many of CSOL's policies and procedures, which was atypical for a law school professor.

*Id.*  Indeed, Bernier gained intimate knowledge as to many of Defendants' programs,

including, but not limited to, CSOL's for-profit marketing and recruiting functions, trust

accounting, and manipulation of its bar exam and employment statics.  *Id.* at 10, 18, 21.

CSOL entered into the initial PPA and made subsequent re-certifications of same

with deliberate ignorance or reckless disregard for CSOL's contractual, statutory, and

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 3
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

regulatory duties and obligations under Title IV.  Doc. 48 at 35–38.  To be sure, despite the PPA, CSOL failed to maintain accreditation standards set by the ABA and engaged in practices that violate the incentive compensation ban that is prohibited by Title IV.  *Id.* at 5, 19, 20, 35–38.  CSOL also awarded gift aids to students, but deliberately failed to deduct the amount of those gift aids from financial aid that it received from the DOE.  *Id.* at 22.  The CSOL Dean manipulated the grading structure at the school so that CSOL could represent to the DOE that certain students were making satisfactory academic progress and present financial aid claims to the Government for payment.  *Id.* at 23. CSOL also effectively changed students' grades by deleting them altogether and allowing certain students in a sense to "start over" at law school and, of course, borrow more federal student aid from the Government.  *Id.* at 25.  Predictably, this led to financial disaster for students who received crushing amounts of non-dischargeable debt.  *Id.* at 15.

The abuses do not end here.  CSOL also manipulated employment statistics and Bar exam passage rates, in a carefully built mouse-trap designed to mislead prospective students and cause them to enroll at CSOL.  *Id.* at 28.  ***The formula was elementary: more students, more money.***  Upon CSOL receiving federal student aid from the DOE, Infilaw routinely raided CSOL's trust account and deplete all funds for its own use, only to return the funds on the eve of mandatory distributions due to students.  Doc. 48 at 14.

Bernier met with the Government in April 2016, and during this meeting she voluntarily disclosed the facts underlying this lawsuit.  *Id.* at 11.  Bernier, at that time, also served the requisite written disclosure on the Government, as required by the FCA, which contained a list of over ten witnesses and documents to support the allegations in

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 4
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

the disclosure.  *Id.*  Bernier filed suit in June 2016, under seal.  Doc. 1.  The Government

launched an investigation into Bernier's claims and interviewed witnesses identified by

Bernier.  In December 2016, the DOE stripped CSOL of the ability to continue to

participate in Title IV programs when it became aware of CSOL's failure to satisfy

conditions of payment.  Doc. 48 at 39.  The DOE also found that CSOL was out of

compliance with ABA standards and that the noncompliance was both "substantial" and

"persistent."  *Id.*  Compounding matters further, the DOE found that CSOL made

"substantial misrepresentations" regarding the nature of its academic programs.  *Id.*

Bernier filed an amended complaint in November 2017.  Doc. 48.  On December

4, 2017, Defendants filed the motion to dismiss.  Doc. 53.  Defendants' arguments for

dismissal are that (1) the amended complaint fails to show that Bernier has knowledge of

the alleged fraud; (2) the allegations are barred by the FCA's public disclosure bar; (3)

the amended complaint fails to comport with Rules 8(a) and 9(b); and (4) the FCA

conspiracy claims is barred by the intra-corporate doctrine.  *See id.*

## III.   LEGAL STANDARD

The Rule 12(b)(6) dismissal standard is well known to this court.  Simply put,

"[d]ismissal for failure to state a claim is appropriate if the facts as pleaded fail to state a

claim for relief that is 'plausible on its face.'"  *Hunafa v. Schaeffer*, No. 8:11-cv-1419-T-

30AEP, 2011 WL 3627691, at *1 (M.D. Fla. June 29, 2011) (internal citations omitted).

In the context of FCA claims, a complaint must satisfy the same Rule 8 pleading

requirements that are required in any other federal case.  Rule 8 demands only that a

complaint contain "a short and plain statement of the claim showing that the pleader is

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 5
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

entitled to relief." Fed. R. Civ. P. 8(a)(2).  Because FCA claims sound in fraud, FCA

plaintiffs must also plead allegations that satisfy Rule 9(b).  *United States ex rel. Clausen*

*v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (recognizing that a FCA

action must state with particularity the circumstances constituting fraud).  Generally, to

plead a false claim with particularity, "a Relator must identify the particular document[s]

and statement[s] alleged to be false, who made or used it, when the statement was made,

how the statement was false, and what the defendants obtained as a result."  *United States*

*ex rel. Matheny v. Medco Health Sol., Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012).

## IV.    ARGUMENTS AND AUTHORITIES

### A.    The Amended Complaint Satisfies Both Rules 8(a) and 9(b) Because It Pleads All Requisite FCA Elements Under The Implied False Certification Theory Recognized By *Escobar*.

The FCA permits private persons, known as relators, to file civil actions in federal

court, known as *qui tam* actions, to recover damages on behalf of the United States from

any person who "knowingly presents, or causes to be presented, to an officer of employee

of the United States Government . . . a false or fraudulent claim for payment or approval;

knowingly makes, uses, or causes to be made or used, a false record or statement to get a

false or fraudulent claim paid or approved by the Government; [or] conspires" to present

false claims or records to the Government.  31 U.S.C. § 3729(a)(1).

Relators may establish FCA liability under any of several theories, including the

express false certification theory, *United States ex rel. Lobel v. Express Scripts, Inc.*, 351

Fed. Appx. 778, 779 (3d Cir. 2009); the implied false certification theory, *United States*

*v. Everglades Coll., Inc.*, 855 F.3d 1279, 1283 (11th Cir. 2017); and the fraud by

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 6
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

inducement theory, *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006).  No matter the theory under which a FCA plaintiff hauls a defendant into federal court, all FCA actions share the same essential elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false.  *See United States ex rel., Kaimowitz v. Ansley*, 250 F. App'x. 912, 915 (11th Cir. 2007).  The amended complaint sufficiently alleges all three elements under both Rules 8(a) and 9(b), under an implied false certification theory.

Until last year, the circuit courts were split as to whether the implied certification theory can be a basis for FCA liability.  And even the circuit courts that adopted the theory disagreed about the extent to which it can give rise to FCA liability.  The Seventh Circuit, *United States ex rel. Nelson v. Sanford-Brown Ltd.*, 788 F.3d 696 (7th Cir. 2015), rejected the implied certification theory altogether, reasoning that only express false statements can render a claim "false or fraudulent" under the FCA.  Other circuits such as the Second accepted the theory, *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001), but limited its application to FCA claims where defendants failed to disclose violations of expressly designated conditions of payment.  Finally, some circuits, such as the District of Columbia Circuit, *United States v. Sci. Apps. Int'l Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010), adopted an even broader approach, holding that FCA claims can proceed under the implied false certification theory so long as the claims are based on a defendant's alleged non-compliance with a contractual or statutory provisions or

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 7
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

regulations that are material to the Government's payment decision, regardless of whether the violations were expressly designated as conditions of payment.

The Supreme Court resolved the circuit split in June 2016, *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), and opined on the validity and scope of the implied false certification theory. *Escobar*, which is binding authority on this court, holds that (1) the implied false certification theory can provide a basis for FCA liability, thereby <u>abrogating</u> *Sanford–Brown, Ltd.* and its progeny from the Seventh Circuit (cases on which Defendants' papers rely heavily) and (2) the FCA does not limit liability only to instances where a defendant fails to disclose a violation of a contractual, statutory, or regulatory provision that the Government expressly designated a condition of payment, also <u>abrogating</u> *Straus* and its progeny from the Second Circuit. Effectively, *Escobar* adopted the District of Columbia Circuit's broad approach.

*Escobar* changed the landscape of FCA liability with respect to the implied false certification theory, and the law is now established that when a defendant submits a claim to the Government, the defendant impliedly certifies compliance with <u>all</u> conditions of payment. *Escobar*, 136 S. Ct. at 1999. So said the *Escobar* Court:

> Specifically, liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading.
>
> We further hold that False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment. Defendants can be liable for violating requirements even if they were not expressly designated as

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 8
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

conditions of payment.  Conversely, even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability.  What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.

*Escobar*, 136 S. Ct. at 1995–96.

Significantly, post-*Escobar*, federal courts have applied the implied false certification theory to claims, as here, that are based on alleged violations of Title IV. *See, e.g.*, *United States ex rel. Laporte v. Premiere Educ. Group, L.P.*, No. cv 11-3523 (RBK/AMD), 2017 WL 3471163, at *2 (D.N.J. Aug. 11, 2017) (applying the *Escobar* materiality standard to alleged Title IV violations); *Rose v. Stephens Inst.*, No. 09-cv-05966-PJH, 2016 WL 5076214, at *5 (N.D. Cal. Sept. 20, 2016) (discussing, at length, whether the Title IV incentive compensation ban is material under *Escobar*); *United States v. Beauty Basics Inc.*, No. 2:13-cv-1989-VEH, 2016 WL 3519365, at *3 (N.D. Ala. June 28, 2016) (finding that pleading at issue did not contain sufficient factual matter about "specific representations about the goods or services provided").  Nowhere in the motion to dismiss do Defendants brief this post-*Escobar* Title IV case law.

      i.   The amended complaint adequately alleged a false or fraudulent claim because financial aid requests are contained with the FCA's definition of "claim".

The first of the three FCA elements is satisfied when a FCA plaintiff adequately alleges a false or fraudulent claim.  A "claim" includes direct requests for payment by the Government as well as reimbursement requests made to the recipients of federal funds under a federal benefits program.  31 U.S.C. § 3729(b)(2)(A).  CSOL, through entry of its PPAs, and re-certifications of its obligations in same, submitted false information and

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT - 9
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

records for certifications of compliance with Title IV and its implementing regulations.

These submissions to the Government represented that CSOL had complied with all

federal requirements for Title IV funding.  CSOL, however, violated Title IV by

providing faculty members with incentive-based compensation for enrollment activities,

Doc. 48 at 72, 118; admitted academically underqualified students at the law school, *id.*

at 58, 118, altered the CSOL student handbook with respect to minimum GPA

requirements and then certified to the Government that those students were making

satisfactory academic progress and had a reasonable expectation of graduating, *id.* at 83,

118; and manipulated Bar exam and employment statistics, which was materially

misleading in light of students and potential students' ability to evaluate the truthfulness

of CSOL's advertisements concerning same, *id.* at 28.

      ii.    <u>Defendants' presented a false claim to the Government by seeking</u>
<u>payment from the DOE</u>.

The second of the three FCA elements is satisfied when a FCA plaintiff

adequately alleges presentment of a false or fraudulent claim to the Government for

payment or approval.  As stated above, Defendants made false certifications and annual

re-certifications to the Government that they complied with Title IV and its implementing

regulations as a condition for payment for federal funding, which necessarily included,

*inter alia*, implied compliance with ABA standards and avoidance of the incentive

compensation ban. *E.g.*, Doc. 48 at 35.  That CSOL failed to disclose noncompliance

with conditions of payment made its representations to the Government misleading half-

truths, as taught by *Escobar*.  The Government, after being presented with CSOL's

certifications that its students met financial aid eligibility criteria actually paid those

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 10
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

claims to CSOL, in excess of $285,000,000.00, as alleged in the amended complaint.

Doc. 48 at 39.  Defendants argue that the amended complaint fails to establish

presentment of a false claim, but noticeably, Defendants are willfully blind to the

allegations in the amended complaint showing how CSOL repeatedly manipulated GPA

criteria in its student handbook so as to allow students who should have otherwise been

academically dismissed to remain at CSOL and be recertified by CSOL to the

Government as making satisfactory academic progress.  *Id.* at 23.  The amended

complaint establishes presentment.

<div style="margin-left:2em">

iii.   <u>Defendants' presented false claims to the Government with knowledge
that they were in violation of contractual, statutory, or regulatory
conditions and that these violations were material to the Government's
decision to pay the claim.</u>

</div>

The final FCA element is satisfied when a FCA plaintiff adequately alleges that

the defendant "knowingly" presented the claim to the Government for payment or

approval.  It is through this element where a court must test whether the FCA complaint

shows the requisite scienter to support a FCA claim.  "Rule 9(b) provides that a party

alleging fraud 'must state with particularity the circumstances constituting fraud' but may

allege scienter generally."  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th

Cir. 2015) (recognizing that FCA scienter requirement does not require "specific intent").

"For liability to attach, the relator must show that the defendant acted

'knowingly,' which the [FCA] defines as either 'actual knowledge,' 'deliberate

ignorance,' or 'reckless disregard.'"  *Id.* at 1058.  Congress added the "reckless

disregard" provision to the FCA in 1986, and the addition was designed to capture "the

'ostrich' type situation where an individual has 'buried his head in the sand' and failed to

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 11
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

make simple inquiries which would alert him that false claims are being submitted." S. Rep. 99–345, at 21, reprinted in 1986 U.S.C.C.A.N. 5266, 5286.

Post-*Escobar*, federal courts have acknowledged that "[e]stablishing knowledge . . . on the basis of implied certification requires the plaintiff to prove that the defendant knows (1) that it violated a contractual obligation, and (2) that its compliance with that obligation was material to the government's decision to pay." *United States v. DynCorp Int'l, LLC*, 253 F. Supp. 3d 89, 102–03 (D.D.C. 2017) (finding that FCA complaint adequately alleged knowledge under the implied certification theory) (citing *United States v. Sci. Applications Intern. Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010)). "[A]ctual knowledge possessed by individual company employees" **or** a conclusion that "the company acted recklessly" based on "the actions of employees or [the company's] systems and structure" is sufficient, under the implied false certification theory, to satisfy the knowledge requirement. *Sci. Applications Intern. Corp.*, 626 F.3d at 1276.

Defendants' dismissal argument commences with a statement that is flatly contradicted by the amended complaint. *Compare* Doc. 53 at 20 *with* Doc. 48 at 34–40. As best understood by Defendants, "Bernier does not allege a single fact about . . . [their] knowledge or intent when the PPA was executed." Doc. 53 at 20. Not so. Bernier alleges that CSOL entered into the PPA with deliberate indifference or reckless disregard, and then Bernier alleges, through more than at least 10 paragraphs, the ultimate facts underlying this allegation. *E.g.*, Doc. 48 at 34–40. Defendants' misguided statement, coupled with the authorities cited in support of the statement, shows that Defendants are arguing that "knowledge" for purposes of the FCA can only be based on "personal, first-

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT - 12
Case No.: 6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

hand knowledge" regarding an institution's entry into a PPA.  Doc. 53 at 20.  So the argument goes, according to Defendants, FCA liability can only attach when a relator was employed by the institution when the institution executed the PPA.[2]  Defendants' argument confuses the implied false certification theory upon which the amended complaint is based with other FCA theories that may require direct, personal knowledge of fraud.  The undersigned's research has not revealed, nor have Defendants cited, any law in the context of the implied certification theory where a court required a relator to have the type of knowledge that Defendants urge this court to require of Bernier.

In fact, the cases on which Defendants rely, Doc. 53 at 20–21, are inapposite and are neither controlling nor persuasive.  Some of the cases are clearly not implied certification cases at all, and therefore, offer no support whatsoever for dismissal.  *See United States ex rel. Mastej v. Health Mgmt. Associates, Inc.*, 591 F. App'x. 693, n19 (11th Cir. 2014) ("Given that this case involves an express certification of compliance in the hospital cost reports, we need not and do not express any opinion on the required elements of any "implied certification" theory in FCA cases.").

Other cases, *e.g., Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x. 765, 766 (11th Cir. 2012), fare no better because even minimal scrutiny of those cases reveal that they are

---

[2] Conceptually, this rationale makes little sense.  Under Defendants' logic, if all relators must be physically present at an institution's entry into a PPA and have "personal, first-hand knowledge" of the institution's state of mind at that time, then institutions could escape FCA liability for Title IV violations as soon as the PPA "outlives" all persons who were present at that time.  Imagine the fictitious "Acme University," who enters into a PPA with the DOE in 1985.  Surely Defendants do not suggest that in, for example, 2085, it would be impossible for Acme University to ever be liable for a FCA claim simply because any persons who would otherwise have "personal, first-hand knowledge" of the initial 1985 PPA were then deceased.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT - 13
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

factually distinct from Bernier's allegations.  For example, the *Jallali* court affirmed dismissal of a FCA complaint because the relator there, a student, did not allege that he had any knowledge of the defendants' billing practices.  *Id.*  Here, Bernier was personally involved in faculty meetings and <u>physically present</u> when CSOL Dean Conison unilaterally made the decision to downwardly adjust the minimum student GPA and then certify such students as allegedly in compliance with financial aid guidelines.  Doc. 48 at 23–24.  Nothing about this exercise was innocent, demonstrated by Conison's assertions that Infilaw thought it "unacceptable" to fail so many students (who otherwise, should have failed) and Infilaw "could not tolerate the financial loss or harm to its reputation." *Id.*  CSOL then did, in fact, certify the failing students and CSOL did, in fact, receive federal student aid that should not have been paid by the Government.  *See id.*  All of this is very different from the student in *Jallali* who had no knowledge of the defendant's billing practices.  By contrast, Bernier gained her knowledge, *inter alia*, during faculty meetings that she attended.  Doc. 48 at 23–24.  What is more, unlike the *Jallali* relator, Bernier's amended complaint has allegations focused solely on her knowledge of fraud.

The amended complaint alleges that CSOL entered into the initial PPA with deliberate ignorance or reckless disregard to comply with Title IV and its implementing regulations.  Doc. 48 at 35, 41, 43.  Defendants take issue with this allegation, but Bernier is <u>not required</u> to have direct and specific knowledge of CSOL's mindset when it entered into the initial PPA because intent for purposes of fraud may be alleged generally, *see* Fed. R. Civ. P. 9(b), and federal courts in Title IV cases routinely recognize that post-PPA conduct is sufficient to draw the inference that an academic institution never

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 14
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

intended to comply with the conditions in the initial PPA.  *See, e.g.*, *United States ex rel. Miller v. Weston Educ., Inc.*, No. 4:11-cv-00112-NKL, 2012 WL 6190307, at \*5 (W.D. Mo. Dec. 12, 2012) (denying motion to dismiss FCA claim premised on Title IV violations because general allegation that academic institution defrauded the government by entering into initial PPA was sufficient to state claim).

In *Miller*, two relators made allegations of FCA liability against an academic institution based on conduct that, as here, both pre-dated and post-dated the initial PPA.[3] *Id.*  The *Miller* court found it significant that the complaint alleged "widespread [Title IV] violations" because the allegations evinced that the institution "knowingly" violated the conditions in the PPA to which it agreed to comply.  *Id.*  Indeed, the allegations in *Miller* are strikingly similar to those in this action.  There, relators alleged that, *inter alia*, (i) the institution concocted a system to manipulate students' grades and thereby retain as many students as possible in an effort to receive increased Title IV funding from the government (like, Doc. 48 at 74–84); (ii) the institution had plans in place to stop any student transfers, which would otherwise cause a decrease in Title IV funding (like, Doc. 48 at 40, 46); (iii) allowed students to pursue degrees when they had certain attributes that would make them improbable candidates for employment (like, Doc. 48 at 68–71), and (iv) allowed students to remain enrolled at the institution even when they failed to

_____

[3] Defendants cite to the *Miller* <u>circuit</u> opinion and argue that the relators established "pre- and post-PPA activity" and demonstrated "firsthand knowledge."  Doc. 53 at 22.  This generalized statement lacks an appreciation for the facts found by the *Miller* district court below, whose findings, as discussed *infra* were based on <u>inferences</u> and circumstantial evidence, not direct knowledge.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 15
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

achieve satisfactory academic progress (like, Doc. 48 at 25, 35).[4]  Here, the allegations in the amended complaint are substantively no different from the types of inferences that the *Miller* court found sufficient to state a claim under the FCA.

It should also be noted that the *Miller* cases undercut Defendants' argument that because Bernier was not a CSOL employee when CSOL entered into the initial PPA that she cannot, as a matter of law, state a Title IV FCA claim.  As stated above, *Miller* involved two relators, one of whom was employed by the academic institution from 2006 through 2011 (Relator Miller) and the other for five months in 2010 (Relator Sillman). *United States ex rel. Miller v. Weston Educ., Inc.*, 10 F. Supp. 3d 1046, 1051 (W.D. Mo. 2014), *aff'd in part, rev'd in part and remanded*, 784 F.3d 1198 (8th Cir. 2015), *cert. granted, judgment vacated*, 136 S. Ct. 2505 (2016), and *aff'd in part, rev'd in part and remanded sub nom. United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494 (8th Cir. 2016).  The institution employed Relator Sillman <u>years</u> after it entered into the initial PPA, and the *Miller* court took no issue with Relator Sillman's allegations of FCA liability based on the institution's entry into the initial PPA.

For purposes of the amended complaint in this case, the court need only determine whether Bernier's allegations plead that Defendants knowingly violated a contractual, statutory, or regulatory obligation, and that their compliance with that obligation was material to the Government's decision to pay.  *DynCorp Int'l, LLC*, 253 F. Supp. 3d at

---

[4] These allegations do not expressly appear in the *Miller* opinion; instead, the opinion cites to them in the complaint underlying that action, which appears at Document Entry 8.  *See U.S. ex rel. Miller*, 2012 WL 6190307 at *5 (citing to "Doc. # 8 at 22–23, 35–36, 46, 49").

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 16
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

102–03.  Here, the PPA required CSOL to represent that it was in compliance with Title IV's incentive based compensation ban; was in compliance with the ABA's accreditation standards; and not make substantial misrepresentations to prospective applicants about the nature of the institution's educational programs or the employability of its graduates. Doc. 48 at 35–37.  These regulatory violations have already been addressed by federal courts in Title IV cases.  *See, e.g.*, *United States v. Premier Educ. Group, L.P.*, No. 11-3523 (RBK/AMD), 2016 WL 2747195, at *14 (D.N.J. May 11, 2016), *motion to certify appeal denied sub nom. United States ex rel. Laporte v. Premiere Educ. Group, L.P.*, No. 11-3523 (RBK/AMD), 2017 WL 3471163 (D.N.J. Aug. 11, 2017).

Significantly, within months of Bernier's disclosures to the Government, the DOE cut-off CSOL's ability to obtain federal student aid.  So, Defendants, out-of-the-gate, are hard-pressed to genuinely argue that the Government would have continued disbursing financial aid to CSOL had the Government not become aware of the scheme alleged in the amended complaint.  The undeniable fact is that the Government <u>actually terminated</u> CSOL's financial aid for the *very* reasons alleged in the amended complaint, noting that CSOL was severely out-of-compliance with the applicable ABA accreditation standards. Doc. 48 at 39.  Thus, CSOL's compliance with not only the PPA, but also associated statutory and regulatory provisions was clearly material to the Government's decision to pay because the Government stopped paying when it knew of the noncompliance.

    **B.**    **The Public Disclosure Bar Does Not Apply Because The Extrinsic Evidence Defendants Injected Into This Action Is Not "News Media," As Contemplated By The FCA, And In Any Event, Bernier Is An Original Source.**

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT - 17
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

Even where a FCA violation is properly alleged, liability may be cut-off if the FCA complaint relies on information that has been publicly disclosed in "(i) a criminal, civil, or administrative hearing, (ii) in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or (iii) from the news media" unless the FCA plaintiff is an original source. *See* 31 U.S.C. § 3730(e)(4)(A). Thus, under the public disclosure bar analysis, the court must first determine whether the information was disclosed via any of the sources codified in Section 3730(e)(4)(A), and if so, whether the complaint is based on any of the sources. *E.g.*, *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 519 (3d Cir. 2007).

      i.  <u>Many of the exhibits attached to the motion to dismiss are blogs, which are not news media, and the balance of the exhibits disclose generalized facts that do not rise to the level of fraud on which the amended complaint is based</u>.

With respect to the first portion of the public disclosure bar analysis, the court need not go far because the motion to dismiss makes clear that Defendants rely solely on alleged public disclosure through "news media." *See* Doc. 53 at 26–36. Indeed, Defendants' attack on the amended complaint is based on a litany of twenty-seven exhibits. *See* Docs. 53-1–53-27. As an initial matter, the court should *reject* all of the exhibits because they are merely attached to the motion to dismiss; they are neither authenticated nor supported through an affidavit or declaration on Defendants' behalf. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (concluding that in ruling on a motion to dismiss, a court may consider an extrinsic document if it is central to the plaintiff's claim and its <u>authenticity is not challenged</u>) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *see also United States ex*

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 18
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

*rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (finding that in addition to testimony and affidavits, a court may consider <u>judicially noticed documents</u>).  Here, Bernier challenges authenticity and Defendants have made no motion to this court for judicial notice.  Assuming, *arguendo*, that the exhibits were otherwise properly authenticated, they are still problematic.  As a matter of statutory law, the only way the court can apply the public disclosure bar here is to determine that the exhibits are, in fact, subsumed within the FCA's legal definition of "news media."  They are not.

Defendants make no real effort to define the contours of the news media exception, other than through generalized and unsubstantiated legal conclusions that the news media exception is "broad sweeping."  Doc. 53 at 26.  Though the exception may be "broad sweeping," *Osheroff*, 776 F.3d at 813, the exception is not unlimited, as Defendants appear to argue.  In *Osheroff*, a case heavily relied on by Defendants, the Eleventh Circuit acknowledged that it has not considered the full extent of "news media" as used in the FCA.  *Id.*  The *Osheroff* court went on, nonetheless, to affirm the district court's finding that certain newspaper articles in the Miami Herald and the defendants' own websites qualified as news media in that case.  *Id.*  Importantly, *Osheroff* <u>does not hold</u>, as Defendants claim, Doc. 53 at 26, that all publicly available websites qualify as news media.  *See id.*  In fact, the only websites at issue in *Osheroff* was the defendants' own websites not, as here, a host of Internet sources from various third parties that Defendants attempt to piece together to qualify as news media.  *Id.*

With the rise of the Internet, federal courts have been forced to confront precisely what information qualifies as news media.  *See, e.g.*, *United States ex rel. Brown v. Walt*

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 19
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

*Disney World Co.*, No. 6:06-cv-1943, 2008 WL 2561975 (M.D. Fla. 2008), *aff'd*, 361 F. App'x 66 (11th Cir. 2010) (finding that allegations disclosed in newspaper articles, court opinions, and government websites constituted a public disclosure, but not reaching question whether a book constituted news media).

Courts have held that information on the Internet that is not curated or that does not have the same indicia of reliability as news sites, are <u>not</u> news media.  *E.g.*, *United States ex rel. Moore & Company, P.A. v. Majestic Blue Fisheries, LLC*, 69 F. Supp. 3d 416, 425 (D. Del. 2014), *rev'd and remanded on other grounds*, 812 F.3d 294 (3d Cir. 2016) (concluding that certain web postings on community forum did not constitute news media, nor did blog postings); *United States ex rel. Simpson v. Bayer Corp.*, No. 05-3895, 2013 WL 4710587 (D.N.J. 2013) (concluding that postings on "cafepharma" did not constitute news media as the character and substance of the postings were more akin to an informal message board and web forum and not geared toward dissemination of news); *abrogated on other grounds by United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481 (3d Cir. 2017); *United States ex rel. Colquitt v. Abbott Laboratories*, 864 F. Supp. 2d 499, 518 (N.D. Tex. 2012) (finding that scholarly periodicals sufficiently similar to newspapers to constitute news media and advertisements in such periodicals are "'from the news media'" although not inclined to conclude that "in the age of basement blogging and ease of publishing, *any* medium that disseminates information to the public in a periodic manner is part of the 'news media'"); *United States ex rel. Liotine v. CDW Government, Inc.*, No. 05-33, 2009 WL 3156704, *6 (S.D. Ill. 2009) (declining to treat university newsletter as news media, even though available on Internet); *United*

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 20
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

*States ex rel. Radcliffe v. Purdue Pharma, L.P.*, 582 F. Supp. 2d 766 (W.D. Va. 2008), *rev'd in part on other grounds*, 600 F.3d 319 (4th Cir. 2010) (declining to conclude that everything posted online constitutes public disclosure).

Applying the foregoing authorities to the extrinsic evidence submitted by Defendants reveals that the court must summarily ignore at least nine exhibits because they are nothing more than blog postings (Exhibits 3, 4, 5, 6, 14, 17, 22, and 24), which federal courts have found are not news media. *Majestic Blue Fisheries*, 69 F. Supp. 3d at 425, *rev'd in part on other grounds* ("Similarly, the blog postings (e.g., BitterEnd blog and Sea Fever blog) are not 'news media.'").  Similarly, CSOL's own newsletter (Exhibit 26) is not news media.  *CDW Government, Inc.*, 2009 WL 3156704 at *6.  Because Exhibits 3, 4, 5, 6, 14, 17, 22, 24, and 26 are not cognizable "news media," this court cannot consider them in the public disclosure bar analysis.

The remaining exhibits fare no better, as they, too, are either not news media nor do they report information upon which the amended complaint is not based.  To be properly considered "based upon" publicly disclosed allegations, a complaint must be substantially similar to the disclosed allegations.  *See United States ex rel. Mistick v. Housing Auth. of the City of Pittsburgh*, 186 F.3d 376 (3d Cir. 1999).  The balance of Defendants' exhibits can be summed up as follows.  They generally discuss (i) the problematic financial structure of higher education (Exhibit 1); (ii) the admissions standards at Infilaw's law schools (Exhibit 1); (iii) that the American Bar Association should do more to regulate Infilaw's law schools (Exhibits 1, 2); (iv) the Bar exam passage rates at Infilaw's law schools (Exhibits 2, 7, 18, 19); (v) that the job market is not

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT - 21
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

good for newly minted lawyers, nor CSOL graduates (Exhibit 8, 19, 20, 21); (vi)

allegations at Arizona Summit School of Law, who is not a party to this suit (Exhibits 9,

10, 13, 15, 16, 23); (vii) student recruitment goals (Exhibit 11); (viii) that CSOL

allegedly serves the underserved (Exhibit 12); (ix) CSOL alumni's skepticism of Infilaw

purchasing CSOL (Exhibit 25); and (x) CSOL's Haiti program (Exhibit 27).

     To determine whether the amended complaint is "based upon" the remaining

Exhibits 1, 2, 7, 8, 9, 10, 11, 12, 13, 15, 16, 18, 19, 20, 21, 23, 25, and 27, the court must

"address each of [Bernier's] claims separately." *Premier Educ. Group, L.P.*, 2016 WL

2747195, at \*9. The *Premier Educ. Group, L.P.* court conducted a similar analysis in a

Title IV case, and determined that when reviewing the publicly disclosed information at

issue there in light of the allegations of the complaint, it was clear that the allegations of

the complaint "far exceed[ed]" the publicly disclosed information. The same is true here.

     Indeed, Bernier's allegations include a wealth of information that she learned as

an insider, which is not disclosed in any of Defendants' exhibits. This additional

information includes, *inter alia*, Infilaw purposefully designed its first-year courses to

differ dramatically from other law schools, which was designed to prevent student

transfers, Doc. 48 at 12–13; Infilaw raided CSOL's trust fund monies after distribution by

the DOE, *id.* at 14; CSOL admissions' staff was rewarded for hitting recruitment

numbers through unlawful incentive based commissions, *id.* at 19–20; use of unlawful

"gift aids" by the CSOL financial aid office, *id.* at 21; unilateral changes the to the

minimum student GPA so that CSOL could certify at least 65 students to the DOE as

making "satisfactory academic progress" even though they had not done so, *id.* at 23;

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 22
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

changing students' grades by improperly averaging them together, in hopes that the average would yield a high enough GPA to have students apply, again, for federal financial aid, *id.* at 24; implementing a re-entry program to delete academic records and allow students to "start over" and effectively obtain an additional year of federal financial aid, Doc. 48 at 25–26; allowing Veteran students to remain at CSOL even when they should have been academically dismissed because this allowed CSOL to not run afoul the 90/10 rule, *id.* at 28; telephoning CSOL graduates the night before the Bar exam to offer money to delay taking the Bar exam, which such practice was designed to manipulate Bar exam passage statistics, *id.* at 29; and improper inclusion of CSOL graduates into employment statistics, *id.* at 29. These allegations could not have been disclosed as news media because none of this information is contained in Exhibits 1, 2, 7, 8, 9, 10, 11, 12, 13, 15, 16, 18, 19, 20, 21, 23, 25, and 27.

To the extent that the court disagrees with the foregoing and adopts the view that the amended complaint has similar allegations to any of the information in the exhibits, it should also resort to the same analysis used by the *Premier Educ. Group, L.P.* court. There, despite some tangential similarity between the disclosed information and the complaint, nevertheless, the court found that the disclosed information "contain[ed] no allegations regarding the specific scheme or the manner" in which fraud was committed, while the complaint "went into much detail about the alleged scheme." *Premier Educ. Group, L.P.*, 2016 WL 2747195, at *10. So, too, does Bernier's amended complaint.

     ii.   <u>Bernier is an original source because she gained independent<br>knowledge of Defendants' conduct through faculty meetings<br>and then voluntarily disclosed same to the Government.</u>

To be an original source, the relator must have (1) conveyed the information to the government prior to the public disclosure or (2) have independent knowledge that materially adds to the publicly disclosed allegation and provided that information to the government before filing the FCA action. *See* 31 U.S.C. § 3730(e)(4)(B).

As discussed above, because Bernier's position is that none of the exhibits attached to the motion to dismiss evince "public disclosure" within the meaning of the FCA, she qualifies as an original source under Section 3730(e)(4)(B) based on the disclosure that she voluntarily made to the Government in April 2016. *See* Doc. 48 at 11, 15, 33, 39. And even if the court finds that any of the exhibits attached to the motion do demonstrate public disclosure; nonetheless, Bernier is still an original source because, as discussed above, she has independent knowledge that materially adds to the public disclosure in that Bernier's disclosures far exceed any of the information in the exhibits.

"In order to possess 'independent knowledge,' the relator must 'have learned of the allegation or transactions independently of the public disclosure.'" *Bellevue v. Universal Health Services of Hartgrove, Inc.*, 867 F.3d 712, 720 (7th Cir. 2017) (external citation omitted); *United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 194 (S.D.N.Y. 2016) (finding original source test established when relator was an employee-insider who provided far more than background information of alleged fraud); *United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 260 (D. Mass. 2015), *aff'd sub nom. Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26 (1st Cir. 2016) (discussing original source exception at length, and finding "that there are some FCA complaints that are 'substantially the same' as a public disclosure under §

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 24
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

3730(e)(4)(A) but still 'materially add [ ]' to the disclosure under § 3730(e)(4)(B)").

A relator "materially adds" to the prior public disclosure if he "materially contributes anything of import to the public knowledge about the alleged fraud." *Cyberonics, Inc.*, 95 F. Supp. 3d at 260.  Bernier is an original source because even if the court considers the exhibits attached to the motion as public disclosures, none of the exhibits disclose the essential elements to a fraudulent scheme.  The focus of the exhibits is on the greed of the for-profit educational model, in conjunction with CSOL's abysmal statistics.  *See* Docs. 53-1–53-27.  The exhibits, unlike the amended complaint, do not show that Defendants intentionally manipulated student grades to certify students to the Government as having made satisfactory academic progress.  *See id.*  Defendants, in doing so, received approximately $285,000,000.00 from the Government for students whose ability to receive federal student aid should have been terminated.  Doc. 48 at 39.  This is fraud on the Government.  *See id.*

**C.    The Eleventh Circuit Has Not Foreclosed FCA Intra-Corporate Conspiracy Claims And Defendants Rely On Case Law From The Antitrust Context.**

To prove a FCA conspiracy, a relator must show: (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.  *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).  Here, the amended complaint adequately pleads all conspiracy elements.  *See* Doc. 48, 112-114, 118.  Bernier repeatedly makes clear that Infilaw, through its executives, had an unlawful agreement to conspire with CSOL, through its managerial employees to defraud the

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 25
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

government in order to obtain Title IV funding, in violation of 31 U.S.C. § 3729(a)(1)(b).
*Id.* Thus, Bernier has satisfied both requirements to impose FCA conspiracy liability.

Contrary to Defendants' assertions that the intra-corporate conspiracy doctrine
provides a blanket prohibition for claims under Section 3729 (a)(1)(C) of the FCA, the
Supreme Court has explained that the doctrine provides that a liability for a conspiracy
"is not foreclosed merely because a parent and its subsidiaries are common ownership."
*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 759 (1984) (emphasis
added).  While the Eleventh Circuit has not addressed whether the doctrine applies to bar
an FCA conspiracy between a parent and its wholly-owned subsidiary, at least one court,
*United States v. President and Fellows of Harvard College*, 323 F. Supp. 2d 151, 199 (D.
Mass. 2004) (citing *Cedric Kushner Promotions v. King*, 533 US. 158, 166 (2001)), has
noted that "it is questionable whether the doctrine would apply to an FCA case."

Allowing corporate co-conspirators immunity from FCA liability because they are
agents of a corporation defeats the purpose of the FCA.  To be sure, in 2010, Congress
amended Section 3729(a)(1)(C) to state that liability can be imposed on any person who:
conspires to commit a violation of subparagraph (A), (B), (C), (D), (E) or (G).  *See* 31
U.S.C. § 3729(a)(1)(C)(2017) (emphasis added) (amending 31 U.S.C. § 3729(a)(3).  The
amendment to Section 3729(a)(3), now Section 3729 (a)(1)(C), was intended to correct
the Supreme Court's overly narrow interpretation of the statute's language that any
person who, "conspires to defraud the Government by getting a false or fraudulent claim
allowed or paid." *Allison Engine Co. v. United States, ex. rel. Saunders*, 553 U.S. 662
(2008).  Consequently, this court should deny dismissal of the FCA conspiracy claim.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 26
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

**WHEREFORE,** Relator, BARBARA BERNIER, respectfully requests the entry of an order denying the motion to dismiss the amended complaint, or alternatively, granting leave to file a second amended complaint to correct any pleading deficiencies identified by the court.

**DATED** on December 22, 2017

Respectfully submitted,

*/s/ Coleman Watson*

**Coleman W. Watson, Esq.**
Florida Bar. No. 0087288
California Bar No. 266015
Georgia Bar No. 317133
New York Bar No. 4850004
Email: coleman@watsonllp.com
        docketing@watsonllp.com
**Leia V. Leitner, Esq.**
Florida Bar. No. 0105621
Email: leia@watsonllp.com
**Ronika J. Carter, Esq.**
Florida Bar No. 0122358
Email: ronika@watsonllp.com

**WATSON LLP**
189 S. Orange Avenue
Suite 810
Orlando, FL 32801
Tel: (407) 377-6634
Fax: (407) 377-6688

*Attorneys for Relator,*
BARBARA BERNIER

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 27
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 22, 2017, pursuant to Fed. R. Civ. P. 5, I electronically served the foregoing, via email, on the following lead counsel of record in this proceeding:

**LAW OFFICES OF MARK L. HORWITZ, P.A.**
**Vincent A. Citro, Esq.**
17 East Pine Street
Orlando, FL 32801
Email: vince@mlhorwitzlaw.com

**COOLEY, LLP**
**David Mills, Esq.**
1299 Pennsylvania Avenue
Washington, D.C. 20004
Email: dmills@cooley.com
*Admitted Pro Hac Vice*

**COOLEY, LLP**
**Mazda K. Anita, Esq.**
4401 Eastgate Mall
San Diego, CA 92121
Email: mantia@cooley.com
*Admitted Pro Hac Vice*

**UNITED STATES ATTORNEY'S OFFICE**
**MIDDLE DISTRICT OF FLORIDA**
**Jeremy Bloor, Esq.**
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
Email: jeremy.bloor@usdoj.gov

*/s/ Coleman Watson*
Coleman Watson, Esq.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
DISMISS AMENDED COMPLAINT - 28
Case No.:  6:16-cv-00970-RBD-TBS

**WATSON LLP**
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Tel: (407) 377-6634 / Fax: (407) 377-6688