**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BARBARA BERNIER; BARBARA BERNIER; and ESE LOVE<br><br>Plaintiffs,<br><br>v.<br><br>INFILAW CORPORATION; CHARLOTTE SCHOOL OF LAW, LLC; AMERICAN BAR ASSOCIATION, d/b/a COUNCIL OF THE SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR; and AMERICAN BAR ASSOCIATION, d/b/a ACCREDITATION COMMITTEE OF THE SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR<br><br>Defendants. | Case no. 6:16-CV-00970-RBD-TBS<br><br>DISPOSITIVE MOTION |

**ABA DEFENDANTS' MOTION TO DISMISS THE SECOND**
**AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Defendants American Bar Association Council of the Section of Legal Education and Admissions to the Bar (the "Council"), and American Bar Association Accreditation Committee of the Section of Legal Education and Admissions to the Bar (the "Committee") (collectively "the ABA") move to dismiss Count III of Plaintiffs' Second Amended Complaint, the sole count alleged against the ABA, under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). If the Court dismisses the claims against the ABA under Federal Rule 12(b)(6), the ABA respectfully requests that the dismissal be with prejudice.

## INTRODUCTION

Plaintiffs claim they suffered injury due to the low-quality education provided by Charlotte School of Law, LLC ("CSL"). For almost two years, this has been a *qui tam* case against CSL and its owner, InfiLaw Corporation ("InfiLaw"), claiming that CSL and InfiLaw obtained federally funded student loans through fraudulent conduct in violation of the False Claims Act, 31 U.S.C. §§ 3729–3733. *See* Compl. ¶ 1 (ECF No. 1); Am. Compl. ¶ 1 (ECF No. 48). But now, after a voluntary amendment and a dismissal for failure to state a claim, Plaintiffs have set their sights on the ABA. Under their new theory, advanced for the first time in the Second Amended Complaint, Plaintiffs claim that the ABA is liable in tort for failing to ensure that CSL was in full compliance with the ABA's law school accreditation standards. *See* Sec. Am. Compl. ¶¶ 120–130 (Count III) (ECF No. 73). In other words, according to Plaintiffs' last-ditch effort to state a claim, the ABA owed Plaintiffs a duty, enforceable under state tort law, not to accredit a law school like CSL.

Plaintiffs' belated claim against the ABA fails for multiple, independent reasons. First, this Court lacks jurisdiction to hear it. The ABA, an Illinois not-for-profit corporation with its principal place of business in Chicago, is not subject to personal jurisdiction in Florida for omissions that occurred outside the State involving an out-of-State law school. In fact, the Second Amended Complaint all but concedes that Plaintiffs' state-law negligence claim has no connection to Florida.

Subject matter jurisdiction is also absent. The ABA's alleged negligence and InfiLaw's alleged False Claims Act and other violations by CSL and InfiLaw do not arise from a "common nucleus of operative facts," as required for supplemental jurisdiction under

28 U.S.C. § 1367(a). To the contrary, Plaintiffs' negligence claim is totally unrelated to those violations, as demonstrated by Plaintiff Bernier's two-year delay in suing the ABA.

Setting aside the jurisdictional problems, Plaintiffs have also failed to state a claim against the ABA. Courts uniformly have held that accreditors like the ABA do not owe a state-law duty to third parties, such as students or faculty, affected by accreditation decisions. Plaintiffs allege no facts that could take this case outside that line of authority. Moreover, the Second Amended Complaint alleges no facts concerning the ABA's accreditation process, and thus fails to plead the element of breach as well. For both of these reasons, the claim should be dismissed under Rule 12(b)(6).

Finally, the claim against the ABA should be dismissed as untimely under this Court's Case Management and Scheduling Order ("CMSO") (ECF No. 43). Plaintiffs added the ABA as a defendant six months after the deadline in that order, yet Plaintiffs did not—and could not—establish any justification for failing to comply with the Order.

## BACKGROUND

### A.      Bernier's Initial Complaint

When Plaintiff Bernier filed this case almost two years ago, the case had nothing to do with the ABA. The original complaint alleged three claims by Bernier, a former CSL faculty member, against InfiLaw and CSL under the False Claims Act, 31 U.S.C. §§ 3729–3733, "to recover damages from false claims Defendants made to the United States Department of Education, in violation of Title IV of the Higher Education Act (HEA), 20 U.S.C. §§ 1070, *et seq.*" Compl. ¶ 1. Bernier's theory was as follows: To get federal funding under Title IV of the HEA, InfiLaw and CSL entered into Program Participation Agreements

114936399.1

requiring them to comply with all statutes and regulations, including Title IV of the HEA and its implementing regulations, and reaffirmed their commitments under the PPA annually. Compl. ¶ 9. These annual reaffirmations, the Complaint alleged, were false because, among other things, InfiLaw and CSL "admitted academically underqualified students to CSOL without the approval of the dean and faculty of the law school, in violation of ABA Rule 205(b)" and "admitted academically underqualified students to [CSL], in violation of ABA Rule 501(b)." Compl. ¶ 100(a)–(b).

While the original complaint makes reference to the ABA and its law school accreditation standards, it does not allege any wrongdoing on the ABA's part. Indeed, the original complaint alleges no facts whatsoever concerning the ABA's actions (or any failure to act) in assessing CSL's compliance with ABA standards.

### B.    Bernier's Amended Complaint

In response to InfiLaw and CSL's motion to dismiss, Bernier amended the Complaint on November 9, 2017. The Amended Complaint, like the original, alleged three claims against InfiLaw and CSL under the False Claims Act and none against the ABA. The theory underlying Bernier's claims remained the same. Bernier continued to assert that InfiLaw and CSL violated the False Claims Act by entering into the PPA, and annually reaffirming the PPA's commitments, while out-of-compliance with Title IV of the HEA and the Department of Education's regulations in an effort to maintain the flow of federal funds. *See* Am. Compl. ¶¶ 111–149.

Like the initial Complaint, the Amended Complaint did not allege that the ABA knew or should have known about this fraudulent scheme.

4

### C.     The Court Dismisses the Amended Complaint

On April 23, 2018, the Court dismissed Bernier's claims, holding that the False Claims Act's public disclosure bar, 31 U.S.C. § 3730(e)(4), prohibited Bernier from asserting claims based on some of the false statements alleged in the Amended Complaint and that Bernier had not pleaded the remainder of the false statements adequately under Federal Rule of Civil Procedure 9(b). *See* 4/23/2018 Order 6–18 (ECF No. 71) (discussing public disclosure bar), *id.* 18–19 (discussing the Rule 9(b) argument). In reaching this conclusion, the Court considered a number of exhibits attached to the motion to dismiss. Those exhibits showed that "InfiLaw and CSL knowingly deceived their students, the ABA and the [Department of Education]" by "maintaining a façade that InfiLaw's Schools students passed the bar exam" and "manipulat[ing] employment statistics." *Id.* at 8, 12; *see also id.* at 13 ("With their deceptive employment rates, the InfiLaw Schools were free to take the money and run. So they did, all the while deceiving their students, the ABA, and the DOE." (citing the attached exhibits)). Ultimately, the Court dismissed the Amended Complaint without prejudice. Under the Court's order, Plaintiff Bernier "may file a second amended complaint" and the Court warned that "[f]ailure to remedy the deficiencies identified in this Order or otherwise state a plausible claim will lead to dismissal of this action with prejudice." *Id.* at 20.

### D.     The Second Amended Complaint

On May 7, 2018, Bernier filed the Second Amended Complaint, which re-alleges two of the three claims under the False Claims Act. *See* Sec. Am. Compl. ¶¶ 68–108. The Second Amended Complaint also adds: a new plaintiff, Ese Love (a former student and employee);

114936399.1

two new defendants, the ABA Council and Committee; and three new state-law claims (negligence, gross negligence, and fraud in the inducement). *See id.* ¶¶ 2, 5, 8, 9, 120–146. Only one of the claims, for negligence, is advanced against the ABA. According to the Second Amended Complaint, the ABA "assumed a legal duty" on behalf of prospective law students and faculty members "to certify the competency, authority, and credibility of [CSL] to provide legal education commensurate with the obligations set forth in Title IV of the HEA." *Id.* ¶ 121. By "failing to enforce and ensure that [CSL] was in compliance with the Standards" the ABA allegedly "failed to act as a reasonable accreditor" and thereby supposedly breached duties to Bernier, as a CSL faculty member, and Love, as a former CSL student. *Id.* ¶¶ 121, 122, 124.

## LEGAL STANDARD

The ABA moves to dismiss the Second Amended Complaint under Federal Rule 12(b)(1), 12(b)(2), and 12(b)(6). To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), the Second Amended Complaint must allege "enough facts to state a claim to relief that is plausible on its face" and invoke this Court's jurisdiction, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007), meaning that from the facts alleged the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged" and that jurisdiction is proper. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (noting that facial challenges under Rule 12(b)(1) use the Rule 12(b)(6) standard). Although the Court assumes the factual allegations in the Second Amended Complaint are true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*,

114936399.1

550 U.S. at 555 (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To avoid dismissal under Rule 12(b)(2), Plaintiffs "must establish a prima facie case of personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

## ARGUMENT

## I.   THE ABA IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.

The Due Process Clause of the Fourteenth Amendment protects a "person's liberty interest from being subject to the binding judgments of a forum with which the person has established no meaningful 'contacts, ties, or relations.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 811 (11th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). As the party "seeking the exercise of personal jurisdiction over a nonresident defendant," Plaintiffs "bear[] the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Plaintiffs' allegations purport to establish both general and specific personal jurisdiction—but Plaintiffs fall well short of carrying their burden under either theory.

### A.   There Is No General Personal Jurisdiction.

The Supreme Court has "differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Supreme Court has rejected the notion that general jurisdiction—which permits a court to hear "any and all claims" against a party—exists "in every State in which a corporation 'engages in a substantial, continuous, and systematic

course of business.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137–139 & n.19 (2014). The inquiry, instead, is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. For most corporations, this test is satisfied only in the corporation's formal place of incorporation or principal place of business. *Daimler*, 571 U.S. at 130 n.19); *id.* at 137 (describing these as "paradigm all-purpose forums"); *see also Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 791 (11th Cir. 2017) ("Only in the exceptional case may a corporation's operations in a forum other than its formal place of incorporation or principal place of business be so substantial and of such a nature as to render the corporation at home in that State.") (internal quotation marks and alternations omitted); *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015) ("'A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.'" (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015))). The *Daimler/Wolf/Schulman* framework represents a narrower view of general jurisdiction than had long been applied in the federal courts. *Waite v. AII Acquisition Corp.*, No. 15-CV-62359, 2016 WL 2346768, at *4 (S.D. Fla. Mar. 10, 2016) (noting the Supreme Court's narrowing of general jurisdiction in *Daimler*).

Under current law, there is no basis for general jurisdiction in this case. The ABA is a not-for-profit corporation incorporated and headquartered in Illinois. Sec. Am. Compl. ¶¶ 8, 9. Barring something "exceptional," that is the end of the matter: the ABA is not subject to general jurisdiction outside of Illinois. *See Daimler*, 571 U.S. at 139 n.19. And indeed, the

Second Amended Complaint has no "exceptional" allegations that would support general jurisdiction in Florida. Instead, Plaintiffs offer only rote allegations of the type that *Goodyear*, *Daimler*, and Eleventh Circuit cases have declared to be insufficient.

In particular, Plaintiffs allege that the ABA has "continuous and systematic contacts with Florida through business relationships with multiple law schools located in Florida," and that the ABA derives "significant fees from law schools in Florida in exchange for undergoing the law school accreditation process." Sec. Am. Compl. ¶ 13. But, as the Court wrote in *Daimler*, "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are *so 'continuous and systematic' as to render [it] essentially at home in the forum State.'*" 571 U.S. at 138-39 (quoting *Goodyear*, 564 U.S. at 919) (emphasis added). Merely conducting business in a State or garnering revenue from contacts with a State is not enough. *See Daimler*, 571 U.S. at 123 (Daimler was not subject to general jurisdiction in California even though sales in that State "account[ed] for 2.4% of Daimler's worldwide sales"). Indeed, if Plaintiffs' allegations sufficed to establish general jurisdiction, the ABA would be subject to general personal jurisdiction in every state in which an ABA-accredited law school is located. But *Daimler* specifically rejects such a result. *Id.* at 139 (rejecting an approach that would permit general jurisdiction "in every other State in which" the defendant conducts significant business because "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

**B.      There Is No Specific Personal Jurisdiction.**

Specific jurisdiction is also lacking. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (internal citation omitted). The inquiry "focuses on the relationship among the defendant, the forum, and the litigation," and asks whether "defendant's suit-related conduct . . . create[s] a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The Eleventh Circuit has described this as the "relatedness" requirement: "the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum" *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, No. 16-16187, 2018 WL 359998, at *6 (11th Cir. Jan. 11, 2018) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

Here, Plaintiffs' sole claim against the ABA does not arise from any alleged contacts between the ABA and Florida. Plaintiffs baldly assert that the ABA "committed a tortious act in the State of Florida," Sec. Am. Compl. ¶ 14, but their claim against the ABA relates to the ABA's accreditation of CSL—which was located in North Carolina. Plaintiffs offer no factual allegation or explanation for how the ABA, headquartered in Illinois, could have committed a tort in Florida when it accredited a North Carolina law school. Indeed, far from establishing any connection between Plaintiffs' claim and the State of Florida, the factual allegations concerning the ABA's activity solely describe conduct that occurred outside of

Florida. *See id.* ¶ 52 (the ABA "performed a site inspection of [CSL]," which is located in North Carolina). According to Plaintiffs' own allegations, Florida was never in the picture.

Perhaps recognizing this problem, Plaintiffs contend in the alternative that specific jurisdiction exists because the ABA allegedly took actions *outside* of Florida that "caus[ed] injury to Bernier," who is a Florida resident. *Id.* ¶¶ 3, 14. This, too, fails. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State." *Walden*, 571 U.S. at 1122. This includes attempts to establish specific jurisdiction based on allegations that the plaintiff suffered injury in the forum State. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (no personal jurisdiction in State where plaintiff was injured by allegedly defective automobile that defendant had manufactured and sold outside the State). As the Supreme Court has explained, personal jurisdiction requirements "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs." *Walden*, 134 S. Ct. at 1122. Thus, "however significant the plaintiffs' contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* (internal quotation marks and citation omitted). Bernier's claim of injury, therefore, does not give rise to personal jurisdiction here.

What is more, the Second Amended Complaint does not even support an inference that Bernier was injured *while resident in Florida*. Although Bernier alleges that she "is" a citizen of Florida now, she alleges that she was a CSL faculty member "[a]t all times material." Sec. Am. Compl. ¶ 3. This suggests that Bernier was a resident of North Carolina—not Florida—at the times relevant to her claim. Love, who is a North Carolina

citizen, for her part does not allege any injury occurred in the State of Florida or any other basis for jurisdiction over her claim against the ABA.

For all of these reasons, there is no personal jurisdiction.

## II.   THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIM AGAINST THE ABA.

Nor does the Court have subject matter jurisdiction to entertain this claim against the ABA. The only asserted basis for subject matter jurisdiction as to Plaintiffs' state-law negligence claim against the ABA is supplemental jurisdiction under 28 U.S.C. § 1367(a). *See* Sec. Am. Compl. ¶ 11 (asserting subject matter jurisdiction, "because such claims are so related to the FCA claims that they form part of the same case or controversy under Article III of the United States Constitution"). But Plaintiffs' negligent accreditation claim against the ABA is unconnected from their False Claims Act claims against CSL and InfiLaw. As evidenced by the fact that Plaintiffs litigated this matter for two years before adding the ABA as a defendant, and by the dearth of allegations in their initial and amended complaints regarding the ABA and its accreditation process, Plaintiffs' negligence claim against the ABA is tangential, at best, to Plaintiffs' False Claims Act claims. Therefore, Plaintiffs' negligence claim against the ABA does not form part of the same case or controversy as Plaintiffs' False Claims Act claims, and the Court lacks subject matter jurisdiction over it.

Where federal district courts have original jurisdiction over an action, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are a part of the "same case or controversy" where they "arise from the same facts, or involve

similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455-56 (11th Cir. 1996) (dismissing a state law claim for lack of subject matter jurisdiction where there was no "sufficient nexus between the federal and state causes to support supplemental jurisdiction"). In other words, the claims must be "of such a nature that a plaintiff would be expected to try them all in the same proceedings." *Roper v. Edwards*, 815 F.2d 1474, 1477 (11th Cir. 1987).

Here, while plaintiffs' False Claims Act claims against CSL and InfiLaw and negligence claim against the ABA all relate in some way to CSL, they arise from fundamentally different facts—and their resolution will turn on separate, rather than common evidence. Count I alleges that CSL and InfiLaw "knowingly present[ed], or caus[ed] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). As set forth in Count I, resolution of that claim will turn on CSL's entry into the Program Participation Agreements ("PPA") (Sec. Am. Compl. ¶¶ 69-72), CSL's disclosures to the DOE (*id.* ¶¶ 73-77), CSL's compliance with its purported obligation under the PPA to serve as a fiduciary of federal funds (*id.* ¶¶ 78-87), CSL's failure to create a code of conduct with respect to Title IV financial aid (*id.* ¶¶ 88-89), and CSL's failure to implement a plan to combat unauthorized use of copyright material (*id.* ¶¶ 90-98). Count II alleges that CSL and InfiLaw "knowingly ma[d]e, use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). That claim will turn on whether, as Plaintiffs allege, CSL "entered into the initial PPA agreement with DOE with deliberate ignorance or reckless disregard for its statutory and regulatory duties and obligations under Title IV" and its subsequent representations to the DOE that it was in

compliance with Title IV. Sec. Am. Compl. ¶¶ 110-117. Accordingly, the central issues in plaintiffs' False Claims Act claims are (1) what CSL told the DOE and (2) CSL's knowledge of the truth or falsity of its statements to the DOE.

Plaintiffs' claim against the ABA, by contrast, has nothing to do with what CSL told DOE or CSL's knowledge of the truth or falsity of its statements to the DOE. Instead, Count III turns on whether the ABA negligently failed to ensure that CSL was in compliance with the ABA's Standards governing accreditation, and whether Plaintiffs were personally harmed as a result thereof. *Id.* ¶¶ 120-130. To prove such a claim against the ABA, Plaintiffs would have to establish that the ABA (a) owed a duty to Plaintiffs, (b) breached that duty in conducting accreditation proceedings in relation to CSL, and (c) thereby caused injury to Plaintiffs. These elements would be proven by entirely different evidence from Plaintiffs' False Claims Act claims—including most significantly evidence of what the ABA did or did not do in accrediting CSL. Any alleged actions by ABA have no bearing on Plaintiffs' False Claims Act claims against CSL and InfiLaw, and conversely, CSL's actions have no bearing on whether the ABA performed any duties it owed to Plaintiffs. Accordingly, Count III does not "arise from the same facts, or involve similar occurrences, witnesses or evidence" as Counts I and II. *Hudson*, 90 F.3d at 455. Plaintiffs' claim against the ABA should be dismissed for lack of jurisdiction.

### III.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AGAINST THE ABA.

Even if this Court had jurisdiction to consider Plaintiffs' state-law claim against the ABA, the claim should still be dismissed under Rule 12(b)(6). A claim for negligence has four elements: (1) the defendant owed a duty to the plaintiffs; (2) the defendant breached that

duty; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the breach resulted in damages to plaintiffs. *Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 447 (Ill. 2010); *Bridges v. Parrish*, 731 S.E.2d 262, 265 (N.C. Ct. App. 2012), *aff'd*, 366 N.C. 539, 742 S.E.2d 794 (N.C. 2013); *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). The first element is absent as a matter of law—accreditors like the ABA do not owe a legal duty to third-parties, including students and faculty. And the second element is inadequately pleaded. The Second Amended Complaint is devoid of allegations about how the ABA breached its non-existent duty to Plaintiffs.

### A.    The ABA Does Not Owe A Duty To Plaintiffs As A Matter Of Law.

A claim for negligence, under North Carolina and Illinois law,[1] requires a "duty," and asks "whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Krywin*, 238 Ill. 2d at 226, 938 N.E.2d at 447; *accord Bridges*, 222 N.C. App. at 324, 731 S.E.2d at 265 ("Duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks."); *see also Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) ("A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable

---

[1] Plaintiffs do not identify which State's law should govern their negligence claims. The ABA assumes that either North Carolina or Illinois law applies because Florida courts apply the law of the jurisdiction with the "most significant relationship" to the issue. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). As discussed in Part I, *supra*, Florida has no connection to the issues in this case, thus the law of either North Carolina or Illinois governs Plaintiffs' negligence claims. Neither State has held that accreditors owe a duty to third-parties.

risks."). Because there is no legal duty in this case, Plaintiffs have not stated a claim for relief.

Courts have uniformly rejected claims for so-called "negligent accreditation." In *Ambrose v. New England Association of Schools and Colleges, Inc.*, 252 F.3d 488, 497 (1st Cir. 2001), for example, the court considered whether seven former students of Thomas College could sue the New England Association of Schools and Colleges for "act[ing] carelessly in conferring accreditation because the College did not in fact meet NEASC's own accreditation requirements." Citing "persuasive case law from other jurisdictions and relevant public policy considerations," the court held that the claim of "negligent accreditation" was "not actionable." *Id*. at 498. As the court explained, existing case law did not support any duty owed by an accreditor to "a person who is not a party to the accreditation process." *Id*. at 499. Moreover, the court lacked any "satisfactory standard of care by which to evaluate educators' professional judgments," and cited "the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions." *Id*. For all of these reasons, the court declined to "blaze a new, unprecedented trail and hold an accreditor liable to a consumer of the accredited service under a negligent accreditation theory." *Id*. at 498.

The Ninth Circuit rejected a similar claim in *Keams v. Tempe Technical Institute, Inc.*, 110 F.3d 44 (9th Cir. 1997). There, a group of Native American students that attended Tempe Technical Institute ("TTI"), and took out federally guaranteed loans, sued two nationally recognized accrediting agencies for negligently accrediting TTI. *Id*. at 46. As in both Illinois and North Carolina, no "Arizona case authority had recognized a duty of care

16

creating liability" under analogous facts, so the Court "recognize[d] that under Arizona law [the accreditors] owed no duty to TTI students." *Id.* The students in that case, in fact, were "unable to identify a single decision wherein any court in the United States has held that accrediting agencies . . . owe a tort law duty to students who attend the schools accredit by those agencies." *Id.* The students' negligent accreditation claim was therefore rejected as a matter of law.

Likewise, in *Tillitz v. American Correctional Association*, No. 03-1470-HA, 2004 WL 2203275, at *1 (D. Oregon Sept. 29, 2004), the court rejected an inmate's claims against the American Correctional Association ("ACA"), which were based on the theory that the association negligently certified that an Oregon correctional facility was in compliance with the Association's core standards. In doing so, the Court explained that no "Oregon authority recogniz[ed] a duty of care creating liability" for negligent accreditation, and that "claims for negligent accreditation have failed throughout state and federal courts." *Id.* at *4. As a result, the plaintiff in that case could not "show—as a matter of law—that defendant [ACA] owed a duty to plaintiff, or that defendant ACA breached any duty to plaintiff when it re-accredited" the facility. *Id.* And in *Gabriel v. Albany College of Pharmacy and Health Sciences*, No. 2:12-CV-14, 2013 WL 4456690, at *8–9 (D. Vermont Aug. 16, 2013), the Court rejected a negligent accreditation claim against the Accreditation Council for Pharmacy Education ("ACPE"). Interpreting Vermont law, the Court agreed with those courts, including *Ambrose* and *Keams*, that hold accreditors do not owe a duty of care to students and other third-parties. *Id.* at *9.

Illinois law and North Carolina law similarly impose no duty to "act as a reasonable

accreditor." As in each of the cases discussed above, no court in either State (or any other State) has ever held that such a duty exists. Nor is there any reason to think any state court would recognize such a duty, given the weighty policy considerations at play. Essentially, Plaintiffs' negligent accreditation claim asks this Court to review "the correctness *vel non* of [the ABA's] decision to accredit" CSL. *Ambrose*, 252 F.3d at 499. That, in turn, requires this Court to ask if CSL "on the whole, really had the needed resources, offered an appropriate curriculum, helped assure graduates of opportunities in the job market, and possessed institutional integrity." *Id.* at 498.

Without "a satisfactory standard of care by which to evaluate educators' professional judgments" or "assess the efficacy of the operations of academic institutions," *id.* at 499; without some indication that the courts of Illinois or North Carolina would be the first in the nation to allow a negligent accreditation claim; and without any countervailing policy considerations, Plaintiffs' claims against the ABA should not be allowed to proceed.

## B.  Plaintiffs Have Not Sufficiently Pleaded That The ABA Breached Any Purported Duty.

The Second Amended Complaint fails to state a claim for the additional reason that Plaintiffs have failed to allege facts sufficient to establish the element of breach. *See Krywin*, 238 Ill. 2d at 225, 938 N.E.2d at 446 (negligence requires plaintiff to establish "that the defendant breached [its] duty" to plaintiff); *accord Bridges*, 222 N.C. App. at 323, 731 S.E.2d at 265 (same). Plaintiffs assert, in conclusory fashion, that "[t]he ABA, through the Council and Accreditation Committee, breached the duties owed to Love and Bernier by failing to ensure that CSOL was in full compliance with the Standards to achieve full accreditation." Sec. Am. Compl. ¶ 123. Absent from the Second Amended Complaint,

however, are any allegations specifying *how* the ABA is supposed to have breached its purported duties to Love and Bernier.

In particular, Plaintiffs plead no facts regarding the ABA's accreditation process from which it could be inferred that the ABA acted negligently. Plaintiffs, for example, do not allege (1) what a "reasonable accreditor" would have done to assess CSL's compliance, *Id.* ¶ 124, (2) what the ABA in fact did, or (3) how the ABA's actions allegedly departed from those of a supposed "reasonable accreditor." Instead, of alleging facts concerning the ABA's conduct—much less how the ABA's actions constituted negligence—Plaintiffs allege general facts about CSL's poor performance and then offer up the legal conclusion that the ABA's unidentified actions in the accreditation process amounted to a "breach[ of] the duties owed to Love and Bernier." *Id.* ¶ 123. This is insufficient. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).

The emptiness of Plaintiffs' complaint is particularly remarkable given that this case arises in the context of accreditation. As the First Circuit explained in *Ambrose*, courts reviewing the decisions of an accreditor "invariably have afforded the accrediting agency's determination great deference," recognizing that accreditation is a matter of "'professional judgment.'" 252 F.3d at 498 (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 25 (1st Cir. 1991) (en banc)). Because courts are loath to wade into the substantive assessments made by accreditors—such as, for example, whether a school "really had the needed resources, offered an appropriate curriculum, helped to assure graduates of opportunities in

the job market, and possessed institutional integrity"—reviewing courts' "focus tends to be on the process of accreditation, not on the merits of the accreditation decision." *Id.* (collecting cases). Plaintiffs' Second Amended Complaint, however, alleges no facts concerning the ABA's process of accreditation. Instead, Plaintiffs simply ask the Court to infer negligence based on their conclusory, hindsight-based assertion that the ABA's judgment was "wrong." That is not enough, and for this reason as well, Plaintiffs have failed to plead a negligence claim.

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM BECAUSE THE COUNCIL AND COMMITTEE WERE ADDED TOO LATE.

Finally, the Court should dismiss Plaintiffs' belated attempt to dragoon the ABA into this lawsuit as untimely. Under the Case Management and Scheduling Order, the Plaintiffs had until December 1, 2017 to add parties. CSMO at 2. The Order included an "**IMPORTANT NOTICE**" that the "Court will strictly enforce the deadlines set in this CSMO," the "deadlines are effective unless modified by a written Order," and "parties may not modify the Court's deadlines by any other means." *Id.* Scheduling orders "may be modified only 'upon a showing of good cause'" which requires a showing that the schedule "cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).

Contrary to the Court's warnings and Eleventh Circuit precedent, Plaintiffs added the Council and Committee as defendants *six months* after the court-ordered deadline for adding parties, without even trying to show "good cause" for their delay. *See generally* Sec. Am. Compl. (filed, 5/7/2018). Plaintiffs' failure to comply with the Court's procedural requirements is itself sufficient reason to dismiss the tardy claim. But it is also notable that

no good cause exists to excuse Plaintiffs' delay. The allegations purportedly supporting Plaintiffs' new claim against the ABA were all known or knowable to Plaintiffs before the expiration of the deadline. Plaintiffs' own theory, after all, is that they were aware that CSL was accredited by the ABA at the time they accepted employment or matriculated at CSL. *See* Sec. Am. Compl. ¶¶ 125, 127. And Plaintiffs allege no facts related to the ABA's purportedly negligent accreditation process that Plaintiffs became aware of only after the deadline had passed—indeed, this is hardly surprising, as Plaintiffs allege no meaningful facts concerning the ABA's accreditation process at all. The Court should dismiss the claims against the ABA for Plaintiffs' failure to abide by this Court's scheduling order.

## CONCLUSION

For these reasons, the ABA respectfully requests that this Court dismiss Count III of the Second Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2). Alternatively, the ABA respectfully requests that the Court dismiss Count III for lack of subject-matter jurisdiction under Rule 12(b)(1), or for failure to state a claim under Rule 12(b)(6). In the event the Court dismisses the Complaint for failure to state a claim, the ABA requests that such dismissal be with prejudice.

114936399.1

Certificate of Conferral

Pursuant to the Court's October 23, 2017 Case Management and Scheduling Order (ECF No. 43), counsel for the ABA conferred with counsel for Plaintiffs regarding this motion. The parties were unable, however, to reach a resolution before the filing deadline. Accordingly, counsel for Plaintiffs opposes the relief sought in this motion.

Dated: May 31, 2018                    Respectfully submitted,

By: */s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No. 196400
**Carlton Fields Jorden Burt P.A.**
450 S. Orange Ave.
Suite 500
Orlando, Florida  32801
Telephone No.  (407) 244-8257
Facsimile No.   (407) 648-9099
Email:  jclark@carltonfields.com


Anne E. Rea (IL 6188384)*
Tacy F. Flint (IL 6284806)*
Steven Horowitz (IL 6307861)*
Benjamin I. Friedman (IL 6317623)*
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone No.  (312) 853-7000
Facsimile No.   (312) 853-7036
Email:  area@Sidley.com
Email:  tflint@Sidley.com
Email:  shorowitz@Sidley.com
Email:  benjamin.friedman@Sidley.com

*\* Pro hac vice applications forthcoming*

22

114936399.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2018, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system, which will send notification of such filing to all

counsel of record in this case.

*/s/ Johanna W. Clark*
Johanna W. Clark
Florida Bar No. 196400
**Carlton Fields Jorden Burt P.A.**
450 S. Orange Ave.
Suite 500
Orlando, Florida  32801
(407) 244-8257
Email: jclark@carltonfields.com

114936399.1