**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| *ex rel.* BARBARA BERNIER; ) | |
| BARBARA BERNIER; and ESE LOVE, ) | |
| ) | |
|     Plaintiffs, ) | Case No. 6:16-cv-00970-RBD-TBS |
| ) | |
| v. ) | **MOTION TO DISMISS &** |
| ) | **MEMORANDUM OF LAW** |
| INFILAW CORPORATION; ) | |
| CHARLOTTE SCHOOL OF LAW, LLC; ) | **ORAL ARGUMENT REQUESTED** |
| AMERICAN BAR ASSOCIATION, ) | |
| d/b/a COUNCIL OF THE SECTION OF ) | |
| LEGAL EDUCATION AND ) | |
| ADMISSIONS TO THE BAR; and ) | |
| AMERICAN BAR ASSOCIATION, d/b/a ) | |
| ACCREDITATION COMMITTEE OF ) | |
| THE SECTION OF LEGAL ) | |
| EDUCATION AND ADMISSIONS ) | |
| TO THE BAR, ) | |
| ) | |
|     Defendants. ) | |
| _____ ) | |

**DEFENDANTS INFILAW CORPORATION AND CHARLOTTE SCHOOL**
**OF LAW, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**
**AND SUPPORTING MEMORANDUM OF LAW**

**Table of Contents**

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL & PROCEDURAL BACKGROUND ............................................................. 3

STANDARD OF REVIEW ............................................................................................... 7

ARGUMENT ..................................................................................................................... 8

I.     THE FIRST-TO-FILE RULE BARS THE FCA CLAIMS. ................................ 8

     A.    Plaintiff's Case is Related to the First-Filed *Lorona* and *O'Connor* Cases Because it Alleges the Same Core Facts and General Conduct. ........................................................................................................... 9

     B.    *Lorona* and *O'Connor* Were Pending When Bernier Brought Her Action........................................................................................................... 13

II.    DESPITE TWO AMENDMENTS AND CLEAR INSTRUCTIONS FROM THIS COURT, BERNIER'S FCA CLAIMS STILL FAIL. ................... 15

     A.    Bernier's General Allegations Should be Disregarded out of Hand as Merely Repeating the Topics Already Dismissed as Publicly Disclosed........................................................................................................ 15

     B.    The SAC Contains no Allegations Establishing Relator's Personal Knowledge, Thus she has no Plausible Basis for her FCA Claims. ........ 15

     C.    The SAC did not Comply with the Court's Order in Re-Pleading Relator's FCA Claims........................................................................................ 23

     D.    Bernier has Failed to Plead Scienter. ....................................................... 30

     E.    Count II is Premised on Infirm "False Record" Allegations. ................. 32

III.   THE COURT LACKS JURISDICTION OVER BERNIER'S COMMON LAW CLAIMS AND THEY FAIL AS A MATTER OF LAW ....................... 33

     A.    Supplemental Jurisdiction Does Not Exist. ............................................. 33

     B.    Bernier Has Not Demonstrated Good Cause. .......................................... 34

     C.    Count IV is Time Barred and Fails to Allege any of the Elements for Gross Negligence. ............................................................................. 35

           1.    The statute of limitations bars Count IV...................................... 35

           2.    Bernier fails to state a claim for gross negligence. ...................... 36

     D.    Bernier's Fraudulent Inducement Claim is Time Barred and Does not Meet the Pleading Requirements of Rule 9(b)................................... 40

           1.    The statute of limitations expired. ............................................... 40

           2.    Bernier failed to allege the fraudulent inducement claims with the requisite specificity under Rule 9(b)............................. 41

-i-

**Table of Contents**
(continued)

                                                                                    **Page**

E.      Counts IV and V Constitute Educational Malpractice Claims that
        Must be Dismissed. ................................................................................ 44

CONCLUSION ........................................................................................................... 45

**Table of Authorities**

**Page(s)**

**Cases**

*Abecassis v. Eugene M. Cummings, P.C.*,
  467 F. App'x 809 (11th Cir. 2012) ...................................................................40, 41

*Ademiluyi v. Nat'l Bar Ass'n*,
  2017 WL 3022330 (M.D. Fla. 2017) ...................................................................39

*Ahmed v. Porter*,
  2009 WL 2581615 (W.D.N.C. 2009) ...................................................................43

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ...................................................................41

*Ambrosia Coal & Constr. Co. v. Morales*,
  482 F.3d 1309 (11th Cir. 2007) ...................................................................27

*U.S. ex rel. Aquino v. Univ. of Miami*,
  250 F. Supp. 3d 1319 (S.D. Fla. 2017) ...................................................................23, 28

*Armstrong v. Data Processing Inst., Inc.*,
  509 So.2d 1298 (Fla. App. 1987)...................................................................44

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................3, 17

*U.S. ex rel. Atkins v. McInteer*,
  470 F.3d 1350 (11th Cir. 2006) ...................................................................23, 27

*Baggett v. First Nat'l. Bank of Gainesville*,
  117 F.3d 1342 (11th Cir. 1997) ...................................................................34

*U.S. ex rel. Bane v. Life Care Diagnostics*,
  2008 WL 4853599 (M.D. Fla. 2008) ...................................................................9, 10, 11, 12

*U.S. ex rel. Barrett v. Beauty Basics, Inc.*,
  2015 WL 3650960 (N.D. Ala. 2015) ...................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................17

*Bernier v. Florida A&M Univ. Bd. of Trustees*,
  Case No. 13-CA-3239 (Cir. Ct. Leon County, Fla. 2013) ...................................................................3, 10, 12

## Table of Authorities
(continued)

**Page(s)**

*Bernier v. Florida A&M Univ. Bd. of Trustees*,
No. 4:14-cv-108-RH-CAS (N.D. Fla. 2014)......................................................3, 38

*Brooks v. Blue Cross and Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) ...........................................................41, 42

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) ....................................................................7

*U.S. ex rel. Carson v. Manor Care, Inc.*,
851 F.3d 293 (4th Cir. 2017) ..........................................................8, 9, 10

*U.S. ex rel. Carter v. Halliburton Co.*,
866 F.3d 199 (4th Cir. 2017) .................................................... *passim*

*U.S. ex rel. Chovanec v. Apria Healthcare Grp. Inc.*,
606 F.3d 361 (7th Cir. 2010) ..................................................................13

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) ...............................................24, 27, 28

*Corsello v. Lincare, Inc.*,
428 F.3d 1008 (11th Cir. 2005) ...........................................................20, 32

*Craig v. Little Pearls Adoptions Agency, Inc.*,
2011 WL 2693716 (M.D. Fla. 2011) ...................................................41

*Cramer v. State of Fla.*,
117 F.3d 1258 (11th Cir. 1997) ...........................................................45

*D.H.G. Props., LLC v. Ginn Cos., LLC*,
2010 WL 5584464 (M.D. Fla. 2010) ...................................................43

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) ...........................................................20, 29

*Dep't of Health & Rehabilitative Servs. v. B.J.M.*,
656 So.2d 906 (Fla. 1995)....................................................................44

*Deutsche Bank Nat'l. Tr. Co. v. Foxx*,
971 F. Supp. 2d 1106 (M.D. Fla. 2013).............................................39

*Etkin & Co., Inc. v. SBD, LLC*,
2013 WL 12092536 (S.D. Fla. 2013) ..................................................41, 43

**Table of Authorities**
(continued)

Page(s)

*F.D.I.C. v. Copenhaver*,
  2014 WL 12621202 (M.D. Fla. 2014), *report and recommendation adopted*
  *sub nom. F.D.I.C. v. Mangano*, 2014 WL 12621581 (M.D. Fla. 2014) ................................36

*Fellner v. Cameron*,
  2012 WL 1648886 (M.D. Fla. 2012) ............................................................................42, 43

*First Mut. Grp., LP v. Muricano*,
  2015 WL 10792017 (S.D. Fla. 2015) ......................................................................................35

*U.S. ex rel. Florida Soc'y of Anesthesiologists v. Choudhry*,
  262 F. Supp. 3d 1299 (M.D. Fla. 2017) ..................................................................................28

*U.S. ex rel. Forcier v. Computer Sciences Corp.*,
  183 F. Supp. 3d 510 (S.D.N.Y. 2016) ....................................................................................21

*Griffin Indus., Inc. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007) ..............................................................................................21

*Grynberg v. Koch Gateway Pipeline Co.*,
  390 F.3d 1276 (10th Cir. 2004) ..............................................................................................13

*U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
  318 F.3d 214 (D.C. Cir. 2003) ....................................................................................9, 11, 12

*Hardin v. KCS Int'l, Inc.*,
  199 N.C. App. 687 (2009) ......................................................................................................42

*Harris v. Daimler Chrysler Corp.*,
  180 N.C. App. 551 (2006) ......................................................................................................37

*Harrold v. Dowd*,
  149 N.C. App. 777 (2002) ......................................................................................................36

*Hill v. Morehouse Med. Assocs., Inc.*,
  2003 WL 22019936 (11th Cir. 2003) ......................................................................................28

*Hodges v. Buzzeo*,
  193 F. Supp. 2d 1279 (M.D. Fla. 2002) ..................................................................................41

*Jallali v. Nova Se. Univ., Inc.*,
  486 F. App'x 765 (11th Cir. 2012) ..................................................................................16, 23

*U.S. ex rel. John Doe v. Health First, Inc.*,
  2016 WL 3959343 (M.D. Fla. 2016) ................................................................................23, 29

**Table of Authorities**
(continued)

**Page(s)**

*Julian v. Wells Fargo Bank, N.A.*,
    2012 WL 1857611 (N.C. Super. 2012)................................................................42

*U.S. ex rel. Keeler v. Eisai, Inc.*,
    568 F. App'x 783 (11th Cir. 2014) ....................................................................30

*Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*,
    135 S. Ct. 1970 (2015)...............................................................................13, 14

*Kuenzig v. Kraft Glob. Foods, Inc.*,
    2012 WL 366927 (M.D. Fla. 2012), *aff'd sub nom. Kuenzig v. Hormel Foods
    Corp.*, 505 F. App'x 937 (11th Cir. 2013)...........................................................35

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs, Inc.*,
    149 F.3d 227 (3rd Cir. 1998) ........................................................................9, 12

*Little v. Omega Meats I, Inc.*,
    171 N.C. App. 583, *aff'd*, 360 N.C. 164 (2005) ....................................................37

*U.S. ex rel. Lorona, et al. v. InfiLaw Corp., et al.*,
    Case No. 3:15-cv-00959-MMH-JRK (M.D. Fla.) ......................................... *passim*

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*,
    243 F.3d 1181 (9th Cir. 2001) ........................................................................8, 9

*U.S. ex rel. Main v. Oakland City Univ.*,
    426 F.3d 914 (7th Cir. 2005) ..........................................................................17

*Makro Capital of Am., Inc. v. UBS AG*,
    543 F.3d 1254 (11th Cir. 2008) ......................................................................7, 8

*U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*,
    591 F. App'x 693 (11th Cir. 2014) ...............................................................16, 17

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*,
    501 F.3d 1244 (11th Cir. 2007) .........................................................................7

*McFadyen v. Duke Univ.*,
    786 F. Supp. 2d 887 (M.D.N.C. 2011), *rev'd in part on other grounds, Evans
    v. Chalmers*, 703 F.3d 636 (4th Cir. 2012) .........................................................44

*Medrando v. CTX Mort. Co., LLC*,
    2012 WL 2931293 (M.D. Fla. 2012) ........................................................41, 42, 43

## Table of Authorities
(continued)

Page(s)

*U.S. ex rel. Miller v. Weston Educ., Inc.*,
840 F.3d 494 (8th Cir. 2016) ..................................................................18, 19

*Morgan v. Spivey*,
2017 WL 4399539 (E.D.N.C. 2017)...............................................................36

*Mountain Land Props., Inc. v. Lovell*,
46 F. Supp. 3d 609 (W.D.N.C. 2014) ........................................................35, 40

*U.S. ex rel. O'Connor, et al. v. InfiLaw Corp., et al.*,
Case No. 3:15-cv-01351-BJD-JBT (M.D. Fla.)............................................. *passim*

*U.S. ex rel. Orgnon v. Chang*,
2016 WL 715746 (E.D. Va. 2016)..................................................................30

*U.S. ex rel. Ortega v. Columbia Healthcare, Inc.*,
240 F. Supp. 2d 8 (D.D.C. 2003) .....................................................................9

*U.S. ex rel. Osheroff v. Humana, Inc.*,
776 F.3d 805 (11th Cir. 2015) .........................................................................7

*U.S. ex rel. Pilecki-Simko v. Chubb Inst.*,
443 F. App'x 754 (3d Cir. 2011) ....................................................................31

*U.S. ex rel. Powell v. Am. InterContinental Univ., Inc.*,
2012 WL 2885356 (N.D. Ga. 2012) ...............................................................12

*Rizzo-Alderson v. Eihab H. Tawfik, M.D., P.A.*,
2017 WL 4410096 (M.D. Fla. Oct. 4, 2017) (Dalton, J.) .......................................31

*Ross v. Tennessee Commercial Warehouse, Inc.*,
2014 WL 4672424 (W.D.N.C. 2014) ..........................................................37, 38

*Rutledge v. Aveda*,
2015 WL 2238786 (N.D. Ala. 2015) ...............................................................31

*Rutledge v. Aveda*,
2015 WL 9826462 (N.D. Ala. 2015) ...............................................................32

*Ryan v. Univ. of N.C. Hosps.*,
128 N.C. App. 300 (1998) ........................................................................44, 45

*Sawyer v. Food Lion, Inc.*,
144 N.C. App. 398 (2001) ............................................................................37

**Table of Authorities**
(continued)

Page(s)

*U.S. ex rel. Schubert v. All Children's Health Sys., Inc.*,
2013 WL 1651811 (M.D. Fla. 2013) ...................................................................28

*Sealey v. Stidham*,
2015 WL 5083992 (M.D. Ala. 2015) ..................................................................25

*U.S. ex rel. Sharpe v. Americare Ambulance*,
2017 WL 2840574 (M.D. Fla. 2017) ..................................................................28

*U.S. ex rel. Shea v. Verizon Commc'ns, Inc.*,
160 F. Supp. 3d 16 (D.D.C. 2015), *aff'd sub nom. U.S. ex rel. Shea v. Cellco P'ship*, 863 F.3d 923 (D.C. Cir. 2017)...............................................................8, 15

*Shinabargar v. Bd. of Trustees of Univ. of D.C.*,
164 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................38

*Smithfield Bus. Park, LLC v. SLR Int'l Corp.*,
2014 WL 3738217 (E.D.N.C. 2014)...............................................................24, 43

*Sosa v. Airprint Sys., Inc.*,
133 F.3d 1417 (11th Cir. 1998) ..........................................................................35

*State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*,
137 S. Ct. 436 (2016) ...........................................................................................8

*U.S. ex rel. Stepe v. RS Compounding LLC*,
2017 WL 5178183 (M.D. Fla. 2017) ..................................................................23

*Synovus Bank v. Coleman*,
887 F. Supp. 2d 659 (W.D.N.C. 2012) ...............................................................37

*Thomas v. Olshausen*,
2008 WL 2468738 (W.D.N.C. 2008), *aff'd*, 305 F. App'x 55 (4th Cir. 2008)......................44

*Thulin v. Shopko Stores Operating Co., LLC*,
771 F.3d 994 (7th Cir. 2014) ..............................................................................30

*U.S. ex rel. Torres v. Kaplan Higher Educ. Corp.*,
2011 WL 3704707 (S.D. Fla. 2011) .....................................................................9

*TradeWinds Airlines, Inc. v. C-S Aviation Servs.*,
222 N.C. App. 834 (2012) ...................................................................................41

*Tubell v. Dade Cty. Pub. Sch.*,
419 So.2d 388 (Fla. App. 1982)...........................................................................44

**Table of Authorities**
(continued)

Page(s)

*U.S. v. Planned Parenthood of Houston*,
570 F. App'x 386 (5th Cir. 2014) ...........................................................................10, 12, 13

*U.S. v. Sanford-Brown, Ltd.*,
788 F.3d 696 (7th Cir. 2015), *reinstated in part and superseded in part*, *U.S. v. Sanford-Brown, Ltd.*, 840 F.3d 445 (7th Cir. 2016)....................................................... *passim*

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
136 S. Ct. 1989 (2016)..........................................................................................................29

*Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*,
701 F.3d 669 (11th Cir. 2012) .............................................................................................33

*U.S. ex rel. Urquilla-Diaz v. Kaplan Univ.*,
2016 WL 3909521 (S.D. Fla. 2016) ........................................................................10, 12, 13

*Urquilla-Diaz v. Kaplan Univ.*,
780 F.3d 1039 (11th Cir. 2015) ..............................................................................18, 27, 30

*Waller v. S. Illinois Univ.*,
125 F.3d 541 (7th Cir. 1997) ...............................................................................................38

*Weiland v. Palm Beach Cty. Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ...........................................................................................45

*Worley v. Moore*,
2017 WL 871198 (N.C. Super. 2017)..............................................................................41, 43

**Statutes**

28 U.S.C. § 1367(a) .................................................................................................................33

28 U.S.C. § 1367(c)(3)..............................................................................................................34

31 U.S.C. § 3729 .............................................................................................................. *passim*

31 U.S.C. § 3730(b)(5) .................................................................................................... *passim*

Fla. Stat. Ann. § 95.031 ...........................................................................................................40

Fla. Stat. § 95.11(3)(a) .............................................................................................................35

Fla. Stat. § 95.11(3)(j)..............................................................................................................40

N.C. Gen.Stat. § 1–52(9) .........................................................................................................40

**Table of Authorities**
(continued)

Page(s)

N.C. Gen. Stat. § 1-52(5) ....................................................................................35

**Other Authorities**

34 C.F.R. §§ 668.14(e), (b)(1) ............................................................................19

Fed. R. Civ. P. 8 .............................................................................................2, 30

Fed. R. Civ. P. 9 ........................................................................................ *passim*

Fed. R. Civ. P. 12 ...................................................................................... *passim*

Fed. R. Civ. P. 16 .........................................................................................34, 35

Fed. R. Evid. 201(b) ........................................................................................7, 29

Local Rule 3.01(j) ...............................................................................................47

Defendants InfiLaw Corporation ("InfiLaw") and Charlotte School of Law, LLC ("CSL") (collectively, "Defendants") hereby move to dismiss Relator and Plaintiff Barbara Bernier's Second Amended Complaint ("SAC") with prejudice pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6).

## INTRODUCTION

Relator Barbara Bernier's third attempt to state a claim under the False Claims Act ("FCA") fails to comply with the Court's instructions and fails to remedy the deficiencies in her previous complaint. Without any relevant personal knowledge or necessary factual allegations, Bernier continues to accuse CSL and its corporate parent (InfiLaw) of engaging in a scheme to defraud the government. The SAC is fundamentally flawed for several independent reasons.

First, it is barred under the first-to-file rule as Bernier initiated this action while two other FCA cases were pending against Defendants. 31 U.S.C. § 3730(b)(5). The allegations in Bernier's Complaint (which is the third filed action) are substantively identical to those first made by both the *Lorona* and *O'Connor* relators, with common material elements of fraud based on Defendants' entrance into a Program Participation Agreement ("PPA"), false claims submitted to the government for Title IV funds, and general underlying conduct. The cases are therefore related – a fact the Government itself acknowledged when it repeatedly asserted to this Court that there were "**two additional related qui tam cases**" pending. Bernier Dkt. Nos. 9, 12 (emphasis added). Bernier's case for violations of the FCA are thus barred as a matter of law.

Second, Bernier, a former professor at CSL, lacks any personal or firsthand knowledge of an allegedly fraudulent certification or claim for payment. Bernier premises her case on (a) CSL's entry into a PPA with the Department of Education ("Department"), execution of which makes students eligible to receive federal financial aid, and (b) supposed subsequent annual re-certifications. Bernier alleges that, *from the very beginning*, when CSL allegedly executed its PPA

in 2008 or 2009, CSL fraudulently intended not to honor it.  This implausible (and false) accusation is entirely unfounded.  In fact, Bernier does not and cannot assert any factual basis for such a claim because all of the conduct she alleges occurred post-2009, and *she didn't start at CSL until 2013*. Bernier worked as a professor her entire time at CSL, never working on PPA certifications or supposed "re-certifications" (which do not exist), nor in the financial aid, billing, or admissions departments (despite her blanket assertion of "direct engage[ment] in almost all CSOL departments"), further proving she lacks knowledge of any supposed fraudulent claim for payment or false certification.  And while Bernier speculates that InfiLaw actually controlled all substantive decisions related to the PPA, Bernier *never worked at InfiLaw at all*, in any capacity.  In short, Bernier has no personal knowledge of Defendants' actions either at the time of the allegedly fraudulent execution of the PPA or later upon any supposed "annual" re-certifications, so her conclusory (and erroneous) assertion that Defendants all along intended to defraud the Government or later submitted false claims or statements are unsupported, implausible, and legally insufficient.  This fundamental deficiency alone requires dismissal.

Third, Bernier has failed to meet the threshold requirements of either Rule 8 or Rule 9(b). Specifically, the SAC fails to heed this Court's Order dismissing Bernier's previous complaint (Dkt. No. 71 ("Order")) on this very issue, requiring her to provide particularized details of: Defendants' entry into, or non-existent re-certifications of, the PPA; the alleged fraudulent acts committed by Defendants; how the conduct violates Title IV; or how the allege fraudulent conduct resulted in false statements by the Defendants in connection with requests for Government funding.

Finally, the SAC contains two new claims – gross negligence and fraudulent inducement – by Bernier in her individual capacity (as opposed to as a relator) against Defendants.  Both claims

fail because (1) the Court lacks subject matter jurisdiction, and Bernier has not demonstrated good cause for why these claims should be allowed after the deadline imposed by the Scheduling Order; (2) they are barred by the statutes of limitation; and (3) Bernier has not met the required pleading standards for either claim.  The SAC should be dismissed with prejudice.

## FACTUAL & PROCEDURAL BACKGROUND[1]

The SAC repeats many of the factual allegations in Bernier's previous complaints and fails to add any material allegations that support any of her four causes of action.  CSL opened in 2006.  SAC ¶ 44.  It was one of three private laws schools in InfiLaw's "consortium," made up of "an independent network o [*sic*] ABA-approved law schools and companies that provide management solutions, new educational programs, and pioneering, technology-driven course delivery to law schools and higher education institutions nationally and internationally."  *Id*. ¶¶ 33, 39.  The SAC alleges CSL executed its "initial" Program Participation Agreement ("PPA") – which any school that wishes to be eligible for federal student aid under Title IV of the Higher Education Act ("HEA") must execute – "in Fall 2008/Spring 2009."  *Id*. ¶¶ 17-18, 75.  The ABA fully accredited CSL in 2011, and CSL's students became eligible to obtain federal student aid.  *Id*. ¶¶ 51, 53.

Bernier joined CSL on January 1, 2013.  *See id*. ¶ 3.  In 2013, the same year she joined CSL as a professor, Bernier sued her prior employer (Florida A&M) alleging discrimination and retaliation.  *See Bernier v. Florida A&M Univ. Bd. of Trustees*, Case No. 13-CA-3239 (Cir. Ct. Leon County, Fla.) (filed Nov. 20, 2013), removed to federal court at *Bernier v. Florida A&M Univ. Bd. of Trustees*, No. 4:14-cv-108-RH-CAS (N.D. Fla. Feb. 28, 2014) ("*Florida A&M Compl.*").  In that lawsuit, Bernier alleged that she filed an EEOC complaint against Florida A&M

---

[1]     Defendants take the facts as alleged in the SAC only for purposes of this motion, as they must.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

in 2012 for disparate treatment, and was "constructive[ly] terminat[ed]" and "forced to resign in 2013." *Id.* ¶¶ 6, 10, 23.

Bernier does not allege she ever worked with PPA certifications, "re-certifications," or claims for payment from the government, ever worked in the admissions or financial aid office at CSL, or ever worked at InfiLaw. Although she includes a conclusory allegation that she "directly engage[d] in almost all CSOL departments, including . . . CSOL's Financial Aid and Admissions Department[,]" in an apparent attempt to establish that she "was privy to CSOL and InfiLaw's policies, procedures, and . . . financial aid and admissions practices[,]"she provides no allegations of fact to support this conclusion or explain her "engagement." SAC ¶ 3. She never alleges any personal activity related to the alleged initial 2008/2009 PPA or "re-certifications," financial aid, or admissions.

Like her prior complaints, Bernier's FCA claims are premised on CSL's alleged fraudulent entry into the PPA. Bernier asserts, with formulaic language straight from the FCA statute, that "at or before the time of entering into the PPA," Defendants "had deliberate ignorance or reckless disregard" of its Title IV obligations. *Id.* ¶¶ 77, 110. She also alleges that Defendants submitted annual re-certifications affirming the PPA and did so without "disclos[ing] noncompliance" with regulatory requirements. *Id.* ¶¶ 69, 73-74, 97.

Bernier was not employed at CSL when it entered the initial PPA, nor when its students became eligible for federal aid. *Id.* ¶¶ 3, 53, 75. Bernier does not allege that she had personal knowledge of CSL's entry into the PPA, or of InfiLaw or CSL's intent, at that time, and the conduct that forms the basis of her FCA claims all occurred later. *Id.* ¶¶ 80, 89, 91. Nor does the SAC allege the timing, content, or person responsible for the so-called "annual" re-certification of CSL's PPA, or any basis for Bernier to conclude that annual re-certifications even occurred, let

4

alone her supposed knowledge of Defendants' intent at those times.  Similarly, Bernier attaches to the SAC what she claims is "a true and authentic copy" of CSL's "most recent PPA [that] expired in 2015," *id.* ¶ 76, but that document is unsigned.  Bernier provides no information about where she obtained the unsigned document nor any facts to show personal knowledge of its content or entry.  Instead, the SAC again provides a scattershot of activities in which Bernier presumes Defendants engaged all unspecific as to who or when:  admission practices (*id.* ¶¶ 42, 55-59), prevention of transfers (*id.* ¶ 43), issues with graduates' debt load and earnings (*id.* ¶¶ 48-49), offering students living stipends so they can prepare for the bar exam on an extended schedule (*id.* ¶¶ 60-61), manipulating bar passage rates (*id.* ¶¶ 60-61, 65), and hiring graduates in the library (*id.* ¶ 62).  As detailed in Section II.A, *infra*, these allegations should be disregarded, as they were previously dismissed as prohibited by the public disclosure bar.

As the basis of her two FCA claims, Bernier again attempts to describe alleged improper trust accounting (*id.* ¶¶ 78-87), failure to have a code of conduct (*id.* ¶¶ 88-89), and copyright violations (*id.* ¶¶ 90-96).  Count I asserts that CSL entered and (allegedly) annually re-certified the PPA while in "deliberate ignorance or reckless disregard" of its obligations to comply with provisions of the PPA related to these three sets of allegations, namely "the provisions of the PPA directed to the obligations to serve as a fiduciary of federal funds, the obligation to have and adhere to a code of conduct, and the obligation to develop and implement written plans to combat the unauthorized distribution of copyrighted material."  *Id.* ¶ 77.  "By presenting claims to the federal Government without disclosing these violations," Defendants allegedly violated FCA § 3729(a)(1)(A).  *Id.* ¶¶ 97-99.  Count II alleges that Defendants entered and annually re-certified the PPA "with deliberate ignorance or reckless disregard for its statutory and regulatory duties and obligations under Title IV," allegedly making the PPA "and each re-certification of the PPA" a

"false record" and poisoning all subsequent claims for payment in violation of FCA § 3729(a)(1)(B). *Id.* ¶¶ 110-111, 114.

Bernier, in her personal capacity, asserts two separate state-law claims against Defendants. Count IV for gross negligence claims that the SAC's "allegations consists [*sic*] of circumstances that together constitute an imminent or clear and present danger amounting more [*sic*] than the normal peril." *Id.* ¶ 132.  Bernier alleges that Defendants knew CSL was not in compliance with its PPA obligations or ABA standards "when it actively recruited Bernier and tricked her into relinquishing her prior tenured position as a law professor, in favor of joining CSOL." *Id.* ¶ 135. Count V for fraudulent inducement focuses again on her recruitment "in late 2011/early 2012." *Id.* ¶ 138.  Bernier claims that she joined CSL because Defendants made representations "with respect to her ability to gain tenure" at CSL and further "intended that the representation of full ABA accreditation induce Bernier to voluntarily resign and relinquish her prior position as a full-time tenured professor at a different law school." *Id.* ¶¶ 142-143.  Therefore, according to Bernier (who resigned from CSL in 2016), she was "damaged in her loss of tenure, which is a property right" "by giving up her tenure [at Florida A&M] to join" CSL. *Id.* ¶ 146.

After Bernier left CSL, on November 14, 2016, the ABA Council of the Section of Legal Education and Admissions to the Bar ("ABA") placed CSL on probation, finding it had not demonstrated compliance with ABA Standards 301(a), 501(a) and 501(b).[2]  CSL remained accredited while on probation.[3]  Despite remaining accredited, the Department denied CSL's

---

[2]       ABA Section of Legal Education and Admission to the Bar, *Council Decision - Notice of Probation and Specific Remedial Action – Charlotte School of Law – October 2016* (Nov. 14, 2016), https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_ admissions_to_the_bar/PublicNoticeAnnouncements/2016_november_charlotte_probation_public_notice.authcheck dam.pdf.

[3]       *See* ABA Council of the Section of Legal Education and Admission to the Bar, *Council Action on Charlotte School of Law, August 11, 2017* (Aug. 11, 2017), https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_admissions_to_the_bar/council_

recertification of eligibility for Title IV student loans on December 19, 2016.[4]  CSL closed in

August 2017.[5]

Two earlier-filed actions against Defendants have recently been unsealed, which (as

detailed in Section I) require dismissal under the first-to-file bar.  *U.S. ex rel. Lorona, et al. v.*

*InfiLaw Corp., et al.*, Case No. 3:15-cv-00959-MMH-JRK (M.D. Fla.) ("*Lorona*"), was filed on

August 5, 2015, nearly a year before Bernier originally filed her complaint.  *Lorona* Dkt. No. 1

(Ex. 2).[6]  *U.S. ex rel. O'Connor, et al. v. InfiLaw Corp., et al.*, Case No. 3:15-cv-01351-BJD-JBT

(M.D. Fla.) ("*O'Connor*") was filed on November 10, 2015,[7] nearly seven months before Bernier

filed her Complaint in June 2016.  As detailed below, Bernier's action is related to both *Lorona*

and *O'Connor* as all are based on the same underlying facts.

## STANDARD OF REVIEW

The Court is aware of the appropriate standards that apply under Fed. R. Civ. P. 12(b)(6)

and 9(b) (*see* Order at 4-5), and Defendants adopt those standards for this Motion.  Additionally,

the Court must dismiss any claim over which it does not have subject matter jurisdiction under

Fed. R. Civ. P. 12(b)(1).  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir.

2008); *see also, e.g., U.S. ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 203 (4th Cir. 2017)

("*Carter II*") ("If a court finds that the particular action before it is barred by the first-to-file rule,

---

reports_and_resolutions/August2017OpenSessionMaterials/2017_august_statement_on_charlotte_school_of_law.au
thcheckdam.pdf.

[4]        U.S. Dep't of Educ., *Letter on Denial of Recertification Application to Participate in the Federal Student
Financial Assistance Programs* (Dec. 19, 2016), https://studentaid.ed.gov/sa/sites/default/files/csl-recert-denial.pdf
("ED Letter") (Ex. 1).

[5]        Charlotte School of Law, *Closure Notice* (Aug. 11, 2017), http://www.charlottelaw.edu/404.html (last visited
Jun. 4, 2018).

[6]        The Court may take judicial notice of the filings in other cases on a motion to dismiss.  Fed. R. Evid.
201(b); *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015); *see also Bryant v. Avado
Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).  The Court may also consider matters outside the pleadings to
decide a motion under Fed. R. Civ. P. 12(b)(1).  *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d
1244, 1251 (11th Cir. 2007).  Citations to exhibits refer to the exhibits listed in the Declaration of Scott Stemetzki,
filed contemporaneously with this Motion.

[7]        *O'Connor* Dkt. No. 1 (Ex. 3).

the court lacks subject matter jurisdiction over the later-filed matter, and dismissal is therefore required.").

## ARGUMENT

## I.    THE FIRST-TO-FILE RULE BARS THE FCA CLAIMS.

The FCA's "first-to-file" bar, 31 U.S.C. § 3730(b)(5), requires that the Court dismiss any *qui tam* case brought while a related *qui tam* case is pending. Both *Lorona* and *O'Connor* are "related actions," and both were pending at the time Bernier filed this case.

"When a person brings an action under [the *qui tam*] subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This first-to-file bar reflects Congress's attempt to discourage parasitic *qui tam* lawsuits. *Carter II*, 866 F.3d at 202; *see also U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) (cited with approval in *Makro*, 543 F.3d at 1260). Accordingly, "a relator may not 'bring a related action based on the facts underlying [a] pending action.'" *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 137 S. Ct. 436, 440, 442-43 (2016) (quoting *Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter*, 135 S. Ct. 1970, 1978 (2015) ("*Carter I*")). Doing so "require[s], in express terms, the dismissal of a relator's action." *Id.* at 442-43. This dismissal directive is an "exception-free rule." *U.S. ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 (4th Cir. 2017) ("The first-to-file rule is an absolute, unambiguous exception-free rule."); *Lujan*, 243 F.3d at 1183 ("We hold that § 3730(b)(5) establishes an exception-free, first-to-file bar.").

The Eleventh Circuit mandates dismissal of any case filed in violation of the first-to-file bar under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.[8] *Makro*, 543 F.3d at 1258; *see also,*

---

[8]    Even if the first-to-file bar did not revoke this court's jurisdiction, the case should still be dismissed under Fed. R. Civ. P. 12(b)(6). *U.S. ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 28 (D.D.C. 2015) (noting

*e.g.*, *Carter II*, 866 F.3d at 203.  The first-to-file bar applies when (a) the two actions are "related," and (b) the first case was "pending" at the time the second case was filed.  31 U.S.C. § 3730(b)(5); *Carson*, 851 F.3d at 302-03.

A.   **Plaintiff's Case is Related to the First-Filed *Lorona* and *O'Connor* Cases Because it Alleges the Same Core Facts and General Conduct.**

A case is sufficiently related to an earlier-filed case to invoke the first-to file bar if it is "'based in significant measure on the core fact[s] or general conduct relied upon in the first qui tam action.'"  *U.S. ex rel. Bane v. Life Care Diagnostics*, 2008 WL 4853599, at *3 (M.D. Fla. 2008) (quoting *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004)).[9] Section 3730(b)(5) bars a subsequent case based on the same general conduct even if it "incorporate[s] somewhat different details" than the earlier-filed case.  *Hampton*, 318 F.3d at 217.[10]  It also bars actions based on the same general conduct that occurred at a different time than the first-filed action alleged.  *U.S. ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 13 (D.D.C. 2003) ("If the later-filed complaint alleges the same type of wrongdoing as the first . . . the fact that the later complaint describes a different time period or geographic location that could theoretically lead to a separate recovery does not save it from the absolute first-to-file bar of § 3730(b)(5)."); *Lujan*, 243 F.3d at 1188 ("[S]ection 3730(b)(5) precludes a subsequent

---

that § 3730(b)(5) "bears only on whether a *qui tam* plaintiff has properly stated a claim" and does not deprive the court of jurisdiction under D.C. Circuit precedent), *aff'd sub nom. U.S. ex rel. Shea v. Cellco P'ship*, 863 F.3d 923 (D.C. Cir. 2017).

[9]    *See also U.S. ex rel. Torres v. Kaplan Higher Educ. Corp.*, 2011 WL 3704707, at *4 (S.D. Fla. 2011) (same); *Carson*, 851 F.3d at 302 (naming the test the "material elements test"); *U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003) ("§ 3730(b)(5) bars any action incorporating the same material elements of fraud as an action filed earlier.").

[10]    *See also U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs, Inc.*, 149 F.3d 227, 232-33 (3rd Cir. 1998) ("[I]f a later allegation states all the essential facts of a previously-filed claim, the two are related and section 3730(b)(5) bars the later claim, even if that claim incorporates somewhat different details."); *Carson*, 851 F.3d at 302-03 ("A belated 'relator who merely adds details to a previously exposed fraud does not help reduce fraud or return funds to the federal fisc, because once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.'" (quoting *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009))).

relator's claim that alleges the defendant engaged in the same type of wrongdoing as that claimed in a prior action even if the allegations cover a different time period or location within a company."). "Thus, the first-to-file rule requires an inquiry as to whether the 'first complaint give[s] the government grounds to investigate all that is in the second' complaint." *U.S. ex rel. Urquilla-Diaz v. Kaplan Univ.*, 2016 WL 3909521, at *4 (S.D. Fla. 2016) (quoting *U.S. ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1209 (D.C. Cir. 2011)).[11]

Comparing Bernier's original Complaint (Dkt. 1) to the *Lorona* and *O'Connor* complaints demonstrates that Bernier's allegations are based on substantially the same core facts and general conduct as two earlier-filed actions.[12]   All three cases make the same fundamental claims: Defendants allegedly violated the FCA by making false claims and certifications to the Department for Title IV funding.  *Lorona* Compl. (Ex. 2) ¶¶ 230, 234-237, 244-249; *O'Connor* Compl. (Ex. 3) pp. 1-2, 19, 41-43[13]; *Bernier* Compl. ¶¶ 1, 100-101, 112.  All three cases based alleged liability on the same PPA signed by CSL, and Defendants' related (allegedly false) certifications of compliance with the conditions of that PPA.  *Lorona* Compl, ¶¶ 259-265; *O'Connor* Compl. pp. 6, 18-19; *Bernier* Compl. ¶¶ 9, 96-101, 105, 111-116.[14]   And allegedly in the driver's seat, according to *Lorona*, *O'Connor*, and Bernier, was InfiLaw, orchestrating and directing a corporate-wide fraud, all in the name of profit.  *Lorona* Compl, ¶¶ 7-18, 236, 248; *O'Connor* Compl. pp. 4, 20; *Bernier* Compl. ¶¶ 22, 34, 100.

---

[11]    *See also U.S. v. Planned Parenthood of Houston*, 570 F. App'x 386, 389 (5th Cir. 2014) (applying the first-to-file bar because it was "likely that an investigation into the allegations contained in [the first-filed] complaint would have uncovered the same fraudulent activity alleged by [the subsequently filed] complaint").

[12]    Courts determine relatedness by comparing complaints.  *See Carson*, 851 F.3d at 303; *Bane*, 2008 WL 4853599, at *4-5 (same); *Planned Parenthood*, 570 F. App'x at 390 ("[T]he first-to-file analysis requires comparison of the two original complaints.").

[13]    Citations to the *O'Connor* Complaint are to the ECF page numbers, because the allegations were not organized into numbered paragraphs (aside from a paragraph 1).

[14]    Relying on the same submissions to establish liability is one telltale sign the actions are related.  *See Bane*, 2008 WL 4853599, at *5.

Additionally, all three cases rely on much of the same underlying purportedly improper conduct, fraudulent schemes and practices to attempt to establish liability:

| Allegation | *Lorona* Compl. | *O'Connor* Compl. | Bernier Compl. |
|---|---|---|---|
| Admission of underqualified students, with low LSAT scores and GPAs, violating ABA standards. | ¶¶ 162-164 | PP. 20-23 | ¶¶ 35-36, 55-60, 62, 100(a)-(b), (h) |
| Use of AAMPLE to circumvent using the LSAT and to lower admissions standards. | ¶¶ 141-157 | PP. 24-25 | ¶¶ 63-65, 100(b), (h) |
| Policies designed to undermine students' attempts to transfer. | N/A[15] | P. 25 | ¶ 37 |
| Large graduate debt load and insufficient ability of graduates to earn concomitant incomes. | ¶¶ 209-218 | P. 23 | ¶¶ 47-49, 100(k) |
| Allowing students to continue taking classes, despite indications that unlikely to succeed and internal grading policies | ¶¶ 219-224 | P. 25 | ¶¶ 66-75, 100(c), (g)-(h) |
| Undertaking measures to manufacture compliance with the 90/10 regulations. | ¶¶ 70-107, 111, 117 | PP. 26-34, 38-40 | ¶¶ 77-78 |
| Offering incentives to students unlikely to pass the bar to delay taking the exam, including a stipend, job, and additional preparation. | ¶¶ 121-124, 157-176, 186-189 | P. 34 | ¶¶ 79-80 |
| Intentional manipulation of, and unacceptably low, bar passage statistics, violating ABA Standards and Interpretations. | ¶¶ 177-182, 190-194, 201, 207 | PP. 25-26, 30, 34-35, 37-39 | ¶¶ 81-83, 100(h) |
| Falsely counting graduates engaged in extended bar preparation at the schools as "employed" for purposes of inflating job placement reports. | N/A[16] | PP. 26, 35-37 | ¶¶ 80, 100(g) |
| Practice of transferring federal student aid funds into bank accounts in InfiLaw's name. | ¶¶ 62-63 | N/A | ¶¶ 34, 42-43 |

Bernier's anticipated argument that the complaints are not related because they are not identical fails as a matter of law. *E.g.*, *Bane*, 2008 WL 4853599, at *3; *Hampton*, 318 F.3d at 218;

---

[15]   The same allegation was added to the *Lorona* case in Relators' Second Amended Complaint, which was also filed before Bernier's original complaint. *Lorona* 2d Am. Compl., ¶ 178, Dkt. No. 14 (Mar. 10, 2016) (Ex. 4).
[16]   This allegation was added to Lorona's Second Amended Complaint, which was filed before Bernier's original complaint. *Lorona* 2d Am. Compl., ¶ 187, Dkt. No. 14 (Mar. 10, 2016) (Ex. 4).

*LaCorte*, 149 F.3d at 233.  As demonstrated above, all three actions are "based in significant measure on the core fact[s] or general conduct." *Bane*, 2008 WL 4853599, at *3 (citation omitted). The allegations in both *Lorona* and *O'Connor* are based on the same PPA, the same certifications of compliance with ABA standards and federal regulations, and the same allegedly fraudulent submissions to the government as Bernier.  All three cases covered the same academic and business departments of Defendants' organizations, so the government would have uncovered the fraudulent schemes alleged by Bernier while investigating either the *Lorona* or *O'Connor* allegations if they were true.  *Urquilla-Diaz*, 2016 WL 3909521, at *4; *Planned Parenthood*, 570 F. App'x at 389.  Thus, it is immaterial for this purpose that the relators in *Lorona* and *O'Connor* came from different schools within the InfiLaw system; that Bernier alleged some different specific examples of improper practices that purportedly made the submissions to the government fraudulent; or that the conduct occurred at different times.

Indeed, the United States asserted the actions are related.  *Bernier* Dkt. Nos. 9 & 12 ("There are **two additional related** *qui tam* **cases** pending before the U.S. District Court for the Middle District of Florida." (emphasis added)).

Finally, that *Lorona* and *O'Connor* named additional defendants does not help Bernier because both cases alleged a consortium-wide fraud involving InfiLaw and all of its schools, including CSL.  *U.S. ex rel. Powell v. Am. InterContinental Univ., Inc.*, 2012 WL 2885356, at *8-9 (N.D. Ga. 2012) (applying first-to-file bar based on allegations against parent company); *Hampton*, 318 F.3d at 218-19 (same).

As a matter of law, the Court should compare Bernier's original complaint to the earlier-filed actions, but here even comparing the SAC to the earlier actions would not change the outcome of the analysis.  First, courts look to the original complaint of the later-filed action to determine if

12

they are related, not later-filed amended complaints.  *Planned Parenthood*, 570 F. App'x at 390

("[T]he first-to-file analysis requires comparison of the two original complaints."); *see also*;

*Grynberg*, 390 F.3d at 1279 ("We judge whether § 3730(b)(5) barred [the second relator's] *qui*

*tam* action by looking at the facts as they existed at the time that action was brought.").  Any other

interpretation would defeat the purpose of the first-to-file bar, as it would encourage relators to file

numerous amendments (as Bernier has already done) and exacerbate the harm of permitting a

parasitic *qui tam* case to survive.  Additionally, it would conflict with the established practice of

evaluating whether the first-to-file bar should apply at the time the case is filed.  *See infra*, Section

I.B.

Second, even if the Court were to consider Bernier's SAC, her factual allegations are still

based on the same core facts and general conduct as the *Lorona* and *O'Connor* actions.  As

explained above, Bernier's FCA claims are based on the same allegedly fraudulent PPA, the same

allegedly inaccurate certifications, and the same submissions to the government as those alleged

in the earlier-filed cases.  Through any comparison, Bernier's action is related to *Lorona* and

*O'Connor* and is thus barred by § 3730(b)(5).

### B. *Lorona* and *O'Connor* Were Pending When Bernier Brought Her Action.

Once a *qui tam* case is filed, § 3730(b)(5) bars all subsequently filed, related cases that are

brought while the first-filed case is still "pending."  *Carter I*, 135 S. Ct. at 1978-79.  A case is

brought for purposes of § 3730(b)(5) on the day it is filed.  *Carter II*, 866 F.3d at 207 ("[T]he

appropriate reference point for a first-to-file analysis is the set of facts in existence at the time that

the FCA action under review is commenced.").[17]

---

[17]     *See also U.S. ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 362 (7th Cir. 2010) ("One 'brings' an action by commencing suit."); *Urquilla-Diaz*, 2016 WL 3909521, at *5 ("[A] court must look at the facts as they existed at the time the later-filed action was brought.").

13

Bernier's brought her case on June 6, 2016 (Dkt No. 1).  At that time, the *Lorona* case, filed August 5, 2015, had been pending for nearly a year (and is still pending).  Thus, because Bernier's case is related to *Lorona*, Bernier's case must be dismissed under the first-to-file rule.

*O'Connor* separately bars Bernier's case as *O'Connor* was filed November 10, 2015, approximately 7 months prior to Bernier, was pending when Bernier initiated suit, is related to Bernier's case, and thus provides a separate basis to dismiss under the first-to-file rule.  The fact that *O'Connor* was subsequently voluntarily dismissed on March 26, 2018 (*O'Connor* Dkt. No. 27) does not alleviate the first-to-file violation, because *O'Connor* was pending at the time Bernier brought her related action.  The Supreme Court's recent decision in *Carter I* reinforced this application, and the Fourth Circuit's subsequent decision in that same action further demonstrates this principle.  In *Carter I*, the relator's case was initiated while two earlier-filed related *qui tam* actions were pending.  *Carter I*, 135 S. Ct. at 1974. The district court dismissed the case, with prejudice, even though the prior two cases were subsequently dismissed.  *Id.*  On appeal, the Supreme Court considered "whether the False Claims Act's first-to-file bar keeps *new claims* out of court only while related claims are still alive or whether it may bar *those [new] claims* in perpetuity."  *Id.* at 1973 (emphasis added).  That is, the *Carter I* opinion only considered whether dismissal should be with or without prejudice.  It held that dismissal should be without prejudice, because if the earlier-filed cases are no longer "pending" at the time of a *new* case filing, a suit initiated post-dismissal would not invoke the first-to-file bar.  *Id.* at 1978-79.  Thus, *Carter I* does not permit a relator to maintain an action filed in violation of section 3730(b)(5) just because the earlier-filed case was subsequently dismissed, and Bernier's present case is barred by *O'Connor*. *See Carter II*, 866 F.3d at 205-207 (affirming dismissal and rejecting argument that subsequent dismissal of first-filed case no longer invoked § 3730(b)(5) because "courts must 'look at the facts

as they existed when the claim was brought to determine whether an action is barred by the first-to-file bar'" because the FCA "imposes a restriction on the 'bring[ing]' of an 'action,'" and "[o]ne 'brings' an action by commencing suit") (citation omitted); *Shea*, 863 F.3d 929 (dismissing case because "[a]lthough [the] first-filed suit is no longer pending, a supplemental complaint cannot change when [relator] brought his second action for purposes of the statutory bar."). Therefore, both the *Lorona* and *O'Connor* actions mandate the dismissal of Bernier case pursuant to § 3730(b)(5).[18]

## II.   DESPITE TWO AMENDMENTS AND CLEAR INSTRUCTIONS FROM THIS COURT, BERNIER'S FCA CLAIMS STILL FAIL.

### A.   Bernier's General Allegations Should be Disregarded out of Hand as Merely Repeating the Topics Already Dismissed as Publicly Disclosed.

The Court must disregard the SAC's allegations that cover admission practices (SAC ¶¶ 42, 55-59), prevention of transfers (*id*. ¶ 43), and bar pass and employment statistics issues (*id*. ¶¶ 48-49, 60-62), because these allegations were dismissed pursuant to the public disclosure bar. *See* Order at 8-16. Thus, Bernier's incorporation of these allegations into Counts I, II, IV and V violates the Court's Order and the law of the case.

### B.   The SAC Contains no Allegations Establishing Relator's Personal Knowledge, Thus she has no Plausible Basis for her FCA Claims.

#### 1.   Bernier has no knowledge of the PPA or "re-certifications."

Bernier continues to allege that *from the very beginning* when CSL executed its foundational contract with the Department it fraudulently intended not to honor its commitment under the PPA. This fundamental accusation underlies both FCA causes of action: that "at or before the time" CSL entered its PPA, "Infilaw and CSOL had deliberate ignorance or reckless

---

[18]   Such dismissal should be with prejudice in this case because Bernier has failed to state an actionable claim. *See* Order at 20; *infra*, Section II.

15

disregard to [*sic*] comply with Title IV and its implementing regulations" and therefore "knowingly defrauded" the government. SAC ¶¶ 77, 99, 110. This allegedly tainted all subsequent claims for disbursement of Title IV funds. *Id*. ¶ 111. The same is true, according to Bernier, of CSL's so-called annual re-certifications of its PPA. *Id*. ¶¶ 69, 74, 97, 103, 110-112.

Bernier does not allege a single fact about either CSL or InfiLaw's knowledge or intent when the PPA was executed. She alleges that CSL entered the PPA "in Fall 2008/Spring 2009[.]" *Id*. ¶ 75. In her previous complaint, Bernier suggested that CSL executed its PPA in 2011. *See* Amended Complaint, Dkt. No. 48, ¶¶ 54-55. She does not explain the discrepancy, and the morphing allegations further demonstrate her lack of knowledge about this foundational document. In fact, CSL entered into a provisional PPA with the Department on February 17, 2009,[19] and Bernier was not hired at CSL until 2013 (SAC ¶ 3). She suggests co-plaintiff Ese Love, ***who is not a relator***, signed the PPA. *Id*. ¶ 75. Even if this were accurate,[20] Bernier, as the relator, cannot rely on Love's knowledge, Bernier still includes no facts about Defendants' supposed intent at the time, relying on her own knowledge or Love's, and Love alleges that she did not know CSL was out of compliance. *See* SAC ¶¶ 125-126. Thus, Bernier has not alleged (and does not have) personal, first-hand knowledge regarding CSL's entry into its PPA. Personal knowledge is a prerequisite to maintaining an FCA claim without indicia of reliability to support relator's allegations, which are also absent. *See U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 709 (11th Cir. 2014) (dismissing FCA claims related to activity of former employer that occurred outside date range of employment); *Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012) (affirming dismissal of relator's complaint for lack of personal knowledge of practices alleged to be fraudulent)). This uncured and incurable defect alone requires dismissal.

---

[19]   *See* Ex. 5.
[20]   It is not, as discussed *infra*, at 20-21. *See* Ex. 5 at 16.

And directly applicable here, a relator must establish the entry into the PPA was fraudulent to use such entry as the premise of her claims. *See U.S. v. Sanford-Brown, Ltd.*, 788 F.3d 696, 709 (7th Cir. 2015), *reinstated in part and superseded in part*, *U.S. v. Sanford-Brown, Ltd.*, 840 F.3d 445 (7th Cir. 2016) ("[R]elator must establish the defendants' mindset at the time of entry into the PPA. . . . In other words, [relator needs] to prove that [defendants] *knowingly* entered into the PPA *to defraud the government*."); *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005) ("To prevail in this suit [relator] must establish that the University not only knew, when it signed the [application for eligibility], that [the relevant violations] are forbidden, but also planned to continue [the violations] while keeping the Department of Education in the dark.").

Not surprisingly, given her indisputable lack of personal knowledge, Bernier again repeats only bare, formulaic legal conclusions that "at or before" the time CSL entered the PPA, both Defendants "had deliberate ignorance or reckless disregard" for Title IV's requirements and "knowingly defrauded the Government."  SAC ¶¶ 77, 99, 110.  The SAC lacks any facts or plausible basis for these conclusory allegations, and therefore they must be disregarded as a matter of law.  *See Mastej*, 591 F. App'x at 709 (relator's general and conclusory allegations of activity outside dates of employment with defendant were insufficient where he "articulated no factual basis for his assertion[s]"); *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In fact, Bernier's *own allegations* also make her claim that Defendants' entry into the PPA in "Fall 2008/Spring 2009" was fraudulent implausible: the events that form the factual basis for Counts I and II (trust accounting, lacking code of conduct, and copyright violations) all purportedly occurred *after* this time.  *See* SAC ¶¶ 80, 89, 91.  Thus her FCA claims are flawed as a matter of law.  It is well settled that subsequent noncompliance cannot be used to support a contention that

17

a PPA was entered fraudulently.  *Sanford-Brown, Ltd.*, 788 F.3d at 709 ("[P]romises of future performance do not become false due to subsequent non-compliance." (citation omitted)); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058-63 (11th Cir. 2015) (affirming dismissal where relators failed to present evidence establishing scienter at the time of the PPA).  "[I]t is not enough to show that [the school] did not comply with the PPA; Relators must show that [the school], when signing the PPA, knew [what was] required, and that [the school] intended not to" comply.  *U.S. ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 500 (8th Cir. 2016).  The decision in *U.S. ex rel. Miller* is instructive because, unlike Bernier, the relators there not only established pre- and post-PPA activity in support of their claims, but also demonstrated firsthand knowledge of the alleged noncompliant conduct.  *Id*. at 498-499, 500-503.

Bernier previously cited the district court's decision in *Miller* for the proposition that "federal courts in Title IV cases routinely recognize that post-PPA conduct is sufficient to draw the inference than an academic institution never intended to comply with the conditions in the initial PPA" as an example of a case where a motion to dismiss was denied "because general allegations that academic institution defrauded the government by entering into an initial PPA was sufficient to state a claim."  Dkt. 56 at 14-15 (citing *U.S. ex rel. Miller v. Weston Educ., Inc.*, 2012 WL 6190307, at *5 (W.D. Mo. 2012)).  This is wrong.  The district court in *Miller* expressly found that, while much of the alleged noncompliance occurred after the defendant's 2009 PPA, relators' complaint "repeatedly alleges" "intentional and systemic noncompliance dat[ing] back to at least 2006" and "contains several representative examples of [defendant's] misconduct that predate the 2009 PPA."  *Id*. at *5.  Moreover, one of the relators in *Miller* began working at the defendant institution in 2006 and "has personal knowledge of [those] fraudulent practices."  *Id*.[21]  Thus, the

---

[21]    The second relator in *Miller* was not employed when the institution entered its initial PPA, which Bernier suggested means she should likewise be able to proceed.  Dkt. 56 at 16 (citing *U.S. ex rel. Miller v. Weston Educ.,*

court held that "[t]he alleged misconduct that predates the PPA *coupled with* the systemic and deliberate violations from 2009 onward at least permit the inference that [defendant] did not intend to comply with the PPA at the time it executed this agreement." *Id*. (emphasis added). None of these factors are present here – Bernier's allegations do not date back to before CSL's "initial" PPA in "Fall 2008/Spring 2009," and mostly concern conduct later than 2012. *See* SAC ¶¶ 82, 89, 91. She was not employed at the time of Defendants' initial PPA, and alleges no pre-PPA activity, nor a basis for establishing personal knowledge of that activity. Thus, the *Miller* district court opinion in fact militates against the viability of her FCA claims.

The only other bases Bernier asserts to support her false claims theory are that (a) Defendants entered what Bernier calls "annual re-certification[s]" of the PPA, and (b) she has supposedly attached a copy of CSL's "most recent PPA [that] expired in 2015[.]" SAC ¶¶ 74, 76. The first theory fails for the simple reason that Bernier does not and cannot identify any such "annual re-certification" by either Defendant. This is not surprising because there is no requirement that PPAs be recertified annually (revealing Bernier's lack of knowledge of the PPA process).[22] Indeed, despite being on notice of this issue per the previous motions to dismiss, Bernier fails to cite any fact, regulation, rule, or standard that defines or explains any such annual re-certification requirement or process or any annual re-certification that Defendants submitted – because none exists. The second theory fairs no better. Bernier calls Exhibit A to the SAC "a true and authentic copy" of CSL's most recent PPA (SAC ¶ 76), but it is unsigned, and she gives no explanation as to when or where she obtained it or how she has unilaterally determined its

---

*Inc.*, 10 F. Supp. 3d 1046, 1051 (W.D. Mo. 2014) (subsequent procedural history omitted)). But the presence of a second relator, like in *Miller*, who was employed at the time of the initial PPA does not exist here.

[22]       In fact, PPAs are effective from the date the Department Secretary signs them for up to six years. 34 C.F.R. §§ 668.14(e), (b)(1).

authenticity.  As with the "initial" PPA, Bernier alleges no basis for having any knowledge of or involvement with subsequent alleged "re-certifications" or the unsigned PPA that expired in 2015.

Bernier has also not met Rule 9(b)'s exacting particularity standard.  The Order expressly identified this deficiency – "Plaintiff provides no detail about [the PPA] entry process or the certifications – their time, place, or substance" (Order at 19 n.6. citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005)).  Bernier asserts (seemingly relying on Love's knowledge) that Love "completed" and "signed" the "initial" PPA, Gene Clark "executed the PPA on behalf of CSOL as the Dean and [*sic*] Renee Hill executed same on behalf of CSOL as the Academic Dean." SAC ¶ 75.  However, Dennis Stone was CSL's lone signatory to its February 2009 provisional PPA, and neither Love, nor any of these other individuals, appear thereon.  Ex. 5 at 16.[23]  Bernier fails to allege any accurate details regarding that document, even with Love's help, undermining the plausibility and credibility of the fundamental premise of the FCA claims.  Bernier includes no details whatsoever about subsequent PPAs or "annual re-certifications"; who signed the later documents, when, where, what statements were made therein; or any other specifics – each of which is independently fatal to her claims.  *See Corsello*, 428 F.3d 1012 (relator must allege specific "'facts as to [the] time, place, and substance of the defendant's alleged fraud'" in addition to "'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)).  Moreover, Courts do not need to credit allegations that are contradicted by documents

---

[23]     The Court may consider the 2009 PPA in deciding this 12(b)(6) Motion to Dismiss because Bernier has incorporated it by reference into the SAC.  "[A] document need not be physically attached to a pleading to be incorporated by reference into it[,]" if it its contents are alleged in a complaint, the authenticity of the document is not in dispute, and the document is a central part of the plaintiff's claim.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  Bernier attempts to rely on this document in her pleading as a central part of her claims, and it is therefore properly considered under Rule 12(b)(6).  However, Defendants provide CSL's provisional PPA solely to assist the Court's resolution of this Motion; Bernier, having no personal knowledge of it, is not entitled to use it to meet her burden of pleading.

attached to the complaint.  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)

("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual

details of the pleading in favor of general or conclusory allegations.  Indeed, when the exhibits

contradict the general and conclusory allegations of the pleading, the exhibits govern.").  Indeed

"to satisfy Rule 9(b)'s particularity requirement a [relator] must '(1) specify the statements that

the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent.'"  *U.S. ex rel. Forcier*

*v. Computer Sciences Corp.*, 183 F. Supp. 3d 510, 520 (S.D.N.Y. 2016) (quoting *Rombach v.*

*Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).  The decision in *U.S. ex rel. Barrett v. Beauty Basics,*

*Inc.*, 2015 WL 3650960, at *1 (N.D. Ala. 2015), is instructive.  The court dismissed an FCA case

related to the receipt of Title IV funds:

> [P]laintiffs fail to state which individual submitted the certifications, what
> that individual certified, or when the certifications were sent to the
> government.  Simply stating that defendant certified that it met
> [accreditation] standards and policies does not provide the necessary
> specificity.

*Id*. at *3.  Like Bernier, relators there "failed to allege any express false certification with

specificity," *id*., and their attempt to proceed on an implied false certification theory similarly

failed.  *Id*. at *3-4.  Bernier's inability to identify any actionable express or implied certifications

is even more clear and cannot survive Rule 9(b) scrutiny.

The SAC demonstrates that Bernier lacks personal knowledge of CSL's entry into the

PPA, its state of mind when it entered the PPA, or any subsequent alleged "re-certifications" of

the PPA.  Because these allegations underlie both FCA claims, they must be dismissed.

## 2. *Bernier has no knowledge of Defendants' alleged misconduct.*

Bernier's descriptions of Defendants' alleged misconduct similarly lack grounding in her personal experiences. Bernier, a law professor at CSL who never worked at InfiLaw, generically asserts that she "directly engage[d] in almost all CSOL departments, including … Financial Aid and Admissions … [making her] privy to CSOL and Infilaw's policies, procedures, and conduct for CSOL's financial aid and admissions practices that are not typically available to a law professor." SAC ¶ 3. Bernier provides no supportive facts lending credibility to this conclusory and vague allegation.

Moreover, she makes no effort to link this supposed "engage[ment]" to any of her allegations relating to the conduct that forms the basis of her FCA claims, *i.e.*, how it made her "privy" to the specific misconduct alleged. Tellingly, none of Bernier's substantive allegations in support of her FCA claims premised on trust accounting or code of conduct issues are founded in anything *she personally observed*, and she does not explain how (or even if) she came about this supposed knowledge. *See* SAC ¶¶ 78-89. Both relate to financial aid, and Bernier does not say when she "engage[d] in … Financial Aid" or what her role or responsibilities may have been. The trust accounting claims date back to 2009, before Bernier was hired, and reference other CSL staff (not Bernier) as potentially involved. *Id.* ¶¶ 80, 82-85. As for the allegations of copyright violations, she references one "faculty meeting" in 2013 where she heard a dean "announce[] … that each faculty member's program assistants should copy coursebooks." *Id.* ¶ 92. Besides entirely lacking any context, this hardly substantiates that such copying actually occurred, the remainder of the causal chain (including "unauthorized distribution" "by users of the law school's network," addressed in more detail below), that it amounted to a material Title IV violation, or that it resulted in false claims.

In short, the SAC is fatally flawed without facts establishing Relator's personal knowledge of either the underlying certifications to the government or the claimed illegal conduct. *U.S. ex rel. Aquino v. Univ. of Miami*, 250 F. Supp. 3d 1319, 1334 (S.D. Fla. 2017) (dismissing FCA claim for lack of firsthand knowledge regarding any false submissions despite relator's attempt to demonstrate a role in billing department); *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (upholding dismissal where plaintiff did "not profess to have firsthand knowledge of the defendants' submission of false claims" and his allegations were based only on "rumors from staff"); *U.S. ex rel. Stepe v. RS Compounding LLC,* 2017 WL 5178183, at *6 (M.D. Fla. 2017) ("Although [relator] focuses on her status as an insider . . . that status, without more, does not provide sufficient indicia of reliability" (citations omitted)); *Jallali*, 486 F. App'x at 767 (affirming dismissal of FCA case against school, as relator lacked personal knowledge of school's billing practices).

### C.    The SAC did not Comply with the Court's Order in Re-Pleading Relator's FCA Claims.

Bernier has re-plead three sets of allegations as the basis for her FCA claims – alleged improper trust accounting (SAC ¶¶ 78-87), failing to have a code of conduct (*id*. ¶¶ 88-89), and copyright violations (*id*. ¶¶ 90-96) – but not a single one meets the pleading required under Rule 9(b) and the Order at 18-19.

*First*, the SAC does not "allege 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Order at 19 (citation omitted).  Regarding the "when," Bernier suggests that Defendants engaged in improper trust accounting "every semester from Spring 2009 though Fall 2016" (SAC ¶¶ 82, 85), "failed to create or follow any code of conduct" "from 2012 through 2016" (*id*. ¶ 89), and "openly violate[d] copyright laws for course textbooks" "every semester from Fall 2012 through Fall 2015" (*id*. ¶ 91).  "The particularity rule

serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).  Bernier's sweeping allegations that the relevant conduct occurred over three- to more than seven-year timeframes do not satisfy the requirement to allege specifically "when" the relevant conduct occurred with particularity; Defendants are not alerted with any precision to the misconduct Bernier alleges when she refers generally to the majority of time CSL was even in operation. *See Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, 2014 WL 3738217, at *5 (E.D.N.C. 2014) (dismissing because "the allegations do not specify the time or place of the misrepresentations/omissions.  Simply stating the misrepresentations occurred sometime between October 2008 and February 2009 is not sufficiently specific to plead fraud").

As for the "who," Relator alleges:

1.      Some unnamed person(s) at InfiLaw "instructed the Financial Aid Department staff at CSOL[,]" including three people over a seven-year period (without reference to how Bernier knows), to delay disbursement of financial aid funds.  SAC ¶ 82. "Infilaw" then transferred the funds to its own account and used the funds "for Infilaw's own purposes" in the interim, *id*. ¶¶ 82, 85, 87, although Bernier does not say who used it or for what.  Bernier refers to three Infilaw employees as supposedly having "authorized or caused to authorize [*sic*] the transfer of trust funds[,]" but only makes this allegation "[u]pon information and belief." *Id*. ¶ 83.

2.      Nothing about who engaged in what acts with respect to the code of conduct issues. *See id*. ¶¶ 88-89.

3.      The instruction to allegedly distribute the photocopied copyrighted material online came from "Infilaw and CSOL." *Id*. ¶ 94.

The utter lack of detail surrounding when Bernier alleges the fraudulent acts occurred and who engaged in them does not pass Rule 9(b) muster.  "Rather than comply with [Rule 9(b)'s particularity] requirement," the SAC, like the Amended Complaint, "provides just vague allegations that these incidents occurred and Defendants were responsible."  Order at 19.

*Second*, the SAC fails to "identify why the conduct constituted fraud[.]"  Order at 19.  In other words, the falsity element of an FCA violation is missing.  For each of Bernier's three categories of allegations – trust accounting, code of conduct, and copyright – Relator merely generically asserts that [u]nder CSOL's initial PPA and with each re-certification of the PPA, CSOL agreed to" (a) be a fiduciary of federal funds, (b) develop and administer a code of conduct, and (c) "implement a written plan to combat the unauthorized distribution of copyrighted material by users of the law school's network[,]" respectively, and declares Defendants' failure to do so a violation of Title IV, its implementing regulations, and Defendants' PPAs and "recertifications." SAC ¶¶ 78-79, 88, 90, 97.  These statutes, regulations, standards, and documents together encompass an enormous array of complex obligations.  Besides parroting language from the unsigned PPA she attaches (without citation), Bernier does not specify a single one, leaving Defendants and the Court to guess which form the basis of her claims.  *See* Order at 19 ("What is more, most allegations again do not identify why the conduct constituted fraud or how it impacted Defendants' ability to receive federal funds."); *Sealey v. Stidham*, 2015 WL 5083992, at *13 n.6 (M.D. Ala. 2015) ("[A]lthough Plaintiff cites to numerous provisions of the United States Code . . . he does not explain specifically how Defendants' actions violated such code provisions.").

Related to her failure to identify *what* binding legal requirements Defendants allegedly failed to follow, Bernier also does not explain *how* Defendants' conduct resulted in a violation.  Regarding the trust accounting allegations, she says only that despite CSL's obligation "to serve as a fiduciary[,]" SAC ¶ 79.  CSL received Title IV funds, delayed disbursements to students until after the course drop-add period, and InfiLaw (alleged to be "a third-party service provider under the PPA" (*id.* ¶ 71)) did something unspecified with the money in the interim.  *Id.* ¶¶ 78, 80-87. The only potential  provision in the unsigned PPA attached as "Exhibit A" regarding fiduciary

responsibilities says "[a]s a fiduciary … if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs."  SAC Ex. A at ECF page 3.  Bernier does not allege that CSL was in fact permitted to request funds under an advanced payment method, or, if it was, how allegedly delayed disbursements or the CSL-to-InfiLaw transfers constituted a failure to time its requests under this program to meet its immediate program needs.[24]  Thus, Bernier has not made a plausible allegation of how this conduct alleged violated the PPA or Title IV.

Bernier's "code of conduct" allegations contain even less substance.  She simply declares that CSL did not have or follow one.  SAC ¶ 89.  No factual support is provided for this entirely conclusory allegation.  Additionally, the copyright allegations suggest that Defendants "instructed faculty and staff" to photocopy and post copies of course materials online that students needed, allegedly in violation of a PPA provision requiring "a written plan to combat the unauthorized distribution of copyrighted material by users of the law school's network."  *Id*. ¶¶ 90-92, 94. Bernier does not describe whether the faculty and staff ever followed these instructions, or, if they did, whether doing so rises to the level of "the unauthorized distribution of copyrighted material" or constitutes a permitted use, or what the alleged failure to keep copies of course books in the library or cutting the library budget have to do with this provision.  Thus, Bernier fails to plead plausibly, much less with particularity, the falsity element of Counts I and II.

***Third***, Relator does not meet the mandate to "plead with particularity … that these false statements were made in connection with Defendants' funding requests."  Order at 19 (citation omitted).  For Count I, Bernier must allege with particularity the actual presentment of a claim,

---

[24]     Bernier cannot make any such allegations as she has no first-hand knowledge of anything related to trust accounting as she was a law professor and does not allege that she was involved in any such accounting related work.

"meaning particular facts about the who, what, where, when, and how of fraudulent submissions to the government." *Urquilla-Diaz*, 780 F.3d at 1052 (quoting *Corsello*, 428 F.3d at 1014 (internal quotations omitted)). "Without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act." *Clausen*, 290 F.3d at 1311. Thus a relator cannot "merely [] describe a private scheme in detail but then [] allege simply and without any stated reason for [her] belief that claims requesting illegal payments must have been submitted, were likely submitted, or should have been submitted to the government." *Id.*

Bernier does precisely what *Clausen* and its progeny prohibit: she purports to describe various internal practices that allegedly violated CSL's PPA, but then merely makes a blanket assertion that CSL "presented false claims[.]" SAC ¶ 74. Bernier does not and cannot provide any specifics based on her own knowledge about PPAs or purported annual re-certifications. *See* Section II.B.2, *supra*. Bernier fails to identify even a single subsequent improper request for payment that Defendants made to the government, much less one that was rendered "false" as a result of some underlying noncompliance. *See Atkins*, 470 F.3d at 1359 ("The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." (citation omitted)). Bernier provides no detail regarding who submitted what claims, for which students, when and how such claims were submitted, or their content. *Urquilla-Diaz*, 780 F.3d at 1052.[25]

---

[25]     As with prior allegations, Bernier also improperly lumps Defendants together under Count I, claiming both InfiLaw and CSL presented, and caused to be presented, false claims to the government. *E.g.*, SAC ¶¶ 97, 99. She does not specify each Defendant's role with respect to presentment, and her claims should be dismissed on this basis alone. *See Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (quoting *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)).

Without these particulars, the SAC lacks any indicia of reliability "to support the allegation of *an actual false claim* for payment being made to the Government." *Clausen*, 290 F.3d at 1311 (emphasis in original).[26]   Further, Bernier never worked in any capacity for InfiLaw, which she claims controlled and directed acts at CSL.[27]   Thus, her allegations "do not support an inference that [relator] had firsthand knowledge of actual submissions of false claims for payment." *Aquino*, 250 F. Supp. 3d at 1331.

*Finally*, and significantly, Bernier makes no attempt to explain "how [the alleged fraud] impacted Defendants' ability to receive federal funds."  Order at 18-19 (citation omitted).  She claims Defendants "failed to disclose material violations of Title IV and its implementing regulations, as well as the PPA and re-certifications, to the DOE.  By presenting claims to the federal Government without disclosing these violations, Infilaw and CSOL impliedly certified compliance … which made such representations misleading."  SAC ¶¶ 73-74, 97, 112.  Bernier also attempts to invoke an "implied false certification" theory, whereby a defendant may be liable if it fails "to disclose its non-compliance with a material statutory, regulatory, or contractual provision[.]"  *U.S. ex rel. Sharpe v. Americare Ambulance*, 2017 WL 2840574, at *6 (M.D. Fla. 2017).

This Court has held that "two conditions must exist to impose liability under the Certification Theory:  'first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to

---

[26]     *See, e.g.*, *U.S. ex rel. Florida Soc'y of Anesthesiologists v. Choudhry*, 262 F. Supp. 3d 1299, 1309 (M.D. Fla. 2017) ("Relator fails to plead any facts suggesting that it has direct, first-hand knowledge of [defendants' billing practices]." (internal quotation and citation omitted)); *cf. Hill v. Morehouse Med. Assocs., Inc.*, 2003 WL 22019936, at *4 (11th Cir. 2003) (per curium) (relator had "firsthand information" about the defendant's billing practices as a former employee in the billing department).

[27]     *See U.S. ex rel. Schubert v. All Children's Health Sys., Inc.*, 2013 WL 1651811, at *4 (M.D. Fla. 2013) (dismissing FCA claim for lack of knowledge and particularity required under 9(b), and noting relator "did not even work for the same company that is alleged to have presented [the] false claims").

disclose noncompliance with material statutory, regulatory, or contract requirements makes those representations misleading half-truths.'"  *U.S. ex rel. John Doe v. Health First, Inc.*, 2016 WL 3959343, at *3 (M.D. Fla. 2016) (quoting *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016) ("*Escobar*")).  The SAC fails this test.  Even within the time period of her employment, Bernier fails to allege the content of any submission to or request for payment from the government that Defendants made, let alone whether those contained "specific representations about the goods or services provided," or how those representations were "misleading half-truths."  *See Sanford-Brown, Ltd.*, 840 F.3d at 447 (noting relator failed to establish defendant "made any representations at all in connection with its claims for payment, much less false or misleading representations").  Instead, SAC parrots the *Escobar* test with only conclusory allegations, and no supporting facts.

Bernier similarly relies on conclusory assertions that the noncompliance she alleges occurred was "material" to the government's payment decision.  *E.g.*, SAC ¶¶ 73, 97-98, 100, 112-113.  She claims that "once the federal Government became aware of [Defendants'] noncompliance with [the fiduciary, code of conduct, and copyrighted materials obligations of the PPA], the DOE ultimately terminated distribution of Title IV funds to CSOL in December 2016."  *Id.* ¶ 104.  As support, she references and quotes from a December 2016 letter from the Department.  *Id.* ¶ 105.[28]  This letter makes no reference to issues with Defendants' trust accounting, code of conduct, or copyright activity, and Bernier reliance on it to establish the materiality of the specific compliance issues she alleges as the basis for her FCA claims is

---

[28]    *See* ED Letter (Ex. 1).  Bernier attempts to rely on this document in her pleading as a central part of her claims, and it is therefore properly considered under Rule 12(b)(6).  *See Day*, 400 F.3d at 1276.  Here, Bernier references and quotes from the letter in the SAC (SAC ¶¶ 104-105), the authenticity of the ED Letter cannot reasonably be questioned, and it forms a "necessary part of [her] effort to make out a claim" (*Day*, 400 F.3d at 1276) because she relies on it in attempting to establish materiality, an essential element under the FCA.  Alternatively, the Court may take judicial notice of the content of the ED Letter at this stage.  FRE 201(b).

misplaced.  Thus, she has failed to allege "how [the alleged fraud] impacted Defendants' ability to receive federal funds[,]" in compliance with this Court's instructions.

Bernier has not complied with the law or this Court's Order, and Counts I and II of the SAC should be dismissed with prejudice.

### D.      Bernier has Failed to Plead Scienter.

Bernier's allegations with respect to Defendants' knowledge are nothing but legally insufficient, unsupported conclusions.  "Although the FCA uses the seemingly straightforward word 'knowingly,' the statute's state of mind element is actually quite nuanced." *Sanford-Brown, Ltd.*, 788 F.3d at 700-01 (citation omitted).  The FCA defines "knowingly" to require "actual knowledge," or that a person "acts in deliberate ignorance" or "reckless disregard of the truth or falsity of [] information." 31 U.S.C. § 3729(b)(1)(A).  Liability may not stem from "innocent mistakes or simple negligence." *Urquilla-Diaz*, 780 F.3d at 1058 (citing *U.S. v. King-Vassel*, 728 F.3d 707, 712 (7th Cir. 2013)).  At the very least, an "aggravated form of gross negligence [is] needed to show scienter under the False Claims Act." *Id*. at 1057.

And while knowledge may be alleged generally under Rule 9(b), allegations of scienter must still satisfy Rule 8, consisting of more than "formulaic recitation[s] of the elements of a cause of action" and "conclusory allegations [and] legal conclusions masquerading as facts." *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  FCA cases are routinely dismissed for failure adequately to plead scienter. *See, e.g.*, *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 1000 (7th Cir. 2014) (affirming dismissal of FCA claim because "vague allegations that a corporation acted with reckless disregard" "do not clear even [the] lower pleading threshold" of Rule 8); *U.S. ex rel. Orgnon v. Chang*, 2016 WL 715746, at *3 (E.D. Va. 2016) (failure to plead facts supporting allegations that defendant acted with deliberate ignorance or reckless disregard was fatal to claims).

Specifically relevant here, "relator must establish the defendants' mindset at the time of entry into the PPA. . . . In other words, [relator needs] to prove that [the defendants] *knowingly* entered into the PPA *to defraud the government*[.]" *Sanford-Brown, Ltd.*, 788 F.3d at 709.  This, Bernier cannot do.  As shown above, Bernier cannot make any factual allegations regarding CSL or InfiLaw's mindset at the time CSL entered the "initial" PPA in "Fall 2008/Spring 2009," because she didn't join CSL until 2013.  Love, who Bernier inaccurately claims signed the initial PPA, alleges that she did *not* know CSL was out of compliance.  *See* SAC ¶¶ 75, 125-126. Furthermore, all of the misconduct Bernier alleges purportedly took place after this time, and even for this alleged subsequent conduct, Bernier offers no facts showing that Defendants knew their activity rendered claims for payment false.  Instead, Bernier simply parrots the FCA with sweeping and conclusory allegations of "knowledge" and "deliberate ignorance or reckless disregard."[29]

Where, as here, a relator "has made no allegations to support a finding Defendants had knowledge [as defined by the FCA] of the falsity of its certification and the resulting claims[,]" the complaint must be dismissed.  *See Rutledge v. Aveda*, 2015 WL 2238786, at *10 (N.D. Ala. 2015) (finding it insufficient "to make only conclusory allegations of knowledge" and that relator "allege[d] no facts at all to support this element"); *U.S. ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x 754, 760-61 (3d Cir. 2011) (conclusory allegations that defendant "knew" or "knowingly" acted were insufficient); *see also Rizzo-Alderson v. Eihab H. Tawfik, M.D., P.A.*,

---

[29]    *See* SAC ¶¶ 77 ("Infilaw and CSOL had deliberate ignorance or reckless disregard to [*sic*] comply with Title IV and its implementing regulations"); 98 ("Infilaw and CSOL knowingly violated requirements under Title IV that they knew were material"), 99 ("Infilaw and CSOL knowingly defrauded the federal [*sic*] Government"), 102 ("Infilaw and CSOL made fraudulent claims with knowledge that such claims would be tied to an increase in funds"); 110 ("CSOL entered into the initial PPA . . . with deliberate ignorance or reckless disregard for its statutory and regulatory duties and obligations under Title IV."); 111 ("Infilaw and CSOL … intended to use the initial PPA and re-certifications of same to submit false claims for payment."); 113 ("Infilaw and CSOL knowingly violated requirements under Title IV that they knew were material"); 117 ("Infilaw and CSOL made the false record with knowledge that the initial PPA was made with deliberate ignorance or reckless disregard and that such PPA would be tied to an increase in funds").

2017 WL 4410096, at *2 (M.D. Fla. Oct. 4, 2017) (Dalton, J.) (granting dismissal "because Plaintiff's allegations are largely conclusory or simply parrot statutory language").

Lastly, Bernier still has not identified any person or persons at InfiLaw or CSL who allegedly had the requisite knowledge (or when they had it), and she fails to differentiate between the two Defendants. Counts I and II should be dismissed for this additional reason. *Rutledge v. Aveda*, 2015 WL 9826462, at *5 (N.D. Ala. 2015) (citing relator's failure to "allege any particular defendant had knowledge of any particular statement's falsity").

### E. Count II is Premised on Infirm "False Record" Allegations.

The Order held that Count II for violation of § 3729(a)(1)(B) was clearly "due to be dismissed from the get-go for failure to comply with Rule 9(b)." Order at 19 n.6. The SAC did not remedy this deficiency. "Count II alleges that CSL submitted a false record, *i.e.* the initial PPA, and then annually re-certified the PPA to receive federal funds. Yet Plaintiff provides absolutely no detail about this entry process or the certifications—their time, place, or substance. *See Corsello*, 428 F.3d at 1008. "Th[is] seemingly unfounded claim[] fit[s] Plaintiff's indiscriminate approach to this action." Order at 19-20 n.6 (internal citations omitted). As discussed in detail in Section II.B, *supra*, Bernier now alleges who supposedly signed CSL's initial PPA in 2008 or 2009, but she had no involvement, this indisputably pre-dated her time at CSL, she cannot rely on the knowledge of non-relator Love (who got it wrong anyway), and the place, substance, or any other detail about that document are still absent. SAC ¶ 75. No information was added about the "annual re-certifications," and Bernier attaches an unsigned PPA listed as expiring in 2015, with no explanation of how she obtained it, why she claims it is authentic, when or where it was entered, or by whom. *Id*. ¶ 76. Besides these absent fundamental details, the SAC contains no allegations establishing that the claimed "false records" were knowingly false when made. Therefore, Count II should be dismissed on this basis as well.

## III.   THE COURT LACKS JURISDICTION OVER BERNIER'S COMMON LAW CLAIMS AND THEY FAIL AS A MATTER OF LAW

Bernier's new gross negligence and fraudulent inducement claims fail because:  (1)  there is no subject matter jurisdiction; (2) Bernier has failed to attempt let alone demonstrate good cause of why these claims should allowed months after the deadline imposed by the Scheduling Order; (3) they are barred by the statute of limitations; and (4) they fail to state a claim.

### A.   Supplemental Jurisdiction Does Not Exist.

Bernier requests supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367(a).  She does not establish any independent basis for federal jurisdiction over these claims. SAC ¶ 11.  And she doesn't attempt to show, let alone establish, how her personal tort claims against Defendants are part of the same "case or controversy" as her allegations that Defendants submitted false claims for payment to the United States.  Accordingly, she cannot establish subject matter jurisdiction.

Section 1367(a) grants federal courts the power to exercise jurisdiction over claims that it would not otherwise have jurisdiction to hear only if the additional claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." In determining whether the additional claims are "part of the same case or controversy," courts consider whether the claims "derive from a common nucleus of operative fact."  *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966)).  Bernier's common law allegations do not derive from the same nucleus of operative facts as the FCA claims.  While both may implicate a common controversy considering CSL's compliance with Department regulations, the focus of each analysis is separate.  The FCA claims focus on what CSL and InfiLaw submitted to the United States government, and whether such submissions were

33

fraudulent.  The gross negligence claim, by contrast, is based on what duty, if any, Defendants

owed to Bernier personally, and whether that duty was breached.  It does not rely on whether

Defendants submitted false claims in violation of the FCA.

Similarly, the fraudulent inducement claim will turn on what Defendants represented to

Bernier, whether those representations were material, and the employment and contractual

relationship between the parties.  The evidence and witnesses will focus on the interactions

between Defendants and Bernier around the time she was interviewing for a job as a professor.

The fraudulent inducement claim is entirely unrelated to Defendants' submissions to the

government.  Moreover, the United States is the real party of interest for the FCA claims.  By

contrast, Bernier is suing in her personal capacity for the common law claims, and the United

States has no interest in those claims.  Accordingly, the claims are not part of the same case or

controversy, and the Court should refuse to exercise supplemental jurisdiction. [30]

### B.    Bernier Has Not Demonstrated Good Cause.

The Court granted Bernier an "opportunity to re-plead" her defective claims and

instructed that her second amended complaint had to "remedy the deficiencies identified in this

Order." Order at p.20.  Nothing indicates that the Court's Order was a blank check to add new,

unrelated claims against Defendants, or to add new parties.  Bernier's attempt to add new parties

and claims is an improper attempt to circumvent the Scheduling Order and the good faith standard

required by Rule 16(b).  The deadline to amend the complaint or add parties expired on December

1, 2017.  Dkt. No. 43.  Rather than seeking leave to add new claims unrelated to the FCA and

attempting to demonstrate the requisite good cause, Bernier ironically uses the Court's ruling that

---

[30]    Alternatively, if the Court grants Defendant's motion to dismiss the FCA claims then it should refuse to
exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Baggett v. First Nat'l. Bank of Gainesville*, 117 F.3d 1342,
1353 (11th Cir. 1997).

her prior claims were defective not only to re-plead her FCA claims but also to circumvent the

Scheduling Order and required showings to add unrelated parties and claims.  Fed. R. Civ. P. 16(b);

*Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418-19 (11th Cir. 1998); *see Kuenzig v. Kraft Glob.*

*Foods, Inc.*, 2012 WL 366927, at *2 (M.D. Fla. 2012) (striking claims where "[t]he Court did not

state that Kuenzig could join additional parties or allege additional unfair or deceptive acts"), *aff'd*

*sub nom. Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937 (11th Cir. 2013).[31]  The Court should

reject this attempt and dismiss Counts IV and V.[32]

C.      **Count IV is Time Barred and Fails to Allege any of the Elements for Gross Negligence.**

Bernier's gross negligence claim (Count IV) presents a hornbook example of a conclusory

claim with no factual support that is barred by the statute of limitations.

1.      *The statute of limitations bars Count IV.*

Bernier's gross negligence claim is barred under the statute of limitations ("SOL")

applicable under either Florida or North Carolina law.  The SOL for gross negligence is three years

in North Carolina and four years in Florida.   N.C. Gen. Stat. § 1-52(5); Fla. Stat. § 95.11(3)(a);

*First Mut. Grp., LP v. Muricano*, 2015 WL 10792017, at *2 (S.D. Fla. 2015) ("Under Florida law,

the statute of limitations for     actions     sounding     in     breach     of     contract, negligence,

or gross negligence is four years."); *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 625

(W.D.N.C. 2014) ("A claim for negligence in North Carolina is barred by the statute of limitations

unless brought within three years of the date the claim accrues.").   "A cause of action based on

negligence accrues when the wrong giving rise to the right to bring suit is committed, even though

the damages at that time be nominal and the injuries cannot be discovered until a later date."

---

[31]      The Court may also strike these improper allegations under Fed. R. Civ. P. 12(f).  *See Kuenzig v. Kraft Glob. Foods, Inc.*, 2012 WL 366927, at *2 (striking claims).
[32]

*Harrold v. Dowd*, 149 N.C. App. 777, 781 (2002); *see also Morgan v. Spivey*, 2017 WL 4399539, at *12 (E.D.N.C. 2017) (applying same to gross negligence).  Bernier first asserted a claim for gross negligence, on May 7, 2018, so the SOL bars any claim arising before May 7, 2015.[33]

Although the basis of Bernier's claim is unclear, she alleges that Defendants' purported wrongdoings started years before May 7, 2015.  She asserts that Defendants knew that CSL was not in compliance with the initial PPA (from 2008/2009) and not in compliance with any of the certifications of the PPA.  SAC ¶ 134.  She further alleges CSL misrepresented its qualification for federal funds when it received provisional ABA accreditation and first entered a provisional PPA in 2008 (*id.* ¶¶ 51, 53, 75), and again to obtain full ABA accreditation in 2011 (*id.* ¶¶ 51, 53).  CSL purportedly re-certified these fraudulent claims annually.  *Id.* ¶ 75.  She alleges that CSL transferred funds to InfiLaw's accounts starting in Spring 2009 (*Id.* ¶ 82) and failed to apply a code of conduct and comply with copyright rules as early as 2012.  *Id.* ¶¶ 89, 93.  Simply put, she does not allege any wrongful conduct that began after 2013.  She does not allege any basis for the accrual of her claims to be delayed, or for tolling of the limitation period.  Accordingly, the SOL bars her claim.

### 2. *Bernier fails to state a claim for gross negligence.*

Bernier does not indicate what state law should apply to her gross negligence claim, but it must arise under either North Carolina or Florida law.  Bernier's claim fails under either.  To state a claim under North Carolina law, Bernier must sufficiently allege (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach was a proximate cause of the injury; (4) the plaintiff was injured as a result thereof; and (5) the defendant's conduct was willful,

---

[33]     Bernier's claim is barred under Florida if it arose before May 7, 2014.  *F.D.I.C. v. Copenhaver*, 2014 WL 12621202, at *3 (M.D. Fla. 2014) ("Under Florida law, "[a] cause of action accrues when the last element constituting the cause of action accrues." (quoting Fla. Stat. § 95.031(1))), *report and recommendation adopted sub nom. F.D.I.C. v. Mangano*, 2014 WL 12621581 (M.D. Fla. 2014).

wanton, or done with reckless indifference.  *Ross v. Tennessee Commercial Warehouse, Inc.*, 2014 WL 4672424, at *2 (W.D.N.C. 2014).  Willful conduct is "done with a deliberate purpose," while wanton conduct "is carried out with a wicked purpose or with reckless indifference."  *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 403 (2001).  Bernier has failed to allege any non-conclusory facts identifying any of these elements.

The full extent of Bernier's gross negligence claim is alleged in paragraphs 131-136 of the SAC.[34]  These six paragraphs contain a nonsensical mixture of conclusory statements reciting the elements of a gross negligence claim under Florida law (SAC ¶¶ 132, 134-136), speculative assumptions about Defendants' motivations (*id.* ¶¶ 132-133), and allegations that Defendants made intentional misrepresentations to both prospective students and Bernier.  *Id.* ¶¶ 133-135.

Bernier does not make any factual assertion that either Defendant owed Bernier (as an individual) any sort of common-law duty that would support her gross negligence claim. Identifying a legal duty is a prerequisite to stating a claim for gross negligence.  *Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 672 (W.D.N.C. 2012) (dismissing gross negligence claim where "[n]one of the[] allegations, however, are sufficient to establish a duty of care"); *Harris v. Daimler Chrysler Corp.*, 180 N.C. App. 551, 555 (2006) ("If no duty exists, there logically can be neither breach of duty nor liability.").  Furthermore, the defendant must owe that legal duty to the plaintiff; it cannot be a duty owed to a third party.  *See Little v. Omega Meats I, Inc.*, 171 N.C. App. 583, 589, *aff'd*, 360 N.C. 164 (2005) (rejecting negligent hiring claim because employer did not owe a duty to the injured party).  Courts have rejected attempts to create a legal obligations to individuals,

---

[34]     Bernier also incorporates most of the other allegations in the complaint, including her entire mischaracterization of the FCA statutory framework and irrelevant details about Defendants' corporate history and structure. SAC ¶ 131.  She also incorporates several paragraphs from Count III, which solely focus on duties that the ABA allegedly owed to Plaintiffs, and have nothing to do with any duty Defendants owe to Bernier.  *Id.*  These incorporated paragraphs further demonstrate that the SAC is an impermissible shotgun pleading, *see supra*, note 47, and do not offer any support for the gross negligence claim.

in the absence of an express contractual provision, for a school to remain accredited, and Bernier offers no reason to invent such a duty here. *See Waller v. S. Illinois Univ.*, 125 F.3d 541, 542 (7th Cir. 1997) (rejecting student's claim of constitutional property right to accreditation); *Shinabargar v. Bd. of Trustees of Univ. of D.C.*, 164 F. Supp. 3d 1, 30 (D.D.C. 2016) (agreeing with "other courts confronted with similar claims [that] have consistently found that ABA standards do not create a private right of action"). Nothing in the SAC identifies a duty that Defendants owed to Bernier.

Without identifying a duty, Bernier cannot fulfill the other elements of her gross negligence claim. She does not explain how either Defendant breached any duty. While she alternatively asserts that CSL "was not in compliance with the initial PPA and was not in compliance with any of the certifications of the PPA" (SAC ¶ 134), and that CSL "actively recruited Bernier" away from another school (*id.* at ¶ 135), neither of these actions breached a duty of care Defendants owed to Bernier that could give rise to a negligence claim. And, it is axiomatic that without a duty Bernier has failed to allege that Defendants' conduct was "willful, wanton, or done with deliberate indifference." *Ross*, 2014 WL 4672424, at *2.

Additionally, Bernier does not articulate what damage she suffered as a result of Defendants' alleged gross negligence. To the extent she implies that she suffered damage when Defendants "tricked her into relinquishing her prior tenured position," SAC ¶ 135, it is equally plausible that Bernier joined CSL because she was "forced to resign" and faced a "constructive termination" by her immediate past employer, Florida A&M. *Florida A&M Compl.* at ¶¶ 6, 23.[35] If she was forced to resign by Florida A&M, then she was not relinquishing her tenure status because of any action by Defendants.

---

[35]     This complaint is included as Ex. 6.

The same result apples under Florida law.  In Florida, gross negligence requires Bernier to allege the following elements: (1) the existence of a legal duty to the plaintiff; (2) breach of that duty; (3) the breach caused the plaintiff's injuries; (4) the plaintiff sustained damages as a result; (5) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (6) a showing of chargeable knowledge or awareness of the imminent danger; and (7) an act or omission occurring in a manner which evinces a conscious disregard of the consequences.  *Ademiluyi v. Nat'l Bar Ass'n*, 2017 WL 3022330, at *3 (M.D. Fla. 2017) (requiring plaintiff to establish the elements of ordinary negligence and the additional elements of gross negligence); *Deutsche Bank Nat'l. Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1117 (M.D. Fla. 2013).

For the same reasons discussed above, Bernier cannot meet this standard because she does not establish that Defendants owed her a duty of care.  *Ademiluyi*, 2017 WL 3022330, at *6 ("Because Defendants NBA and Crump owed no legal duty to Plaintiff . . . Plaintiff has failed to state a negligence or gross negligence claim against these two Defendants.").  Additionally, she fails to identify the circumstances that constitute an "imminent or clear and present danger amounting to more than the normal and usual peril," or what act or omission that Defendants took that "evinces a conscious disregard" of the consequences.  Her statement that Defendants "had a chargeable knowledge or awareness of the imminent danger" is equally conclusory, and her inclusion of CSL reducing a minimum GPA is confusing and irrelevant.   SAC ¶ 136.[36] Accordingly, Count IV should be dismissed.

---

[36]     She does not explain what GPA was reduced (*e.g.*, whether it was the undergraduate GPA related to admission, the minimum GPA to make honor roll, or something else).

**D.      Bernier's Fraudulent Inducement Claim is Time Barred and Does not Meet the Pleading Requirements of Rule 9(b).**

### 1.      *The statute of limitations expired.*

The SOL for fraud, including for fraudulent inducement, is four years in both Florida and North Carolina.[37]  A claim for fraudulent inducement accrues at the time "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence."  Fla. Stat. Ann. § 95.031; *Abecassis*, 467 F. App'x at 813.  Bernier first alleged her fraudulent inducement claim on May 7, 2018, so the claim is barred if it arose before May 7, 2014.

Bernier alleged that she was hired on March 20, 2012.  SAC ¶ 143.  She claims that Defendants made all the allegedly false representations that make up her claim on or before this date.  *Id.* at ¶¶ 138-145.  Most, if not all, of the violations that she alleges made Defendants representations false were ongoing at the time she signed her contract in 2012, and were present when she started working for CSL in January 2013. *E.g.*, *id.* at ¶¶ 51, 64; 127-128 .  Bernier bases her fraudulent inducement claim on these allegations, and all of them took place beyond the statute of limitations deadline of May 7, 2014.  Several of these purported violations, including the supposed lack of a code of conduct, CSL's declining bar rates, and the admission standards for the students Bernier was allegedly recruiting (SAC ¶ 3) were publicly known or should have been discovered at least by January 1, 2014, if not earlier.  And, Bernier makes no allegations that support a later date of accrual for her claims, or for tolling the SOL.  Therefore, her fraudulent inducement claim started accrued before May 7, 2014, and the statute of limitations bars her claim.

---

[37]      Fla. Stat. § 95.11(3)(j); *Abecassis v. Eugene M. Cummings, P.C.*, 467 F. App'x 809, 813 (11th Cir. 2012). N.C. Gen.Stat. § 1–52(9); *Mountain Land Props.*, 46 F. Supp. 3d at 624.

## 2.   *Bernier failed to allege the fraudulent inducement claims with the requisite specificity under Rule 9(b).*

In order to state a claim for fraudulent inducement, Bernier must allege that (a) each Defendant made a misrepresentation of a material fact; (b) each Defendant knew or should have known of the falsity of the statement; (c) the Defendants intended that the representation would induce another to rely and act on it; and (d) Bernier suffered injury in justifiable reliance on the representation. *Abecassis*, 467 F. App'x at 814 n.4.[38] "Claims for fraud in the inducement . . . must also meet the heightened pleading standards of Rule 9(b)." *Craig v. Little Pearls Adoptions Agency, Inc.*, 2011 WL 2693716, at *3 (M.D. Fla. 2011).  "This requires a plaintiff to set forth (1) precisely what statements were made in what . . . oral representations . . ., (2) the time and place of each such statement and the person responsible for making [the] same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Medrando v. CTX Mort. Co., LLC*, 2012 WL 2931293, at *4 (M.D. Fla. 2012).  In other words, Bernier must identify the specific statement or statements that she alleges were fraudulent (not generally assert that a fraudulent statement was made), clearly delineate what fraudulent statement each Defendant made (not simply lump defendants together), identify the date each statement was made (not just allege a range of dates), and identify the specific speaker who made the statement and where the statement was made. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *Brooks*, 116 F.3d at 1381; *Etkin & Co., Inc.*

---

[38]      Bernier does not identify whether Florida or North Carolina law applies to Count V, but it is immaterial as North Carolina law is substantially the same as Florida law. *TradeWinds Airlines, Inc. v. C-S Aviation Servs.*, 222 N.C. App. 834, 840 (2012) (reciting elements); *Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1283 (M.D. Fla. 2002) (choice of law analysis is unnecessary when they lead to the same result); *Worley v. Moore*, 2017 WL 871198, at *25 n.10 (N.C. Super. 2017) (noting that the elements between states do not have to be identical, but only essentially the same).

*v. SBD, LLC*, 2013 WL 12092536, at *5 (S.D. Fla. 2013); *Fellner v. Cameron*, 2012 WL 1648886, at *3-4 (M.D. Fla. 2012); *Medrando*, 2012 WL 2931293, at *4.[39]

Bernier has not come close to meeting this requirement.   First, she does not specifically identify what purportedly false statement[40] was made; she merely relays a general fact she claims constituted a misrepresentation.  SAC ¶¶ 140-141.  This type of general statement does not meet the requirements of Rule 9(b).  *Medrando*, 2012 WL 2931293, at *4 (rejecting statement that defendants "intentionally misrepresented to Plaintiff that [they were] entitled to receive mortgage payments from Plaintiff" as insufficiently specific).[41]  Bernier's allegation does not identify any specific statement, she just alleges that Defendants misrepresented a "material fact."  And to the extent this was the fact that CSL was fully accredited or that she could gain tenure at CSL (SAC ¶¶ 142-143, 145), Bernier's own pleading recognizes that these were true (*id.* ¶¶ 51 (CSL was fully accredited in 2011), 3 (alleging Bernier's "tenure was formalized at CSOL on May 5, 2014)).

Next, Bernier does not identify the speaker that the alleged misrepresentation was made or which Defendant made the statement.  She identifies three individuals who participated in CSL's efforts to recruit Bernier, but does not indicate who made the specific misrepresentation about which she complains.  SAC ¶¶ 138, 140.  In fact, Bernier does not even allege that one of the three named individuals made the purported fraudulent statement; instead, she states "InfiLaw and CSOL" made the misrepresentation.  *Id.* at ¶ 140.  Rule 9(b) requires a plaintiff to identify who said the statement and which defendant should be held liable for the alleged misrepresentation.  *E.g.*, *Brooks*, 116 F.3d at 1381 (affirming dismissal where "[t]he Amended Complaint is devoid

---

[39]    *See also Julian v. Wells Fargo Bank, N.A.*, 2012 WL 1857611, at *6 (N.C. Super. 2012) ("Specifically, the complaint must allege with particularity the time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations.").

[40]    It is not even clear whether Bernier complains about one statement or multiple statements.  For convenience, Defendants assume she only refers to one statement in Count V.

[41]    *See also Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 702 (2009) (dismissing claim because "Hardin failed to identify any specific statement made by anyone.").

42

of specific allegations with respect to the separate Defendants"); *Fellner*, 2012 WL 1648886, at *4 (dismissing claim where "Plaintiff lumps many Defendants together"); *Medrando*, 2012 WL 2931293, at *4 (dismissing allegations that failed to distinguish between "Wells Fargo Bank, HSBC Bank USA, N.A., and others").[42]  That she does not identify the speaker compounds the fact that Bernier does not identify which party the three named witnesses represented during negotiations.  *See Fellner*, 2012 WL 1648886, at *4.

Additionally, Bernier does not adequately indicate when or where the alleged misrepresentation took place.  She simply claims it took place sometime in "late 2011/early 2012." SAC ¶ 138.  Courts routinely reject such vague statements of time and location of fraudulent statements.  *E.g. Etkin & Co.*, 2013 WL 12092536, at *5 (rejecting claim that names multiple possible dates over the course of a year); *D.H.G. Props., LLC v. Ginn Cos., LLC*, 2010 WL 5584464, at *6 (M.D. Fla. 2010) ("Yet this allegation lacks any additional specificity—for example, where and when Shaffer made the representation.").[43]

Bernier's allegation that she relied on Defendants' representation by "voluntarily resign[ing] and relinquish[ing] her position as a full-time tenured professor" should be disregarded as implausible and not credible because she previously admitted that her resignation involuntary and caused by Florida A&M, not by something she chose to give up for her job at CSL.

---

[42]    *See also, e.g.*, *Worley*, 2017 WL 871198, at *26 (rejecting argument that alleging representation was made by a group of people, without specifying who or how it can be attributed to specific defendant, is sufficient to state a claim); *Ahmed v. Porter*, 2009 WL 2581615, at *20 (W.D.N.C. 2009) ("While plaintiffs have alleged the representations made, they have failed to attribute such representations to any employee or officer, and there are absolutely no allegations of who said what to whom, the time, or the place of the alleged misrepresentations.").

[43]    *See also Smithfield Bus. Park, LLC*, 2014 WL 3738217, at *5 (dismissing fraudulent inducement claim because "the allegations do not specify the time or place of the misrepresentations/omissions. Simply stating the misrepresentations occurred sometime between October 2008 and February 2009 is not sufficiently specific to plead fraud").

As Bernier has failed to plead her fraudulent inducement allegations with the specificity required by Rule 9(b), the Court must dismiss this claim.

### E.    Counts IV and V Constitute Educational Malpractice Claims that Must be Dismissed.

The SAC's Counts IV and V are in fact educational malpractice claims masquerading as "gross negligence" and "fraudulent inducement."  Educational malpractice is not cognizable under North Carolina or Florida law.  The Court should not countenance Bernier's attempt to circumvent this well-established precedent by disguising her claims as other causes of action.

Courts in North Carolina and Florida have repeatedly rejected claims that, in reality, seek recovery for educational malpractice, no matter the attached label.[44]  An educational malpractice claim is one involving "inquiry into the nuances of educational processes and theories[,]" asserting that the defendant failed to provide "access to more challenging educational programs[,]" or claiming that the "education was not good enough."[45]  This is precisely what Counts IV and V do here.

The fundamental allegation underlying Counts IV and V is that CSL was not "not in full or substantial compliance with the [ABA] Standards" and knew (but misrepresented) this fact when it recruited her.  SAC ¶¶ 135, 140-141, 145.  Bernier specifically points to "Standard 205(b), Standard 301(a), and Standard 501(b)."  *Id.* ¶ 141.  These require law schools to "foster and

---

[44]    North Carolina:  *See McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 983 (M.D.N.C. 2011), *rev'd in part on other grounds, Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012) ("[T]he Court will not … open up to any type of 'educational malpractice' claim."); *Thomas v. Olshausen*, 2008 WL 2468738, at *2 (W.D.N.C. 2008) ("[T]here is no cognizable claim for educational malpractice under North Carolina law"), *aff'd*, 305 F. App'x 55 (4th Cir. 2008). Florida:  *Dep't of Health & Rehabilitative Servs. v. B.J.M.*, 656 So.2d 906, 914 (Fla. 1995) ("Courts, including those in Florida have rejected claims of educational malpractice as a tort action for a variety of reasons[.]"); *Armstrong v. Data Processing Inst., Inc.*, 509 So.2d 1298, 1299 (Fla. App. 1987) ("Regardless of the nomenclature, the gravamen of count III is a cause of action for educational malpractice which is not cognizable in Florida." (citations omitted)); *Tubell v. Dade Cty. Pub. Sch.*, 419 So.2d 388, 389 & n.1 (Fla. App. 1982) (plaintiff's claims were non-cognizable assertions of "educational malpractice" regardless of how they were labeled).
[45]    *Ryan v. Univ. of N.C. Hosps.*, 128 N.C. App. 300, 302 (1998) (citations omitted); *Thomas*, 2008 WL 2468738, at *2.

44

maintain equality of opportunity for students, faculty, and staff," a "rigorous curriculum," and "sound admissions policies and practices" to ensure that students admitted be capable of "satisfactorily completing its program of legal education and being admitted to the bar." ABA Standards and Rules of Procedure for Approval of Law Schools, Standards 205, 301, and 501. These highly subjective standards clearly involve exactly the type of "inquiry into the nuances of educational processes and theories" – admissions and curriculum – that the refusal to recognize educational malpractice claims is designed to avoid.[46] Thus, Counts IV and V should also be dismissed as an educational malpractice claim in disguise.[47]

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court dismiss Counts I, II, IV, and V of SAC with prejudice.

---

[46]   *Ryan*, 128 N.C. App. at 302 (citation omitted).  Count IV also asserts that Defendants "created an atmosphere where the value and quality of legal education was replaced by a rote quantitative analysis to increase the student population to collect federal funds from the DOE."  SAC ¶ 132.  This is a complaint that the "education was not good enough."  *Ryan*, 128 N.C. App. at 302 (citation omitted).

[47]   The SAC should be dismissed for the additional, independent reason that it constitutes a "shotgun" pleading, consisting of "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before."  *See* SAC ¶¶ 68, 109, 131, 137; *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 & n.11 (11th Cir. 2015).  This Circuit bars shotgun pleadings.  *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997).  The *Lorona* Court twice dismissed relators' complaint *sua sponte* for this very reason.  *See Lorona,* Dkt. No. 35 at 3 (striking second amended complaint and detailing striking of first amended complaint for same reason).

Dated: June 4, 2018

Respectfully submitted,

/s/ David E. Mills

**David E. Mills, Esq.**
**COOLEY LLP**
1299 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 842-7800
Fax: (202) 842-7899
Email: dmills@cooley.com
***Trial Counsel***

**Mazda K. Antia, Esq.**
**COOLEY LLP**
4401 Eastgate Mall
San Diego, CA 92121
Tel: (858) 550-6000
Fax: (858) 550-6420
Email: mantia@cooley.com

**Vincent A. Citro, Esq.**
Florida Bar. No. 0468657
**LAW OFFICES OF HORWITZ &**
**CITRO, P.A.**
17 East Pine Street
Orlando, FL 32801
Tel: (407) 843-7733
Fax: (407) 849-1321
Email: vince@horwitzcitrolaw.com

*Counsel for Defendants InfiLaw Corporation*
*and Charlotte School of Law, LLC*

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument on their Motion to Dismiss, pursuant to Local Rule 3.01(j).  Defendants estimate one hour will be required for such argument.


## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that I conferred with counsel for Plaintiffs between June 1, 2018 and June 4, 2018 on the issues raised in the Motion to Dismiss but we could not reach an agreement.


*/s/ Mazda K. Antia*
Mazda K. Antia, Esq.
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2018, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record, including the following:

Coleman W. Watson, Esq.
Watson LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801

*Counsel for Relator and Plaintiffs*

Johanna W. Clark
Florida Bar No. 196400
**Carlton Fields Jorden Burt P.A.**
450 S. Orange Ave., Suite 500
Orlando, FL 32801

*Counsel for Defendants American Bar Association Council of the Section of Legal
Education and Admissions to the Bar and American Bar Association Accreditation
Committee of the Section of Legal Education and Admissions to the Bar*

Jeremy Ronald Bloor
US Attorney's Office
Suite 3100
400 W Washington St
Orlando, FL 32801

*Counsel for United States of America*

*/s/ David E. Mills*
David E. Mills
*Counsel for Defendants InfiLaw
Corporation and Charlotte School of Law,
LLC*

178249318