1  Coleman W. Watson, Esq.
   coleman@watsonllp.com
2  Leia V. Leitner, Esq.
   leia@watsonllp.com
3  WATSON LLP
   189 S. Orange Avenue, Suite 810
4  Orlando, FL 32801
   Telephone: 407.377.6634
5  Facsimile: 407.377.6688
   *Attorneys for Plaintiffs, Barbara Bernier and Ese Love*

6

7

8              **UNITED STATES DISTRICT COURT**

9              **MIDDLE DISTRICT OF FLORIDA**

10                  **ORLANDO DIVISION**

11

12  UNITED STATES OF AMERICA, EX
    REL. BARBARA BERNIER;
13  BARBARA BERNIER; and, ESE LOVE,

14              Relator/Plaintiffs,          Case No.:  6:16-cv-00970-RBD-TBS
       vs.
15
    INFILAW CORPORATION;                     **MEMORANDUM OF LAW IN**
16  CHARLOTTE SCHOOL OF LAW, LLC;            **OPPOSITION TO ABA DEFENDANTS'**
    AMERICAN BAR ASSOCIATION, d/b/a          **MOTION TO DISMISS**
17  COUNCIL OF THE SECTION OF LEGAL
    EDUCATION AND ADMISSIONS TO
18  THE BAR; and AMERICAN BAR
    ASSOCIATION, d/b/a ACCREDITATION
19  COMMITTEE OF THE SECTION OF
    LEGAL EDUCATION AND
20  ADMISSIONS TO THE BAR,

21              Defendants.

22

23

24

25

26

27

28

*(left margin, vertical text)* WATSON LLP / 189 S. Orange Avenue, Suite 810 / Orlando, FL 32801 / Telephone: 407.377.6634

1    Relator/Plaintiff, BARBARA BERNIER, and Plaintiff, ESE LOVE, pursuant to M. D.

2    Fla. R. 3.01(b), respond to the motion to dismiss count III of the second amended complaint,

3    Doc. 86, served by Defendants, AMERICAN BAR ASSOCIATION, d/b/a COUNCIL OF THE

4    SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR and AMERICAN

5    BAR ASSOCIATION, d/b/a ACCREDITATION COMMITTEE OF THE SECTION OF

6    LEGAL EDUCATION AND ADMISSIONS TO THE BAR (collectively the "ABA

7    Defendants"), and state as follows:

8    **I.    INTRODUCTION**

9    For-profit schools are the most expensive option yet cater to students with the least

10   ability to pay and, according to statistics, to succeed academically.  This case demonstrates that

11   law schools are not immune from these pernicious practices, which if unchecked can, and all too

12   often do, culminate in hundreds of thousands of dollars in non-dischargeable, crippling student

13   loan debt.  Every story, every industry, needs a hero—who some would call a guardian.  The

14   ABA Defendants voluntarily undertook that role for the legal industry more than 60 years ago.

15   But it failed to live up to its own standards.

16   Prospective law students consume statistics; they quickly learn that ascending to the

17   profession means roughly 1,000 days to the bar.  This case lies in the gap of that journey, where

18   they discover certain indicia of reliability.  One of the most significant, of course, is the term

19   "ABA-accredited" that wields much the same power as does a fanciful trademark.  For law

20   students, they rely heavily on this term because in all but four of the fifty States, they *must*

21   capture this credential to qualify for a seat in the bar exam conference hall.  The equation is

22   straightforward: no ABA-credential, no bar exam; no bar exam, no license to practice law.

23   The ABA Defendants exist solely to accredit law schools, and in that process, the public

24   depends on their stamp of approval.  With accreditation, the ABA Defendants continuously hold

25   out that law schools meet their accreditation standards.  In spite of all this, the ABA Defendants

26   now cast aside the very class of persons they were designed to serve.  As they say, they owe no

27   duty to any law student, period.  But if accreditation is not solely for the benefit of students, then

28   it is difficult to imagine why the task is performed at all.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

## II.    BACKGROUND

As the ABA Defendants observe, they were neither named in the initial nor amended complaints in this action.  Doc. 86 at 3–4.  Be that as it may, this has nothing to do with the operative complaint—the second amended.  *See generally* Doc. 73.  There, the ABA Defendants' actions, and inactions, are germane to count III for negligence.  *Id.* at 2.

Central to this case are claims arising under the False Claims Act (the "FCA"), 31 U.S.C. § 3729, *et seq.*, to recover damages from false claims made by Defendants, INFILAW CORPORATION ("Infilaw") and CHARLOTTE SCHOOL OF LAW, LLC ("CSOL") (collectively the "Infilaw Defendants") to the United States Department of Education ("DOE"), in violation of Title IV of the Higher Education Act ("HEA"), 20 U.S.C. §§ 1070, *et seq.*  Doc. 73 at 2.  Bernier is a former CSOL professor and Love is a former CSOL student.  *Id.*  Both Bernier and Love relied, predictably, on the holy grail: the ABA-accredited seal of approval on CSOL.

The ABA Defendants serve as the accrediting agency for law schools under the HEA and have undertaken certain legal duties in that regard since 1952.  *Id.* at 3, 6.  But it is important to note that the ABA Defendants are not the "ABA proper."  Instead, as their website describes, they are "independent of the ABA, as required by DOE regulations."[1]  The ABA Defendants' sole purpose, as opposed to the ABA generally, is to "be a creative national force in providing leadership and services to those responsible for[,] and those who benefit from[,] a sound program of legal education and bar admissions."[2]  One of Infilaw's Board Members, Dennis Archer, is on a committee for the ABA's Section of Legal Education and Admissions to the Bar and is tasked with duties concerning accreditation and financial reviews of law schools,

---

[1] *See* American Bar Association, *About Us*, https://www.americanbar.org/groups/legal_education/about_us.html (last visited June 11, 2018). Nonetheless, there is no indication that the ABA Defendants are actually a separate legal entity from the ABA. This court may consider factual content on the ABA Defendants' website in deciding the motion to dismiss because the ABA Defendants' website is referenced in the second amended complaint, Doc. 73 at 4. *E.g., Friedman v. MedJet Assistance, LLC*, No. cv 0907585MMMVBKX, 2010 WL 11463109, at *4 (C.D. Cal. May 13, 2010) (collecting cases).

[2] *See supra*, note 1.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

including CSOL.  Doc. 73 at 8.  Another of Infilaw's employees, Jay Conison, also served on a committee for the ABA's Section of Legal Education and Admissions to the Bar.  *Id.*

In a nutshell, the allegations are that the Infilaw Defendants, who operate for-profit law schools, defrauded the federal government by entering into Program Participation Agreements ("PPAs") with the DOE and then did an end-run around the HEA, all while on the ABA Defendants' watch.  *See generally* Doc. 73.  In December 2016, the DOE found that CSOL was out of compliance with ABA standards and that the noncompliance was both "substantial" and "persistent."  *Id.* at 19.  The DOE went on to find that CSOL made "substantial misrepresentations" regarding the nature of its academic programs.  *Id.*  As a result, the DOE revoked CSOL's ability to access Title IV funds.  *Id.*  The State of North Carolina revoked CSOL's business license in August 2017.  *Id.* at 10.  Shortly thereafter, CSOL closed.  *See id.*

## III.   LEGAL STANDARD

### A.   Rule 12(b)(2): *In Personam* Jurisdiction.

To establish personal jurisdiction over a nonresident defendant, a plaintiff "initially need only allege sufficient facts to make out a prima facie case of jurisdiction."  *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, No. 6:17-cv-1734ORL37KRS, 2018 WL 1701994, at *3 (M.D. Fla. Apr. 4, 2018) (Dalton, J.) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999).  When the complaint makes the *prima facie* showing, then the defendant may challenge personal jurisdiction by submitting sworn affidavits, testimony, or other evidence refuting the plaintiff's claim of jurisdiction.  *E.g.*, *Brennan v. Roman Catholic Diocese of Syracuse NY, Inc.*, 322 F. App'x 852, 854 (11th Cir. 2009).  The burden shifts back to the plaintiff to evince personal jurisdiction only when the defendant meets his evidentiary burden.  *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

### B.   Rule 12(b)(1): Subject Matter Jurisdiction.

Where federal question jurisdiction exists, as here, Congress has authorized district courts to exercise discretion to assert supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  *Id.* § 1367(c)(2).

### C.  Rule 12(b)(6): Failure To State A Claim Upon Which Relief Can Be Granted.

To adequately plead a claim for relief, Rule 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true."  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

## IV.  ARGUMENT & AUTHORITIES

The motion to dismiss is due to be denied for several reasons.  The ABA Defendants have not controverted the personal jurisdiction allegations in the complaint.  Supplemental jurisdiction exists because count III is borne from a common nucleus of fact with counts I and II. The complaint pleads a legal duty that the ABA Defendants both assumed and breached.

### A.  The Complaint Pleads A *Prima Facie* Case Of *In Personam* Jurisdiction.

1. The burden of production has not shifted to Plaintiffs because the ABA Defendants have not presented a meritorious defense to personal jurisdiction with any competent evidence.

The Eleventh Circuit has long recognized that a nonresident defendant's attempt to challenge a *prima facie* case of personal jurisdiction with "conclusory assertions of ultimate fact" is insufficient to shift to the plaintiff "the burden of producing evidence supporting jurisdiction."[3]  *Posner*, 178 F.3d at 1215.  As the court is well-aware, the ABA Defendants'

---

[3] This holding is consistent throughout Florida's federal and state courts.  *See, e.g.*, *Andrew v. Radiancy, Inc.*, No. 6:16-cv-1061ORL37GJK, 2017 WL 2692840, at *2 (M.D. Fla. June 22, 2017) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)) ("If the complaint

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1  motion to dismiss is unsupported by any evidence, *see generally* Doc. 86, so should the court

2  determine that the second amended complaint makes a *prima facie* showing of personal

3  jurisdiction, then the inquiry should end there because the ABA Defendants have not, and

4  cannot, meet their burden of production by mere unsworn statements of counsel contained in a

5  motion to dismiss.  *See, e.g.*, *Bonilla v. Potter*, No. 6:02-cv-762-ORL22KRS, 2004 WL

6  1925051, at *5 (M.D. Fla. July 12, 2004), *aff'd*, 138 F. App'x 299 (11th Cir. 2005) ("Obviously,

7  mere unsworn statements of counsel do not constitute evidence.").

8       A *prima facie* case is established if the plaintiff's jurisdictional allegations are sufficient

9  to withstand a motion for directed verdict, *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d

10  1264, 1268–69 (11th Cir. 2002), and the district court must accept the facts alleged in the

11  complaint as true, to the extent they are uncontroverted by the defendant's affidavits,"

12  *Madara*, 916 F.2d at 1514.  If any record evidence conflicts, the court must "construe all

13  reasonable inferences in favor of the plaintiff."  *Meier*, 288 F.3d at 1269.  But where there is no

14  counter-evidence on the record, it is axiomatic that the allegations of the complaint control

15  because there is nothing that otherwise controverts them.  *See id.*; *see also, e.g.*, *Barriere v.*

16  *Juluca*, No. 12-23510-CIV, 2014 WL 652831, at *4 (S.D. Fla. Feb. 19, 2014) (concluding that

17  where defendant challenged personal jurisdiction but failed to support argument with evidence,

18  the court "[wa]s left only with the allegations in the Plaintiffs' Complaint").[4]

19       Personal jurisdiction disputes are resolved through a burden-shifting framework.  Indeed,

20  Plaintiffs, as masters of the pleading, bear the initial burden of alleging the jurisdictional

21  linchpin of the suit, whereas a defendant may rebut those allegations with evidence that volleys

22

23  states a prima facie case, then a defendant <u>must</u> support its Rule 12(b)(2) motion with non-
    conclusory affidavits.") (Dalton, J.) (emphasis added); *Pathman v. Grey Flannel Auctions, Inc.*,

24  741 F. Supp. 2d 1318, 1321 (S.D. Fla. 2010) (same proposition); *Venetian Salami Co. v.*
    *Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) (same).

25

26      [4] *Accord Seven for All Mankind, LLC v. Grasty*, No. 1:04-cv-3654-JTC, 2006 WL
    8431869, at *1 (N.D. Ga. Apr. 11, 2006) (noting that even though a defendant waived personal
    jurisdiction by filing a paper that the court construed as an answer and which did not challenge

27  personal jurisdiction, nonetheless, even if there had been no waiver the defendant "failed to
    sufficiently controvert" the plaintiff's *prima facie* case because he did "nothing more than

28  generally deny the allegations of the complaint" and did not support his arguments with any
    evidence).

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1   the burden back to the plaintiff.  *E.g.*, *Brennan*, 322 F. App'x at 854.  But where, as here, the

2   defendant fails to file any affidavits, testimony, or documents, then "it cannot be said that [the]

3   Defendant raised a 'meritorious' defense to personal jurisdiction."  *Barriere*, 2014 WL 652831

4   at *5.  *Barriere* observed, as this court should, that the court must accept allegations in the

5   complaint as fact, "absent any challenge that would shift the burden."  *Id.*  The sole issue, then,

6   is whether the complaint sufficiently alleges a *prima facie* case showing personal jurisdiction.

7           2.   <u>The exercise of general jurisdiction over the ABA Defendants is constitutionally
             proper because the ABA Defendants have both continuous and systematic</u>
8            <u>contacts with Florida.</u>

9           Because specific jurisdiction is subsumed by general jurisdiction, the court should first

10  examine general jurisdiction.  "While Florida's specific jurisdiction requires the plaintiff to

11  establish connexity between the injuries suffered and the defendant's contacts, Florida's general

12  jurisdiction does not."  *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1341 (S.D. Fla.

13  2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015).

14  Under Florida's long-arm statute, "[a] defendant who is engaged in substantial and not isolated

15  activity within this state, whether such activity is wholly interstate, instrastate, or otherwise, is

16  subject to the jurisdiction of the courts of this state, whether or not the claim arises from that

17  activity."  § 48.193(2), Fla. Stat.  The reach of this provision extends to the limits imposed by

18  the United States Constitution and, therefore, to determine general jurisdiction, this court need

19  only determine whether an exercise of personal jurisdiction over the ABA Defendants "would

20  exceed constitutional bounds."  *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010).

21          "A court may assert general jurisdiction over foreign . . . corporations . . . when their

22  affiliations with the State are so 'continuous and systematic' as to render them essentially at

23  home in the foreign State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

24  919 (2011).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable

25  to all-purpose jurisdiction there"—the paradigm all-purpose forums for general jurisdiction are a

26  corporation's place of incorporation and principal place of business.  *Daimler AG v. Bauman*,

27  571 U.S. 117, 137 (2014).

28

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    Nonetheless, post-*Daimler*, Florida courts have rejected the notion that defendants may

2    only be sued in their states of incorporation and principal places of business.  *See Barriere*, 2014

3    WL 652831 at *7 ("While the Court did not expand on the specifics, it noted that it would be

4    possible for a corporation to be 'at home' in places outside of its place of incorporation or

5    principal place of business.") (citing *Daimler*, 571 U.S. at 138).  Significantly, *Daimler* neither

6    overruled nor abrogated *Goodyear*.  Instead, *Daimler* reaffirmed *Goodyear's* standard that

7    "general jurisdiction is proper when a corporation's affiliations with the state are so continuous

8    and systematic as to render them at home in the forum state."  *Am. Fid. Assur. Co. v. Bank of*

9    *New York Mellon*, 810 F.3d 1234, 1241 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 90 (2016).

10   Since *Daimler*, the Eleventh Circuit has clarified that a foreign corporation can be subjected

11   to general jurisdiction when the corporation's activities in the forum closely approximate the

12   activities that ordinarily characterize a corporation's place of incorporation or principal place of

13   business.  *Carmouche*, 789 F.3d at 1205.[5]  To qualify as "at home," the ABA Defendants must

14   be comparable to a domestic enterprise in Florida.  *Daimler*, 571 U.S. at 133.

15   The second amended complaint supports general jurisdiction.  Bernier and Love allege

16   that the ABA Defendants have "continuous and systematic contacts with Florida through

17   business relationships with multiple law schools located in Florida" and that the ABA

18   Defendants derive "significant fees from law schools in Florida in exchange for undergoing the

19   law school accreditation process."  Doc. 73 at 4.  None of this is controverted by the ABA

20   Defendants with any evidence, so the ABA Defendants' argument in a legal brief cannot,

21   without more, override the jurisdictional allegations in the complaint.  *See generally* Doc. 86.

22   "A lack of personal jurisdiction may be waived by the affected party."  *Kinsman v. Florida State*

23   *Univ. Bd. of Trustees*, No. 6:15-cv-16-ORL-31KRS, 2015 WL 11110542, at *1 (M.D. Fla. Apr.

24   27, 2015).  Effectively, the ABA Defendants have waived the defense by failing to defend it.

25

26

27       [5] This court's sister courts have endorsed the *Carmouche* standard.  *See, e.g.*,
*www.Turnstiles.us, Inc. v. Modular Sec. Sys., Inc.*, No. 15-cv-1806-RM-MEH, 2016 WL
28   9735764, at *5 (D. Colo. June 28, 2016) ("[T]his Court finds the Eleventh Circuit's explanation
of the "at home" test in *Carmouche* the most helpful.").

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

What is more, as admitted by the ABA's own website, the ABA Defendants currently accredit eleven (11) Florida law schools.[6]  Florida holds the third highest number of accredited law schools in the nation, and indeed the ABA Defendants have regulatory oversight over more law schools in Florida than in Illinois, their state of incorporation, or North Carolina, where CSOL was located.  *See supra*, note 6.  In Florida, the ABA Defendants' corporate activity arises from the very core of why they were organized as an entity: to serve as an accreditor for law schools.  In other words, in Florida, the ABA Defendants are performing the same tasks as they do in Illinois, which include both continuous and systematic contact with eleven law schools, as well as with the Florida Bar.  Given that the ABA Defendants regulate *more* law schools in Florida than in Illinois, their Florida corporate activities "closely approximate the activities" that ordinarily characterize their place of incorporation or principal place of business. *See Carmouche*, 789 F.3d at 1205.  Undeniably, the ABA Defendants purposefully direct their activities at the State of Florida.

The general jurisdiction cases on which the ABA Defendants rely are not sufficiently analogous to apply.  *See* Doc. 86 at 7–8 (discussing *Daimler*, *Goodyear*, *Wolfe*, and *Schulman*). In those cases, unlike here, the defendants actually challenged personal jurisdiction with counter-evidence.  *See Daimler*, 571 U.S. at 148 (referencing declaration record submitted by defendant to challenge personal jurisdiction); *Brown v. Meter*, 681 S.E.2d 382, 384 (N.C. Ct. App. 2009), *rev'd sub nom. Goodyear*, 564 U.S. 915 (U.S. 2011) ("The dismissal motions filed by Defendants and other Goodyear affiliates were supported by affidavits . . . ."); *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. Appx. 786, 790–91 (11th Cir. 2017) (noting that in objecting to personal jurisdiction, the defendant attached a declaration of one of its shareholders to controvert the jurisdictional allegations); *Schulman v. Glob. Citizens Travel, LLC*, No. 13-cv-23766, 2015

---

[6] *See* American Bar Association, *Schools by State*, https://www.americanbar.org/groups/probono_public_service/resources/directory_of_law_school_public_interest_pro_bono_programs/schools_by_state.html (last visited June 12, 2018).  This court may consider information contained on the ABA Defendants' own website in resolving the personal jurisdiction dispute.  *Bauman v. DaimlerChrysler AG*, No. C-04-00194 RMW, 2005 WL 3157472, at *5 (N.D. Cal. Nov. 22, 2005) ("The court will consider plaintiffs' evidence printed from the DaimlerChrysler and MBUSA websites for the purpose of determining the existence of personal jurisdiction."); *see also supra*, note 1.

WL 11018438, at *2 (S.D. Fla. Jan. 20, 2015) (referencing declaration record submitted by

defendant to challenge personal jurisdiction), *aff'd sub nom. Schulman v. Inst. for Shipboard*

*Educ.*, 624 Fed. Appx. 1002 (11th Cir. 2015).

The ABA Defendants' activity in Florida is not insubstantial or isolated.  Instead it

mirrors, if not exceeds, the same type of corporate activities that they conduct in Illinois.

3.  The exercise of specific jurisdiction over the ABA Defendants is constitutionally proper because the ABA Defendants have minimum contacts with Florida and the exercise of jurisdiction would not offend fair play and substantial justice.

There are two requirements for a *prima facie* case under the specific jurisdiction analysis:

(1) first, a basis for jurisdiction must exist under Florida's Long-Arm Statute, Fla. Stat. § 48.193;

and (2) second, the defendants' contacts with Florida must be sufficient to satisfy the Due

Process Clause.  *Mutual Serv. Ins. Co. v. Frit Indus., Inc*., 358 F.3d 1312, 1319 (11th Cir. 2004).

There is a specific jurisdiction basis in this case because in Florida, an out-of-state defendant

submits himself to the specific jurisdiction of the Florida courts when, *inter alia*, he operates,

conducts, engages in, or carries on a business in Florida, § 48.193(1)(a)(1); commits a tortious

act in Florida, *id.* at § (1)(a)(2); or causes injury to persons in Florida arising by an act or

omission outside of Florida, *id.* at § (1)(a)(6).  The second amended complaint alleges that the

ABA Defendants committed a tortious act in Florida or caused injury in Florida from an act or

omission outside of Florida.  *See* Doc. 73 at 5.  Bernier and Love are not required to supplant

this allegation with additional evidence because the ABA Defendants have not controverted it.

The inquiry, then, all boils down to whether the ABA Defendants have sufficient

minimum contacts with Florida "such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  For specific

jurisdiction, there must be "an affiliation between the forum and the underlying controversy,

principally, [an] activity or an occurrence that takes place in the forum State and is therefore

subject to the State's regulation."  *Goodyear*, 564 U.S. at 919 (internal quotation marks and

brackets omitted).  For this reason, "specific jurisdiction is confined to adjudication of issues

deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id.*

MEMORANDUM OF LAW IN OPPOSITION TO ABA DEFENDANTS' MOTION TO DISMISS-10
Case No.: 6:16-cv-00970-RBD-TBS

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1   The ABA Defendants have maintained minimum contacts with Florida and this district

2   through, *inter alia*, relationships with both Dennis Archer and Jay Conison, both of whom

3   serve/served in positions focused on accreditation in the Section of Legal Education and

4   Admissions to the Bar, all while sitting on the Board of Infilaw.  *See* Doc. 73 at 8.  The ABA

5   Defendants thus derived a benefit from a Florida corporation in exchange for services relating to

6   accreditation.  In addition, Infilaw controlled all managerial and financial aid decisions at CSOL.

7   *Id.* at 9.  Based on this allegation, Bernier and Love are entitled to the inference that when the

8   ABA Defendants interfaced with CSOL, in reality, they interfaced with Infilaw who is

9   headquartered in Florida.

10   **B.  There Is A Common Nucleus Of Fact To Support Supplemental Jurisdiction.**

11   Although the ABA Defendants argue that count III of the second amended complaint is

12   "unconnected" to the FCA claims against the remaining Defendants, Doc. 86 at 12, the fallacy of

13   this position is that *but for* a favorable accreditation decision by the ABA Defendants to anoint

14   CSOL as a qualified institution, *see* Doc. 73 at 6, then the Infilaw Defendants could never have

15   qualified for Title IV student loan funds from the DOE, *id.*  Stated another way, due to

16   accreditation, the ABA Defendants opened the door and herded a fox into the henhouse.

17   Where federal question jurisdiction exists, as here, a district court may exercise

18   "supplemental jurisdiction over all other claims that are so related to claims" within the court's

19   federal question jurisdiction "that they form part of the same case or controversy under Article

20   III of the United States Constitution."  *See* 28 U.S.C. § 1367.  Section 1367(a) gives courts "the

21   power to exercise supplemental jurisdiction over all claims that arise out of a common nucleus

22   of operative fact with a substantial federal claim."  *Tamiami Partners, Ltd. ex rel. Tamiami Dev.*

23   *Corp. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1223 (11th Cir. 1999) (quotation

24   marks omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The

25   state and federal claims must derive from a common nucleus of operative fact.").

26   Claims arising from a "common nucleus of operative facts" generally involve "the same

27   witnesses, presentation of the same evidence, and determination of the same, or very similar

28   facts."  *Palmer v Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64 (11th Cir. 1994); *but*

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1   *see, e.g.*, *Palazon v. KFC Nat. Mgmt. Co.*, No. 80 C 4916, 1981 WL 376, at *2 (N.D. Ill. Feb.

2   17, 1981) ("The court does not believe *Gibbs'* requirement of a common nucleus of operative

3   facts dictates that the facts giving rise to the state and federal cause of action be identical.").

4       Supplemental jurisdiction requires a court to compare "the nucleus of facts on which

5   the federal question claims are based" and "the nucleus of facts on which the state law claims are

6   based." *Upper Chattahoochee Riverkeeper Fund v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir.

7   2012). The Eleventh Circuit has cautioned that district courts are *not* to look at "the results that

8   may flow from the implications of finding that supplemental jurisdiction does not exist" because

9   "[i]t is not a results-oriented analysis, but a fact-oriented one." *Id.*; *see also Kaney v. Was*, No.

10  6:17-cv-185ORL37GJK, 2017 WL 765388, at *3 (M.D. Fla. Feb. 28, 2017) (relying on *Upper

11  Chattahoochee Riverkeeper Fund* and exercising supplemental jurisdiction) (Dalton, J.). Thus,

12  framed correctly, this court must determine whether the factual allegations that embrace counts

13  I, II, and III arise out of a common nucleus of operative facts. *See Kaney*, 2017 WL 765388 at

14  *3. There is such a shared nucleus for the reasons explained below.

15      Count III of the second amended complaint incorporates the same factual allegations into

16  that count that are incorporated into counts I and II, both of which allege violations of the FCA.

17  *Compare* Doc. 73 at 21 *with id.* at 14, 20. The negligence claim of count III arises from a

18  common nucleus of operative facts with the FCA claims of counts I and II because compliance

19  with Title IV of the HEA is the factual predicate on which all claims rest. Simply put, the ABA

20  Defendants and the Infilaw Defendants occupy different sides of the same accreditation coin,

21  and similar orders of proof apply to counts I, II, and III.[7]

22      To become the recognized accreditor for legal education, the ABA Defendants had to

23  meet all criteria for recognition listed in Subpart B of Title 34 of the Code of Federal

24  Regulations. 34 C.F.R. § 602.1. Under federal law, accreditation is a required element" in

25  enabling law schools "to establish eligibility to participate in HEA programs." 34 C.F.R. §

26  ────────────────

27      [7] Ironically, as the ABA Defendants highlight, this court previously relied on documents
submitted by the Infilaw Defendants to conclude that, based on those documents, the Infilaw
Defendants "knowingly deceived" the ABA. Doc. 86 at 5. This alone evinces the common

28  factual predicate between the defendants in this action, as the ABA Defendants might choose to
cross-claim against the Infilaw Defendants to avoid liability.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    602.10.  And before being ordained as the recognized accreditor, the ABA Defendants had to

2    "demonstrate that [they have] standards for accreditation, and preaccreditation, . . . that are

3    sufficiently rigorous to ensure that the [ABA Defendants are] a reliable authority regarding the

4    quality of the education or training provided."  34 C.F.R. § 602.16.

5        On the other side of the coin, the Infilaw Defendants agreed to adhere to the "standards

6    for accreditation," *see* 34 C.F.R. § 602.16, established by the ABA Defendants.  The reason for

7    this is obvious: it was the only viable path to delve into the federal coffers.  The Infilaw

8    Defendants' agreement to be bound to the ABA Defendants' standards for accreditation is

9    memorialized in the PPA, wherein the Infilaw Defendants represented to the Secretary of

10   Education that they would "meet the requirements established pursuant to Part H of Title IV of

11   the HEA by the Secretary and nationally recognized accrediting agencies."  Doc. 73-1 at 6.

12       Taken as a whole, counts I, II, and III will all necessarily turn on the determination of the

13   same or similar facts as to whether the ABA Defendants and the Infilaw Defendants complied

14   with their obligations under Title IV of the HEA.  Bernier and Love anticipate that the same, or

15   many of the same, witnesses interfaced with the DOE who knew that CSOL failed to disclose

16   material noncompliance with accreditation standards, Doc. 73 at 14, and that those same

17   witnesses also interfaced with representatives of the ABA Defendants, which such

18   representatives failed to ensure that CSOL was in compliance with accreditation standards, Doc.

19   73 at 22.  Thus, the presentation of the same set of facts from the same witnesses will have

20   simultaneous evidentiary effect on counts I, II, and III.

21       The ABA Defendants rely on inapposite supplemental jurisdiction cases where a

22   plaintiff's state law claims predominated the federal claims, which is distinguishable from the

23   facts here.  *Gibbs* and its progeny stands for the proposition that "if, considered without regard

24   to their federal or state character, a plaintiff's claims are such that he would ordinarily be

25   expected to try them all in one judicial proceeding, then, assuming substantiality of the federal

26   issues, there is power in federal courts to hear the whole."  *Gibbs*, 383 U.S. at 725.  Whereas in

27   this case, federal issues predominate because counts I and II, the FCA claims, are the heart of

28

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

this action.  *See generally* Doc. 73.  Bernier and Love have also invoked federal, not diversity, jurisdiction in this case, which suggests that the action is predominately federal in nature.

*Roper v. Edwards*, 815 F.2d 1474, 1477 (11th Cir. 1987), one of only two cases on which the ABA Defendants rely, is not helpful to the supplemental jurisdiction analysis.  There, the Eleventh Circuit affirmed the district court's decision to decline to exercise jurisdiction.  *Id.* Importantly, the *Roper* court so affirmed for two reasons.  First, given that the case sounded in federal civil rights, *Roper* relied on *Aldinger v. Howard*, 427 U.S. 1, 17 (1976), to find that under that case, "pendent party jurisdiction is inappropriate in civil rights cases."  *Roper*, 815 F.2d at 1477.  There are no federal civil rights claims in this case.

Second, the *Roper* court, relying on *Gibbs*, found it significant that the plaintiff only presented "one viable federal claim, and seven counts" under state law.  *Roper*, 815 F.2d at 1477.  Compounding matters further, the state law claims in *Roper*, which ranged from breach of contract to intentional infliction of emotional distress were "totally distinct" from the federal civil rights claim.  *Id.* at 1476–1477.  But in this case, the same factual issues surrounding Title IV and accreditation will touch both the ABA Defendants and the Infilaw Defendants.  The overlapping of common facts is the quintessential example of claims that "would ordinarily be expected to [be] tr[ied] . . . all in one judicial proceeding."  *Gibbs*, 383 U.S. at 725.

One final point warrants brief discussion.  The ABA Defendants find significant that Bernier and Love, as they say, "litigated this matter for two years" before adding the ABA Defendants.  Doc. 86 at 12.  To be clear, the complaint was sealed until August 2017, as was legally required by the FCA.  *See* 31 U.S.C. § 3730(b)(2).  During the seal, Bernier was prohibited from even acknowledging the existence of this case.  *See id.*  The claim against the ABA Defendants is not borne from the FCA, so even if the negligence claim had been alleged in the initial complaint, Bernier and Love could have done nothing with that claim because of the seal.  *See id.*  In short, the court should find that it has supplemental jurisdiction over count III.

## C.  The Complaint Pleads A Cognizable Legal Duty.

1.  <u>The ABA Defendants voluntarily assumed a duty to serve as a reliable authority for law school accreditation and reliance defines to whom the duty is owed.</u>

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    Congress passed the HEA in 1965.  *See* Higher Education Act of 1965, Pub. L. No. 89-

2    329, 79 Stat. 1219.  The HEA is composed of Titles I–VII, but for purposes of this action, the

3    most significant part of the HEA is Title IV.  *See* 20 U.S.C. § 1070.  Title IV provides financial

4    aid funds directly to students to pursue higher education.  *See id.*  To be eligible for financial aid,

5    an institution must be accredited by an agency who is recognized by Secretary of the DOE.  *See*

6    20 U.S.C. § 1002(b)(1)(A)(ii)(II).  As relevant here, the ABA Defendants are the accreditation

7    agency at issue in count III of the second amended complaint.  Doc. 73 at 6.

8    The HEA is implemented through Title 34, Subtitle B, Chapter VI of the Code of Federal

9    Regulations.  Under administrative regulations, the ABA Defendants agreed to develop

10   standards for accreditation, including consideration of State licensing examinations, course

11   completion, job placement rates, and student services, 34 C.F.R. § 602.16; to apply those

12   standards, *id.* at § 602.17; and, to review the application of those standards, *id.* at § 602.21.  The

13   Secretary of Education recognizes the ABA Defendants as an accreditor to ensure that they are

14   "<u>reliable authorities</u> regarding the quality of education or training offered by the institutions

15   or programs they accredit."  *Id.* at § 602.1 (emphasis added).

16   The sole purpose of accreditation—for a law school or otherwise—is to create a standard

17   on which the public can rely, as aptly observed by one of the first courts to address the issue:

18
19   > [A]ccreditation itself is a continuing stamp of approval . . . .  It is a
     > continuous holding out by [an accreditor] that a school meets its standards.
20   > [The accreditor] allows their seal to be used by schools accredited by it in
     > their bulletins and advertising, knowing the public will see it and rely on
     > it.  <u>This accreditation is relied on by many students in making their
21   > selection of a school to attend</u>.  It is also the basis and condition precedent
     > to the making of thousands of dollars of student loans . . . .

22   *Jacobs v. Ass'n of Indep. Colleges & Sch.*, 219 S.E.2d 837, 839 (S.C. 1975) (emphasis added).

23   Reliance plays two roles in a negligence claim.  First, reliance helps to define to whom a duty is

24   owed.  As the Restatement suggests, the duty of care is defined not only by intentions, but also

25   by the foreseeability of the reliance of persons on the disseminated information.  *See*

26   Restatement (Second) of Torts § 552.  Second, an entirely different aspect of reliance is its role

27   in determining causation.  As this court is well-aware, to prevail in a negligence action Bernier

28

1    and Love must not only show that the ABA Defendants owed a duty of care and that duty was

2    breached, but also that their negligence was the proximate cause of Bernier and Love's injury.

3            Negligence includes "a violation of any . . . statute which establishes a duty to take

4    precautions to protect a particular class of persons from a particular injury or type of injury."

5    *Dimattina v. Westgate Resorts, Ltd.*, No. 8:17-cv-840-T-23JSS, 2018 WL 560665, at *1 (M.D.

6    Fla. Jan. 25, 2018) (quoting *DeJesus v. Seaboard Coast R.R. Co.*, 281 So.2d 198, 201 (Fla.

7    1973)).  "One who undertakes to perform a task must perform it in a non-negligent manner."[8]

8    *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1531 (11th Cir. 1985); *see also* Restatement (Second)

9    of Torts § 324A (explaining that one who undertakes to render services for which he should

10   recognize as necessary to protect a third person is subject to liability if (i) his failure to exercise

11   reasonable care increases risk of harm; (ii) he has undertaken a duty to perform owed to a third

12   person; or (iii) harm is suffered because of reliance upon the undertaking).

13           The ABA Defendants' papers do not address, with argument, the allegation that they

14   voluntarily undertook a duty on behalf of Bernier and Love to certify the competency, authority,

15   and credibility of CSOL to provide legal education commensurate with the obligations set forth

16   in Title IV of the HEA.  *See* Doc. 73 at 21–22.  The undertaker's doctrine is deeply rooted in

17   American jurisprudence.  It provides as follows:

18           Whenever one undertakes to provide a service to others, whether one does
19           so gratuitously or by contract, the individual who undertakes to provide
             the service-i.e., the "undertaker"-thereby assumes a duty to act carefully
20           and to not put others at an undue risk of harm.  This maxim, termed the
             "undertaker's doctrine," applies to both governmental and
21           nongovernmental entities.  The doctrine further applies not just to parties
             in privity with one another-i.e., the parties directly involved in an
22           agreement or undertaking-but also to third parties.

23   *Osorio v. United States*, No. 08-80459-CIV, 2010 WL 3282572, at *4–5 (S.D. Fla. Aug. 19,

24   2010) (citing *Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182, 1186 (Fla. 2003)).  "Florida

25   ─────────────────
26           [8] This is also the law in both Illinois and North Carolina.  *See, e.g.*, *Stopka v. Am. Family
     Mut. Ins. Co., Inc.*, No. 10 C 6034, 2012 WL 2115495, at *11 (N.D. Ill. June 7, 2012) ("When a
     party voluntarily undertakes to act, it becomes subject to liability in negligence if it fails to
27   exercise due care in the performance of that undertaking.") (external citations omitted);
     *Mynhardt v. Elon Univ.*, 725 S.E.2d 632, 635 (N.C. Ct. App. 2012) ("The voluntary undertaking
28   theory has been consistently recognized in North Carolina.").  Thus, Florida, Illinois, and North
     Carolina case law are all equally persuasive to this court's analysis.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    courts have applied the doctrine to a variety of third-party, contract-based negligence claims and

2    ruled that the defendants could be held liable, notwithstanding a lack of privity." *Clay Elec. Co-*

3    *op.*, 873 So.2d at 1186 (examining and applying Restatement (Second) of Torts § 324A).

4         "Clearly, Congress intended for the HEA to benefit students." *McCulloch v. PNC Bank*

5    *Inc.*, 298 F.3d 1217, 1222 (11th Cir. 2002) (citing 20 U.S.C. § 1071(a)(1)(B)).  Students are

6    precisely the class of persons that the HEA was implemented to protect.  *See id.*  The ABA

7    Defendants are a quasi-public organization tasked with the role of gatekeeper to Title IV student

8    funds under the HEA.  The federal government did not require the ABA Defendants to fulfill the

9    role of an accrediting agency for law schools; rather, the ABA Defendants assumed this role by

10   their own volition.  Indeed, the ABA Defendants' Bylaws show that their purpose is to "be a

11   creative national force in providing leadership and services <u>to those responsible for and those</u>

12   <u>who benefit from</u> a sound program of legal education and bar admissions."[9]  Thus, accreditation

13   is designed to benefit prospective students who seek to attain the title of attorney, not to benefit

14   institutions; for institutions without students are not institutions at all.

15        The ABA Defendants' argument against a legal duty is not new: it is the same argument

16   that invokes the same few cases on the issue that has been argued before.  But there are facts in

17   *this* case that are unlike those heretofore that have percolated through the courts.  For starters, as

18   stated, this case concerns Title IV of the HEA.  *Ambrose* and *Tillitz* are not Title IV cases and,

19   by extension, the policy rationales in those cases are not co-extensive with those in this case.[10]

20   And while *Gabriel* [11] did concern a recognized accreditor under the HEA, the Accreditation

21   Council for Pharmacy Education ("ACPE"), the DOE has made clear that accreditation by the

22   ACPE "does not enable the entities it accredits to establish eligibility to participate in Title IV

23

24        [9] *See* Section of Legal Education and Admissions to the Bar, Section Bylaws,
     https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_admissions_
25   to_the_bar/council_reports_and_resolutions/2010801_legal_education_bylaws_approved.authch
     eckdam.pdf (last visited June 8, 2018); *see also supra*, note 1.

26        [10] *Ambrose v. New England Ass'n of Sch. & Colleges, Inc.*, 252 F.3d 488, 491 (1st Cir.
     2001); *Tillitz v. Am. Corr. Ass'n*, No. CIV.03-1470-HA, 2004 WL 2203275, at *1 (D. Or. Sept.
27   29, 2004).

28        [11] *Gabriel v. Albany Coll. of Pharmacy & Health Scis. - Vermont Campus*, No. 2:12-cv-
     14, 2013 WL 4456690, at *1 (D. Vt. Aug. 16, 2013).

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1   programs."[12]   As noted, it is through Title IV that the Secretary of Education recognizes the

2   ABA Defendants as "reliable authorities regarding the quality of education or training offered by

3   the institutions or programs they accredit."  34 C.F.R. § 602.1.

4          Another distinction is that none of the cases on which the ABA Defendants rely—

5   *Ambrose*, *Keams*, *Gabriel*, and *Tillitz*—concerned accreditors for a professional license, such as

6   a law license, and none of the underlying institutions in those cases lost accreditation, like

7   here.[13]  This is critical.  Law students' ascension to the practice of law has a unique requirement:

8   the bar exam.  Prospective lawyers in forty-six (46) States cannot sit for the bar exam unless

9   they have graduated from a law school accredited by the ABA Defendants.[14]  No reasonable law

10  student who knows he or she wants to practice law in a State that requires graduation from an

11  ABA-approved law school as a condition to take the bar exam willingly attends such a school.

12  As an aside, there is no other accreditor for law schools on which students can rely: for better or

13  worse, the ABA Defendants are *the* accreditor.

14         Reliance is front and center in this case, unlike in *Ambrose*, *Keams*, *Gabriel*, and *Tillitz*

15  where it played a secondary role.  In fact, those decisions demonstrate the sheer importance of

16  reliance to their holdings.  *Ambrose*, for example, stated that the appellants "failed to show that

17  they had relied justifiably on the accreditation statements" at issue.  *Ambrose*, 252 F.3d at 491.

18  Here, the second amended complaint shows that Bernier and Love both gave up a tenured career

19  to teach law at CSOL (Bernier) and agreed to amass hundreds of thousands of dollars in non-

20  dischargeable debt (Love), all because of the badge of ABA-accreditation that ultimately became

21  a precipice.  *See* Doc. 73 at 21–23.  *Ambrose* also noted that one of the students there, despite

22  that the associates degree program in which she participated did not include a clinical program,

23  was still able to gain employment as a medical assistant.  *Ambrose*, 252 F.3d at 490.  By

24

25      [12] *See* U.S. Department of Education, *Database of Accredited Postsecondary Institutions and Programs*, https://ope.ed.gov/accreditation/agencies.aspx (last visited June 10, 2018).

26      [13] *Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997).

27      [14] *See* American Bar Association, *About Us*, https://www.americanbar.org/groups/legal_education/about_us.html (last visited June 11, 2018)
28  ("[F]orty-six states limit eligibility for bar admission to graduates of ABA-approved schools."); *see also supra*, note 1.

contrast, Love cannot gain employment as an attorney without succeeding on the bar exam, which carries with it as a condition precedent the requirement of an ABA-approved juris doctor.

*Tillitz* is also illustrative.  There, an inmate sued the American Correctional Association ("ACA") for negligently certifying that the institution where he was incarcerated was in compliance with ACA standards, which in that case were directed to the issue of overcrowding. *Tillitz*, 2004 WL 2203275 at *1.  Right out of the gate, it is clear that *Tillitz* has no application here.  The *Tillitz* plaintiff alleged that the "bogus accreditation" allowed the correctional institution to overpopulate.  *Tillitz*, 2004 WL 2203275 at *3.  The *Tillitz* court, relying on *Reams*, held that in both cases, the defendant did not provide accreditation to "induce any reliance" on the plaintiff's part and that the information provided by the defendant was not intended to "benefit or guide" the plaintiff.[15]  *Id.* at *4.  Applying the *Tillitz* holding to this case yields the opposite result because the ABA seal-of-approval on law schools *does* induce reliance by law students that attaining a juris doctor there will satisfy a crucial prerequisite to sit for the bar exam.  In this way, the ABA seal-of-approval on law schools benefits or guides law students.

    2.   <u>The ABA Defendants breached the duty owed by failing to enforce their accreditation standards upon which faculty and students relied.</u>

The ABA Defendants—ostensibly unsatisfied that Bernier and Love satisfied Rule 8— appear to urge this court to impose some level of heightened pleading on the breach of duty element of count III, akin to what is required under Rule 9.  *See* Doc. 86 at 19.  This is shown by the ABA Defendants' insistence that Bernier and Love are required to plead what a reasonable accreditor in their shoes should have done, what they did, and exactly how they failed to act as a reasonable accreditor.  *Id.*  But this is precisely the type of particularity that is reserved for claims sounding in fraud, which is not what count III alleges.  *E.g.*, *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (recognizing that heightened pleading means "the who, what, when[,] where, and how: the first paragraph of any newspaper story").

---

[15] Of course, it would be most unusual for a person to rely on the lack of overcrowding at a correctional institution before then deciding to commit a crime that would ultimately cause him to be housed there.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    Rule 8, which is what applies to count III, requires nothing more than that Bernier and

2    Love plead "a short and plain statement" of their claim.  *See* Fed. R. Civ. P. 8(a); *see also Sams*

3    *v. United Food & Commercial Workers Intern. Union, AFL-CIO, CLC*, 866 F.2d 1380, 1384

4    (11th Cir. 1989) ("A complaint need not specify in detail the precise theory giving rise to

5    recovery.  All that is required is that the defendant be on notice as to the claim being asserted

6    against him and the grounds on which it rests.").  Bernier and Love are not required to come

7    forth "with evidence in the record specifically demonstrating the facts underlying the pleadings

8    until the summary judgment stage."  *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*,

9    No. 6:07-cv-1503ORL19KRS, 2009 WL 10671220, at *3 (M.D. Fla. Mar. 31, 2009) (emphasis

10   added).  It is not clear why count III that also incorporates the general allegations of the second

11   amended complaint does not give the ABA Defendants fair notice of the negligence claim given

12   that Bernier and Love specifically allege that the ABA Defendants breached the duty owed by

13   failing to enforce their own accreditation standards.

14    Bernier and Love pause here to underscore an important point.  Count III does not ask

15   this court to evaluate technical details of the ABA Defendants' accreditation decision as to

16   CSOL such as whether its professors were academically effective, whether its curriculum was

17   rich with sophisticated principles of law, nor whether the school had a robust alumni network to

18   assist with job placement.  Instead, count III, as alleged in the second amended complaint, is

19   focused on whether the ABA Defendants' followed the accreditation process, as outlined in their

20   own accreditation standards.  *See* Doc. 73 at 22.

21   **D.  Bernier And Love Properly Filed Count III With Leave Of Court.**

22    If the ABA Defendants cannot obtain dismissal of count III on substantive grounds, then

23   they urge this court to dismiss procedurally.  True, the ABA Defendants correctly point to the

24   court's scheduling order, which states that, "[t]he Court will strictly enforce the deadlines set in

25   this CMSO.  Such deadlines are effective unless modified by a written Order."  *See* Doc. 43 at 2

26   (emphasis added).  What the ABA Defendants choose to ignore, however, is that the court also

27   dismissed the amended complaint, Doc. 71 at 20, and ordered that, "[o]n or before Monday, May

28   7, 2018, Plaintiff may file a second amended complaint."  (emphasis added).  In so doing, this

court effectively modified its scheduling order, Doc. 43, concerning the deadline [for Plaintiffs] to file motions to add parties or to amend pleadings from December 1, 2017, to May 7, 2018.

The ABA Defendants also seize *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998), for the proposition that adding them to the instant action was untimely.  In *Sosa*, the plaintiff, a former employee suing her former employer, sought leave to amend to *well after* the court's deadline for amending the complaint.  *Id.* at 1418.  The district court denied the motion as untimely.  *Id.*  The court also held that plaintiff's counsel failed to ascertain the number of employees before filing suit, took no steps to acquire this information early in the discovery period, and found that the information supporting the proposed amendment was available to plaintiff even before she filed suit.[16]  *Id.*

Here, Bernier and Love amended the complaint pursuant to the court's order.  *See* Doc. 71; *see also* Fed. R. Civ. P. 15(a)(2) (noting that, "a party may amend its pleading only with the opposing party's written consent or <u>the court's leave</u>.").  *Id.*  Consequently, Bernier and Love Plaintiff timely asserted the allegations that the ABA Defendants are liable for negligence.

**WHEREFORE,** Relator/Plaintiff, BARBARA BERNIER, and Plaintiff, ESE LOVE, pursuant to M. D. Fla. R. 3.01(b), respectfully seek the entry of an order DENYING the motion to dismiss count III of the second amended complaint, Doc. 86, served by Defendants, AMERICAN BAR ASSOCIATION, d/b/a COUNCIL OF THE SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR and AMERICAN BAR ASSOCIATION, d/b/a ACCREDITATION COMMITTEE OF THE SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR.

**DATED** on June 14, 2018

Respectfully submitted,

WATSON LLP

---

[16] The ABA Defendants also conveniently omit that they failed to respond to a subpoena *duces tecum* that Bernier served in November 2017, which sought documents between the ABA and the Infilaw Defendants concerning both provisional and full accreditation of CSOL.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

*/s/ Coleman Watson*

**Coleman W. Watson, Esq.**
Florida Bar. No. 0087288
California Bar No. 266015
Georgia Bar No. 317133
New York Bar Reg. No. 4850004
Email: coleman@watsonllp.com
docketing@watsonllp.com
**Leia V. Leitner, Esq.**
Florida Bar No. 0105621
Email: leia@watsonllp.com
**Ronika J. Carter, Esq.**
Florida Bar No. 0122358
Email: ronika@watsonllp.com

**WATSON LLP**
189 S. Orange Avenue
Suite 810
Orlando, FL 32801
Telephone: 407.377.6634
Facsimile: 407.377.6688

*Attorneys for Plaintiffs,*
*Barbara Bernier and Ese Love*

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2018, pursuant to Fed. R. Civ. P. 5(b)(2)(E), I served an electronic copy of the foregoing document on the following counsel of record in this proceeding:

**LAW OFFICES OF MARK L. HORWITZ, P.A.**
Vincent A. Citro, Esq.
Email: vince@mlhorwitzlaw.com
*Attorneys for Defendants,*
*Infilaw Corporation and Charlotte School of Law, LLC*

**COOLEY, LLP**
David Mills, Esq.
Email: dmills@cooley.com
Mazda K. Anita, Esq.
Email: mantia@cooley.com
Erin Estevez, Esq.
Email: eestevez@cooley.com
Scott Stemetzki, Esq.
Email: sstemetzki@cooley.com
*Attorneys for Defendants,*
*Infilaw Corporation and Charlotte School of Law, LLC*

**CARLTON FIELDS JORDEN BURT, P.A.**
Johanna W. Clark, Esq.
Email: jclark@carltonfields.com
*Attorneys for Defendants,*
*American Bar Association*

**SIDLEY AUSTIN LLP**
Anne E. Rea, Esq.
Email: area@sidley.com
Steven J. Horowitz, Esq.
Email: shorowitz@sidley.com
Tacy F. Flint, Esq.
Email: tflint@sidley.com
Benjamin I. Friedman, Esq.
Email: benjamin.friedman@sidley.com
*Attorneys for Defendants,*
*American Bar Association*

**UNITED STATES ATTORNEY'S OFFICE**
Jeremy Bloor, Esq.
Email: jeremy.bloor@usdoj.gov

*/s/ Coleman Watson*
**Coleman W. Watson, Esq.**