1  Coleman W. Watson, Esq.
   coleman@watsonllp.com
2  Leia V. Leitner, Esq.
   leia@watsonllp.com
3  WATSON LLP
   189 S. Orange Avenue, Suite 810
4  Orlando, FL 32801
   Telephone: 407.377.6634
5  Facsimile: 407.377.6688
   *Attorneys for Plaintiff/Relator, Barbara Bernier, and Plaintiff, Ese Love*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                     **MIDDLE DISTRICT OF FLORIDA**

10                         **ORLANDO DIVISION**

11

12  UNITED STATES OF AMERICA, EX
    REL. BARBARA BERNIER;
13  BARBARA BERNIER; and, ESE LOVE,

14              Relator/Plaintiffs,
          vs.                                      Case No.:  6:16-cv-00970-RBD-TBS

15  INFILAW CORPORATION;
    CHARLOTTE SCHOOL OF LAW, LLC;          **MEMORANDUM OF LAW IN**
16  AMERICAN BAR ASSOCIATION, d/b/a        **OPPOSITION TO INFILAW**
    COUNCIL OF THE SECTION OF LEGAL        **DEFENDANTS' MOTION TO DISMISS**
17  EDUCATION AND ADMISSIONS TO
    THE BAR; and AMERICAN BAR
18  ASSOCIATION, d/b/a ACCREDITATION       **ORAL ARGUMENT REQUESTED**
    COMMITTEE OF THE SECTION OF
19  LEGAL EDUCATION AND
    ADMISSIONS TO THE BAR,
20

21              Defendants.

22

23          Relator/Plaintiff, BARBARA BERNIER, and Plaintiff, ESE LOVE, pursuant to M. D.

24  Fla. R. 3.01(b), respond to the motion to dismiss the second amended complaint, Doc. 88, served

25  by Defendants, INFILAW CORPORATION ("Infilaw") and CHARLOTTE SCHOOL OF

26  LAW, LLC ("CSOL") (collectively the "Infilaw Defendants"), and state as follows:

27

28

(sidebar) WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

## I.   INTRODUCTION

There is an old adage that if you say something enough times, well, it *must* be true.  That adage is fully illustrated by the motion to dismiss, wherein the Infilaw Defendants parched twenty (20) extra pages above and beyond what the local rules of this court authorize as a matter of right to simply repeat—repeat—repeat the same points *over—over—and over*.  In fact, from reviewing the motion, it is not clear whether the Infilaw Defendants are seeking to persuade this court—or themselves—of the veracity of their own positions.

The record in this action concerning the plainly prolix motion to dismiss tells its own story.  *See* Doc. 83.  To be sure, the Infilaw Defendants sought leave to serve a 45-page motion under the auspices that instead of separate motions of 25 pages each, *see* M.D. Fla. R. 3.01(a), that it would be more efficient to serve a combined motion because the issues as to both of them are "highly intertwined."  *See* Doc. 83 at 2.  But noticeably, there are no arguments contained within the 45-page motion that are specific to either defendant nor is there any apparent reason why those same arguments could not be succinctly made within the confines of the local rule.  The "combined" motion is nothing more than an exercise to double the available real estate that is otherwise available under the applicable local rule, only to shellac this court with redundant cases.  Be that as it may, it is not the *quantity* of case law that carries the day; rather, it is the analogous nature of the legal principles therein, as exemplified below, that prevails.[1]

## II.   REBUTTAL ARGUMENT & AUTHORITIES

### A.  The Complaint Is Not A Shotgun Pleading Because It Does Not Incorporate The Antecedent Allegations Of All Counts Into Each Subsequent Count.

The relative strength, or lack thereof, of the argument that the second amended complaint is an "impermissible shotgun pleading" is revealed by the Infilaw Defendants' decision to bury the argument within two lengthy footnotes.  *See* Doc. 88 at 48, 56, n. 34, n. 47.  With respect, the Infilaw Defendants misunderstand the legal definition of a shotgun pleading, which arises where the pleader incorporates the general allegations of the complaint *as well as* the antecedent

---

[1] In the spirit of brevity, Bernier and Love assume the court's familiarity with both the factual background of this action and the applicable legal standard(s) that govern dismissal.

1   allegations from *all* other counts into each count. *See Inst. of Cardiovascular Excellence*, 2015

2   WL 12866448, at *3 (M.D. Fla. Nov. 5, 2015) (finding that FCA complaint was not shotgun

3   pleading because it did not "adopt the allegations of all preceding counts" in all other counts and

4   because the complaint specified which counts were alleged against which defendants) (Dalton,

5   J.).  The shotgun pleading argument is buried in two footnotes for good reason: it has no merit.

### B.   The First-to-File Bar Is *Not* An Exception Free Rule, As Made Clear By Several United States Circuit Courts of Appeals.

8            The Eleventh Circuit has never examined the first-to-file rule in any significant detail, so

9   this court must look to the sister circuits for guidance.  The Infilaw Defendants effectively

10   concede this point by directing this court to only one Eleventh Circuit case, *Makro Capital of

11   Am., Inc. v. UBS AG*, 543 F.3d 1254 (11th Cir. 2008), and several Fourth Circuit cases.  *See*

12   Doc. 88 at 19–26.  The issue in *Makro* was "whether an amended complaint involving a *qui*

13   *tam* claim under the False Claims Act can relate back to the original, non-*qui tam*, complaint

14   under the 'relation back' provisions of Federal Rule of Civil Procedure 15(c)."  *Makro*, 543 F.3d

15   at 1255.  That is not the issue here. [2]  In fairness, as noted by the Infilaw Defendants, *Makro*

16   cites to its sister opinion of *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th

17   Cir. 2001), but even that case does not involve the same facts that are in *this* case.  In any event,

18   in 2015, the United States Supreme Court called the core of *Lujan's* holding into question.

19            1.   *O'Connor* does not trigger the first-to-file bar because that case is not pending.

20            *Lujan* has been the Ninth Circuit's principal opportunity to examine the first-to-file rule.

21   There, the court faced a relator who filed suit in 1992 against her employer, notwithstanding that

22   her colleague—unbeknownst to her—had also filed a *qui tam* suit against their employer, three

23   years prior.  *Lujan*, 243 F.3d at 1184.  The *Lujan* relator argued that her *qui tam* action was not

24   barred under the first-to-file rule because her colleague's action was later dismissed and was,

---

25   
26   [2] The undersigned's research reveals that other than *Makro*, the Eleventh Circuit has only
     even so much as mentioned § 3730(b)(5) or the first-to-file rule in three other cases.  *See U.S. ex
     rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1093 (11th Cir. 2018); *Urquilla-Diaz v.
27   *Kaplan Univ.*, 780 F.3d 1039, 1046 (11th Cir. 2015); *Cooper v. Blue Cross & Blue Shield of
     Florida, Inc.*, 19 F.3d 562, 567 (11th Cir. 1994).  But again, there is no substantive discussion of
28   the rule in any of those cases.  As a result, the Eleventh Circuit is well poised to provide
     guidance on this issue to the district courts in this circuit.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    therefore, no longer "pending" within the meaning of the FCA. *Id.* at 1188. But the *Lujan* court

2    disagreed, finding that the colleague's action was still "pending," despite dismissal. *Id.*

3        Fourteen years later, in 2015, the United States Supreme Court explained the legal

4    definition of "pending" in the context of the first-to-file bar. *See Kellogg Brown & Root*

5    *Services, Inc. v. U.S., ex rel. Carter*, 135 S. Ct. 1970, 1971 (2015). In *Kellogg*, the Court held

6    that under 31 U.S.C. § 3730(b)(5), "[t]he term 'pending' means '[r]emaining undecided;

7    awaiting decision.' " [3] *Id.* at 1978. As instructed by the Court, "an earlier suit bars a later suit

8    while the earlier suit remains undecided <u>but ceases to bar that suit once it is dismissed</u>." *Id.*

9    (emphasis added). *Kellogg* is in tension with *Lujan* because both dealt with two *qui tam*

10   complaints where a first was no longer "pending"; the decisions reach opposite holdings.[4] Of

11   course, *Kellogg* controls and that decision alone rejects the Infilaw Defendants' argument that

12   *O'Connor* bars this action under the first-to-file rule.[5] *See* Doc. 88 at 19–26. The *O'Connor*

13   relator voluntarily dismissed on March 26, 2018; so, that action is no longer "pending" under

14   *Kellogg*.[6] *See U.S. ex rel. O'Connor*, No. 3:15-cv-01351-BJD-JBT at Docs. 25–27.

15

16      [3] It should be noted that in the interim between *Lujan* and *Kellogg*, several circuits had
     already determined that § 3730(b)(5) no longer applies after a first action is dismissed. *See, e.g.,*
17   *U.S. ex rel. Chovanec v. Apria Healthcare Group Inc.*, 606 F.3d 361, 365 (7th Cir. 2010) ("§
     3730(b)(5) applies <u>only while</u> the initial complaint is 'pending.' ") (emphasis added); *In re Nat.*
18   *Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 964 (10th Cir. 2009) ("[I]f that
     prior claim is no longer pending, the first-to-file bar no longer applies.").

19      [4] Post-*Kellogg*, this court has not yet handed down any decisions on this issue.

20      [5] Indeed, the Infilaw Defendants urge this court to bar all subsequent *qui tam* claims
     against them. But *Kellogg* has already addressed the absurdity of such a position:

21

22          Under petitioners' interpretation, a first-filed suit would bar all subsequent
            related suits even if that earlier suit was dismissed for a reason having nothing
23          to do with the merits. Here, for example, the *Thorpe* suit, which provided the
            ground for the initial invocation of the first-to-file rule, was dismissed for
24          failure to prosecute. Why would Congress want the abandonment of an
            earlier suit to bar a later potentially successful suit that might result in a large
25          recovery for the Government?

*Kellogg*, 135 S. Ct. at 1979. The answer is that it would not.

26

27      [6] After *O'Connor* dismissed on March 26, 2018, Bernier filed her second amended
     complaint on May 8, 2018. *See generally* Doc. 73. There is authority standing for the
28   proposition that the first-to-file bar no longer applies after an amended complaint is filed, which
     gives this court yet another avenue to find that the Infilaw Defendants' argument directed to the
     *O'Connor* complaint has no merit. *See U.S. ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772,

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    Accordingly, this case is not barred by *O'Connor* under 31 U.S.C. § 3730(b)(5).  *See Wood*, 246

2    F. Supp. 3d at 799–800 (finding that it would be a "pointless formality" to require dismissal of a

3    *qui tam* action under the first-to-file rule where prior action had been dismissed).

4         2.  *Lorona* does not trigger the first-to-file rule because Bernier filed her second
5             amended complaint before the *Lorona* third amended complaint; and the *Lorona*
              allegations are fail both the public disclosure bar and Rule 9(b).

6              a.  Under *Rockwell*, amended FCA complaints control the jurisdictional inquiry.

7         There is a split of authority as to whether the first-to-file rule is jurisdictional or non-

8    jurisdictional.[7]  *See Wood*, 246 F. Supp. 3d at 794 (collecting cases).  As noted, several courts

9    have opined that any violations of the first-to-file bar can be cured by amendment.  *See id.*  The

10   United States Supreme Court, in an FCA case, has held that the filing of an amended complaint

11   is jurisdictionally relevant.  *See Rockwell International Corp. v. U.S.*, 549 U.S. 457, 473 (2007).

12   In *Rockwell*, the Court held that an amended FCA complaint must satisfy the jurisdictional

13   requirement that a *qui tam* claim not be based on publicly disclosed material unless the relator is

14   an original source, regardless of whether the original complaint clears the public disclosure bar.

15   *Id.*  The Court said that, "when a plaintiff files a complaint in federal court and then voluntarily

16   amends the complaint, courts look to the <u>amended</u> complaint to determine jurisdiction."  *Id.* at

17   473–74 (emphasis added).  "The rule that subject-matter jurisdiction depends on the state of

18   things at the time of the action brought, does not suggest a different interpretation."  *Id.* at 473.

19        Assuming that the first-to-file rule is jurisdictional, then, under *Rockwell* this court

20   should review the filing dates of the <u>amended</u> complaints in this action and *Lorona* to determine

21   who filed first.  Bernier reigns in that analysis. To be sure, in *Lorona*, the court entered orders

22   striking the relator's prior complaints for impermissibly pleading the allegations in shotgun

23

24   794 (S.D.N.Y. 2017) (collecting cases on both sides of the issue and holding that the better
     argument is that "a violation of the first-to-file bar can be cured by amending or supplementing
25   the complaint after the first-filed action has been dismissed."); *U.S. ex rel. Palmieri v.*
     *Alpharma, Inc.*, 928 F. Supp. 2d 840, 851 (D. Md. 2013) (same proposition).

26

27        [7] This is yet another FCA issue that remains unresolved before the Eleventh Circuit.  *See*
     *U.S. v. Shire Regenerative Med., Inc.*, No. 8:11-cv-176-T-30MAP, 2017 WL 6816615, at *5, n.
28   2 (M.D. Fla. Nov. 20, 2017), *reconsideration denied*, No. 8:11-CV-176-T-30MAP, 2018 WL
     310014 (M.D. Fla. Jan. 5, 2018).  The Fourth, Fifth, and Sixth Circuits have held that the rule is
     jurisdictional; whereas, the Second and District of Columbia Circuits have held the opposite.  *Id.*

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1   fashion.  *See U.S. ex rel. Lorona*, No. 3:15-cv-00959-MMH-JRK at Doc. 35.  The *Lorona* court

2   gave the relator until May 18, 2018 to re-file a third amended complaint.  *Id.*  The *Lorona* relator

3   met that deadline and re-filed on May 18, 2018.  *Lorona*, at Doc. 36.  In this action, this court

4   granted the prior motion to dismiss on April 23, 2018, Doc. 71, and gave Bernier until May 7,

5   2018 to re-file, *id.* at 20.  Bernier met that deadline and re-filed on May 7, 2018.  *See* Doc. 73.

6   From April 23, 2018 until May 7, 2018, neither Bernier nor *Lorona* had an operative complaint

7   on record.  Thus, if the first-to-file is indeed jurisdictional, then Bernier re-filed prior to *Lorona*

8   and, under *Rockwell*, this court is directed to look to the amended complaints for jurisdiction. [8]

9        Circling back to *Kellogg*, as a reminder, there the Supreme Court said that under the first-

10  to-file rule, "[t]he term 'pending' means '[r]emaining undecided; awaiting decision.' "  *See*

11  *Kellogg Brown & Root Services*, 135 S. Ct. at 1978.  *Lorona* was not "remaining undecided" or

12  "awaiting decision" when Bernier re-filed on May 7, 2018, because as of that date there was no

13  *Lorona* complaint whatsoever on file from which to draw a decision.  *See id.*

14       That the first-to-file rule might be non-jurisdictional does not change the analysis.  This

15  is supported by the *Wood* court's observation that even the Supreme Court has itself held that

16  "[t]he requirement that jurisdiction be established as a threshold matter . . . is inflexible and

17  without exception[,]" yet in *Kellogg*, the Court examined the first-to-file rule only *after* it had

18  already dealt with a clear *non*-jurisdictional issue.  *See Wood*, 246 F. Supp. 3d at 799.  This

19  suggests that the first-to-file rule is non-jurisdictional, as the *Wood* court ultimately held.  *Id.* at

20  795 ("The more sensible approach, supported by the language and structure of the FCA, is to

21  treat the first-to-file rule as a non-jurisdictional (albeit mandatory) rule.").

22       If the first-to-file rule is more like a claim processing rule, then this further supports the

23  notion that an amendment to a complaint can cure any claim processing defects.  But still, the

24  facts remain the same: for fourteen days this action and *Lorona* lacked an operative complaint,

25

26       [8] The Infilaw Defendants cite two cases in support of their argument that courts are only
    permitted to compare the <u>original</u> complaints in the first-to-file analysis.  *See* Doc. 88 at 24
27  (relying on *U.S. v. Planned Parenthood of Houston*, 570 F. App'x 386, 390 (5th Cir. 2014) and
    *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004)).  But neither
28  *Planned Parenthood* nor *Grynberg* addressed a situation as here where one court has stricken the
    original complaint and both *qui tam* actions subsequently filed amended complaints.

1   and Bernier beat the *Lorona* relator back to the courthouse to get her *qui tam* on file, first.  Thus,

2   it is the *Lorona* relator, not Bernier, whose complaint is subject to the first-to-file rule.

3                   b.   *Lorona's* allegations are jurisdictionally defective.

4         Even if this court applies a mechanical approach to the first-to-file rule and compares

5   only the filing dates of the initial complaints here and in *Lorona*, then Bernier still prevails in the

6   analysis.  A resolution of the whether *Lorona* serves as a bar to the instant action under the first-

7   to-file rule cannot be made in a vacuum and without an appreciation for the FCA's public

8   disclosure bar, in light of this court's prior rulings on public disclosures concerning the Infilaw

9   Defendants.  Two cases are instructive: *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 515

10  (6th Cir. 2009) and *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 818 (9th Cir. 2005).[9]

11        In *Poteet*, the relator filed her *qui tam* complaint more than a year after a prior *qui tam*

12  complaint (*i.e.*, the *Doe* complaint) and two years after a non-FCA complaint (*i.e.*, the *Wiese*

13  complaint) that was filed in state court that gave the Government notice of fraud.  *Poteet*, 552

14  F.3d at 508.  When the *Poteet* relator filed her complaint, the Government had knowledge of the

15  *Doe* complaint.  *Id.* at 509.  Eventually, the Government moved to dismiss the complaint under

16  both the first-to-file rule and public disclosure bar.  *Id.*  The district court granted the motion.

17        On *de novo* review, the *Poteet* court found that the first-to-file rule was "technically

18  inapplicable" to the relator's complaint.  *Id.* at 511.  The *Poteet* court so held because "in order

19  to preclude later-filed *qui tam* actions, the allegedly first-filed *qui tam* complaint must not itself

20  be jurisdictionally or otherwise barred."  *Id.* at 516 (citing *Walburn v. Lockheed Martin Corp.*,

21  431 F.3d 966, 972 (6th Cir. 2005) and *Campbell*, 421 F.3d at 825).  The *Poteet* court's analysis

22  turned on the fact that the prior *Doe* complaint alleged facts that were already disclosed in the

23  *Wiese* (state court) complaint.  *Id.* at 518.  Thus, the first-to-file rule did not apply because the

24  public disclosure rule actually barred the *Doe* (*qui tam*) complaint, due to the *Wiese* complaint.

25

26

27        [9] *Campbell* is resolute in its position that the first-to-file rule contains exceptions.
     *Campbell*, 421 F.3d at 824 ("Construing § 3730(b)(5) to create an absolute bar would permit
28  opportunistic plaintiffs with no inside information to displace actual insiders with knowledge of
     the fraud.").

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1   *Poteet's* teachings are applicable here.  To determine whether the FCA's public

2   disclosure bar applies, a court must consider "first whether there has been any public disclosure

3   of fraud, and second whether the allegations in the instant case are 'based upon' the previously

4   disclosed fraud." *Id.* at 511.  Here, in dismissing the amended complaint, this court has already

5   engaged in a public disclosure bar analysis and found that most of Bernier's initial fraud

6   allegations were already in the public record when she filed suit in June 2016.  *See* Doc. 71 at 7–

7   16.  This court based its finding on certain exhibits attached to the Infilaw Defendants' prior

8   motion to dismiss that were in the public record as early as 2012 and continued through 2016.

9   *Id.* at 7.  In the instant motion, the Infilaw Defendants simply parrot this finding and argue that

10  the *Lorona* complaint contains the same allegations as Bernier's *qui tam* complaint.

11      Well, if that is so, then the *Lorona* complaint is jurisdictionally insufficient to support a

12  *qui tam* claim at all because of the same exhibits that this court has already considered.  *See* Doc.

13  71 at 7–16.  To maintain judicial consistency, this court should not find in this action that the

14  allegations giving rise to the public disclosure bar as to Bernier do not also give rise to the public

15  disclosure bar as to *Lorona*, if the public disclosure allegations as to *Lorona* (when made) are

16  substantially the same as to Bernier.[10]  No doubt, in due course, the Infilaw Defendants will

17  move to dismiss *Lorona* under the public disclosure bar, just as they did in this action.[11]  *See id.*

18  The point is this—the *Lorona* complaint, the prior complaint, does not bar Bernier's complaint

19  under the first-to-file rule because, just as in *Poteet*, the *Lorona* complaint will fail a threshold

20  jurisdictional test established by the FCA's public disclosure bar.  *See Poteet*, 552 F.3d at 511.

21

22

23      [10] *Lorona* is pending in the Jacksonville Division of this court and is assigned to United
    States District Judge Marcia Morales Howard.  There is no motion to dismiss pending there.

24

25      [11] An important point that Bernier stresses here is that neither *Lorona*, nor *O'Connor* for
    that matter, can defeat Bernier's *qui tam* complaint under the <u>public disclosure bar</u> because *qui*
26  *tam* complaints are not considered to be in the public record, given that relators are required to
    file them under seal.  *See, e.g.*, *U.S. ex rel. LeBlanc v. Raytheon Co., Inc.*, 913 F.2d 17, 20 (1st
27  Cir. 1990) ("[T]he district court further assumes that the filing of a *qui tam* action is itself a
    'public disclosure.'  This cannot be.  Such an action is filed under seal without service on
    anyone other than the United States and remains non-public until the district court enters an
28  order lifting the seal.  To hold otherwise would be to render each and every filing a 'public
    disclosure,' thus barring all *qui tam* actions.").

MEMORANDUM OF LAW IN OPPOSITION TO INFILAW DEFENDANTS' MOTION TO DISMISS-8
Case No.: 6:16-cv-00970-RBD-TBS

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    This action differs from *Poteet*, however, in a critical respect.  Here, this court has

2    already determined that there are several issues in Bernier's complaint that were *not* publicly

3    disclosed in any of the exhibits that the Infilaw Defendants previously put in the record.  *See*

4    Doc. 71 at 7–16.  In *Poteet*, by contrast, although the first-to-file rule was not a bar to suit, the

5    public disclosure bar was because the *Wiese* (state court) complaint was a public document that

6    conceivably put the Government on notice of fraud.  *See Poteet*, 552 F.3d at 518.  The *Lorona*

7    complaint is not the functional equivalent of the *Wiese* complaint because the *Lorona* complaint

8    does not contain all of the issues that this court allowed to survive the Infilaw Defendants' prior

9    motion to dismiss.  *See* Doc. 71 at 7–16.  And as stated, neither the *Lorona* nor *O'Connor* are

10   public disclosures within the meaning of the FCA, as to Bernier.  *See supra*, note 11.

11   "A subsequently filed *qui tam* suit may continue only to the extent that it is (a) based on

12   facts different from those alleged in the prior suit and (b) gives rise to separate and distinct

13   recovery by the [G]overnment."  *Erickson ex rel. U.S. v. Am. Inst. of Biological Scis.*, 716 F.

14   Supp. 908, 918 (E.D. Va. 1989).  *Lorona* focuses on fraud at the Arizona Summit Law School

15   ("ASLS"), some 2,000 miles away from CSOL.  The *Lorona* allegations as to CSOL are

16   tangential, at best, and generalized to the point of vagueness.  Significantly, the *Lorona* relator

17   attended and worked only at ASLS, so she is an outsider who is without knowledge as to CSOL.

18   In addition, *Lorona* lacks allegations about the PPA executed by CSOL.  Should the court find

19   an FCA violation in this case, the recovery to the Government will be separate and distinct from

20   *Lorona* by virtue of ASLS and CSOL receiving different amounts of student loan monies from

21   the United States Department of Education ("DOE").  *See Erickson*, 716 F. Supp. at 918.

22   *Poteet* relied on *Campbell*, which involved two competing *qui tam* complaints and both

23   of those, as here, involved some level of publicly disclosed allegations.  *Campbell*, 421 F.3d at

24   821.  Thus, *Campbell* further supports the notion that *Lorona* is jurisdictionally defective for

25   purposes of the first-to-file rule.  *See id.*  Of particular importance is *Campbell's* holding that

26   "[i]f [a]first-filed qui tam action [i]s not filed by an original source and is therefore not

27   jurisdictionally cognizable, it does not constitute the first-filed complaint for the purposes of §

28   3730(b)(5)."  *Id.* at 818; *see also U.S. v. Sprint Communications, Inc.*, 855 F.3d 985, 994 (9th

Cir. 2017) (applying *Campbell*).  The *Lorona* relator, like the *Campbell* relator, is not an original source of her allegations.[12]  *See id.* at 822.  So, *Lorona* should reach the same result because a *qui tam* complaint from a non-original source cannot trigger the first-to-file rule.  *See, e.g.*, *id.*

### c.   *Lorona's* initial complaint does not clear Rule 9(b).

Case law also teaches that if a first *qui tam* complaint is legally incapable of serving as a complaint, *see* Fed. R. Civ. P. 9(b); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007), then it does not properly qualify as a "pending action" brought under FCA.  That rule should apply here, just as it has before.  *See Walburn*, 431 F.3d at 972 (finding that earlier filed *qui tam* complaint's failure to comply with Rule 9(b) rendered it legally infirm from inception and thus unable to preempt other actions); *see also Campbell*, 421 F.3d at 825 (holding that "the first-to-file rule of § 3730(b)(5) bars only subsequent complaints filed after a complaint that fulfills the jurisdictional prerequisites of § 3730(e)(4)").  Applied here, Rule 9(b) provides a second and independent basis for this court to decline to apply the first-to-file bar as to Bernier.

In *Walburn*, a case that comes close to all fours with the instant issue, the relator alleged that Lockheed Martin submitted false documents for compensation and incentive payments to the federal government.  *Walburn*, 431 F.3d at 969.  At the trial level, the district court dismissed the *qui tam* complaint under the first-to-file bar.[13]  *Id.*  On appeal, the *Walburn* court compared the relator's allegations to those contained in an earlier-filed *qui tam* case.  *Id.*  The court began its analysis by noting that "[b]oth complaints allege that Lockheed defrauded the government" in violation of the FCA.  *Id.* at 971.  Then the court went on to disagree with the district court, who had found prior that the "broad fraudulent scheme" alleged in the first *qui tam* complaint "encompassed the specific subset of fraud" alleged in the relator's complaint.  *Id.* at 972.

The *Walburn* court framed the issue by stating that "the recognition that the haystack of fraud set forth in [the first *qui tam*] complaint, may, as a literal matter, be said to 'encompass' the needle of the specific fraud [that the relator] seeks to bring to the government's attention,

---

[12] As the *Campbell* court observed, "there is almost no way that this determination can be made" unless actions "are consolidated."  *Campbell*, 421 F.3d at 825.

[13] Ultimately, the Sixth Circuit affirmed the dismissal, but it did because of the public disclosure bar, not the first-to-file bar.  *See Walburn*, 431 F.3d at 976.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    does not answer the question before us: whether such a vague and broadly-worded complaint

2    should be given preemptive effect under § 3730(b)(5)." *Id.*  The *Walburn* court held that the

3    first complaint did not bar the second because its "broad and conclusory allegations" were

4    "legally insufficient under Rule 9(b)" such that "the facts necessary to put the [G]overnment on

5    notice of the fraud" were "conspicuously absent" from the first complaint.  *Id.* at 973.

6         The *Lorona* complaint does not jump over the Rule 9(b) hurdle.  As a preliminary matter

7    and setting aside the fact that this court entered an order striking that complaint, practically all of

8    the allegations in that complaint as to CSOL are plead in the form of "upon information and

9    belief."  *See generally* Doc. 88-3.  But "in general, allegations as to fraud cannot be based

10   merely on information and belief."  *D.H.G. Properties, LLC v. Ginn Companies, LLC*, No. 3:09-

11   cv-735-J-34JRK, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010).  To illustrate, consider:

12        The initial *Lorona* complaint alleges that in violation of 31 U.S.C. § 3729(a)(1), the

13   defendants (**which of them?**) knowingly presented or caused to be presented on false or

14   fraudulent claims or statements (**what claims? what statements?**) to the Government

15   (**specifically to whom?**) for payment or approval under Government contracts (**which**

16   **contracts? when were they entered into?**), including presenting fraudulent documents (**which**

17   **documents? what was false in them?**) for payment.  The defendants (**which of them?**) also

18   conspired with each other (**how?**) to continue to present false claims to the Government and they

19   took certain vert acts (**which acts?**) in furtherance of their conspiracy (**how so?**).  *Walburn*

20   suggests that the failure of *Lorona's* initial complaint to satisfy Rule 9(b) is insufficient to put

21   the Government on notice of fraud in this action.[14]  *See Walburn*, 431 F.3d at 969.

---

[14] If the court disagrees and applies the first-to-file bar, then the appropriate sanction is to dismiss without prejudice.  *See U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 3 (1st Cir. 2015) (relying on *Kellogg* for proposition that "dismissal of a section 3730(b)(5) claim ordinarily should be without prejudice because the claim could be refiled once the first-filed action is no longer pending."); *U.S. v. Medco Health Sols., Inc.*, No. cv-11-684-RGA, 2017 WL 63006, at *11 (D. Del. Jan. 5, 2017) (same).  Significantly, even pre-*Kellogg*, courts were in agreement that § 3730(b)(5) dismissals should be without prejudice.  *See, e.g.*, *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, No. CIV-92-1282 SVW, 2000 WL 33775399, at *3 (C.D. Cal. Jan. 20, 2000); *U.S. ex rel Harris v. Dialysis Corp. of Am.*, No. CIV. JKB-09-2457, 2013 WL 5505400, at *5, n. 8 (D. Md. Oct. 1, 2013).

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

**C.  The Second Amended Complaint States Claims For Relief.[15]**

The Infilaw Defendants mischaracterize the allegations of the second amended complaint.  *See* Doc. 88 at 26.  The allegations concerning admissions practices, prevention of transfers, bar passage, and employment statistics are relevant for context; however, the court need only peek at counts I and II of the second amended complaint to discern that the FCA violations are no longer based on these specific issues.  *See* Doc. 73 at 14–21.

1.  The Infilaw Defendants' continued refusal to produce the PPAs.

It is important to first pause to address the PPA that the Infilaw Defendants attached to the motion to dismiss.  *See* Doc. 88-6.  First, the Infilaw Defendants attempt to cast aspersions on Bernier's credibility by suggesting that the allegations concerning when they executed the PPA have now "morph[ed]."  Doc. 88 at 27.  Remarkably, they cite two paragraphs of the amended complaint, Doc. 48 at 16, that allegedly create a discrepancy.  But there is none.  Paragraphs 54 and 55 of the amended complaint allege that CSOL students could obtain "100% financing" from the Government in 2011 after CSOL attained full accreditation.  *Id.*  The PPA attached to the motion to dismiss plainly shows that that PPA is directed to <u>provisional</u>, not full approval to borrow federal funds.  *See* Doc. 88-6 at 2.  Thus, the attempt to create a credibility issue is both misleading and disingenuous.

Second, the Infilaw Defendants continue to erroneously argue that PPAs are not required to be re-certified annually.  This is an argument of semantics.  Both the PPA attached the second amended complaint, Doc. 73-1, and the PPA that the Infilaw Defendants have now injected into the record, Doc. 88-6, clearly show that PPAs have re-application dates.  So, framing the term as "re-certification" or "re-application" is a collateral distinction of no consequence.  What is more, the fact that there are even two PPAs in the record, Docs. 73-1, 88-6, that cover different time periods demonstrates that there is a re-application for Title IV funds from the DOE.

---

[15] As the court is well-aware, the Infilaw Defendants' motion is *not* one for summary judgment.  *See* Doc. 88.  For purposes of reviewing the motion to <u>dismiss</u>, the court should ignore certain documents that the Infilaw Defendants have injected into the record in an effort to establish certain issues as fact.  *See* Docs. 88-2 (the DOE letter ostensibly used the prove the absence of FCA claims); 88-7 (court documents from prior litigation ostensibly used to prove why Bernier may have joined CSOL).

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

The third and final point on the PPA is more troubling.  The Infilaw Defendants attack the PPA attached to the complaint with phrases like—"it is unsigned" and "[Bernier] gives no explanation as to when or where she obtained it."  Doc. 88 at 30.  The fallacy of these coarse phrases is that the Infilaw Defendants have, for months, played fast and loose with the federal discovery rules.  Simply put, they have refused to produce any PPAs, despite agreeing to do so.[16]  To be clear, the PPA attached to the complaint came from the Infilaw Defendants' own court filings in other federal litigation.  But here, they question its authenticity.  In any event, *qui tam* law does not require a relator to physically possess a Government contract prior to filing suit.  *See U.S. ex rel. Vatan v. QTC Med. Services, Inc.*, 721 F. App'x 662, 663 (9th Cir. 2018) (recognizing that Rule 9(b) does not require a relator to "plead the specific terms" of a contract and that any finding to the contrary would exclude insiders' knowledge of wrongdoing "that few others would be positioned to reveal and solely lack access to the corporate documents").

### 2. There is no *per se* requirement under the FCA for personal, direct knowledge.

The Infilaw Defendants continue to urge this court to re-write the FCA to have it now say that allegations of fraud must be based on personal, direct knowledge.[17]  Doc. 88 at 26–32.  But it is Congress, not the courts, who drafts federal law.  Personal, direct knowledge is not what the FCA demands.  *See, e.g.*, *U.S. ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 618

---

[16] The Infilaw Defendants' position on discovery has been an unguided ship traveling from port to port.  First, they complained that Bernier sought third party discovery before requesting any from them.  Next, they jointly filed the case management report in this action, only to argue that discovery should be stayed when Bernier served discovery on them.  After that, they filed a motion to stay discovery, which this court rejected.  In the interim, they responded to Bernier's discovery requests and, *inter alia*, agreed to produce the PPAs.  After Bernier and Love filed the second amended complaint, they now claim that Bernier's initial discovery requests are moot (still, despite agreeing to produce the PPAs).  And as a last-ditch effort, they apparently intend to, once again, seek to stay discovery.  In spite of all this, the motion to dismiss challenges where Bernier obtained the PPA attached to the second amended complaint and attacks its authenticity.

[17] This rationale is illogical.  Under the Infilaw Defendants' logic, if all relators must be physically present at an institution's entry into a PPA and have "personal, direct knowledge" of the institution's state of mind at that time, then institutions could escape FCA liability for Title IV violations as soon as the PPA "outlives" all persons who were present at that time.  Imagine the fictitious "Acme University," who enters into a PPA with the DOE in 1985.  Surely the Infilaw Defendants do not suggest that in 2085, for example, it would be impossible for Acme University to ever be liable for an FCA claim simply because any persons who would otherwise had "personal, direct knowledge" of Acme University's state of mind in 1985 PPA would be dead in 2085.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1  (6th Cir. 2015) ("Certainly, proof of first-hand knowledge of fraud is *sufficient* to establish direct

2  knowledge. . . . .  But first-hand knowledge is not a *necessary* component of direct

3  knowledge.") (emphasis in original); *U.S. ex rel. Galmines v. Novartis Pharm. Corp.*, 88 F.

4  Supp. 3d 447, 451 (E.D. Pa. 2015) (recognizing that relator does not need "firsthand knowledge"

5  to support FCA claim); *U.S. ex rel. Farmer v. City of Houston*, No. CIV.A. H-03-3713, 2005

6  WL 1155111, at *4 (S.D. Tex. May 5, 2005) ("The direct and independent standard does not

7  require Relator to have direct and independent knowledge of each false claim.").

8          The Eleventh Circuit has already rejected the narrow definition of "knowledge" to which

9  the Infilaw Defendants continue to cling.  *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039,

10  1051 (11th Cir. 2015).  "For liability to attach, the relator must show that the defendant acted

11  'knowingly,' which the [FCA] defines as either 'actual knowledge,' 'deliberate ignorance,' **or**

12  'reckless disregard.'"  *Id.* at 1058 (emphasis added).  Congress added the "reckless disregard"

13  provision to the FCA in 1986, and the addition was designed to capture "the 'ostrich' type

14  situation where an individual has 'buried his head in the sand' and failed to make simple

15  inquiries which would alert him that false claims are being submitted."  S. Rep. 99–345, at 21,

16  reprinted in 1986 U.S.C.C.A.N. 5266, 5286.  "[A]ctual knowledge possessed by individual

17  company employees **or** a conclusion that "the company acted recklessly" based on "the actions

18  of employees or [the company's] systems and structure" is sufficient, under an implied false

19  certification theory, as in this case, to satisfy the FCA's knowledge requirement.  *See, e.g.*, *U.S.*

20  *v. Sci. Applications Intern. Corp.*, 626 F.3d 1257, 1276 (D.C. Cir. 2010).

21          The Infilaw Defendants selectively rely on portions of *U.S. ex rel. Mastej v. Health*

22  *Mgmt. Assocs., Inc.*, 591 F. App'x 693 (11th Cir. 2014) and *Jallali v. Nova Se. Univ., Inc.*, 486

23  F. App'x 765 (11th Cir. 2012).[18]  As an initial matter, *Mastej* was an express certification case,

24  not an implied certification case like here; so, its discussion of FCA knowledge is out of context.

25  *See Mastej*, 591 F. App'x. at 693, n19 ("Given that this case involves an express certification of

26  compliance in the hospital cost reports, we need not and do not express any opinion on the

27

28          [18] The Infilaw Defendants also cite to *U.S. ex rel. Nelson v. Sanford-Brown Ltd.*, 788
F.3d 696 (7th Cir. 2015), Doc. 88 at 28, which the Supreme Court abrogated in *Universal Health
Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016).

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1   required elements of any 'implied certification' theory in FCA cases."). *Jallali* is equally

2   unhelpful.  There, the Eleventh Circuit affirmed dismissal of an FCA complaint because the

3   relator, a student, did not allege that he had *any* knowledge of the defendants' billing practices.

4   *Jallali*, 486 F. App'x. at 766.  Bernier has alleged the opposite. *See, e.g.*, Doc. 73 at 2.

5       Bernier is not required to have direct and specific knowledge of CSOL's mindset when it

6   entered into the initial PPA because scienter may be alleged generally, *see* Fed. R. Civ. P. 9(b),

7   and federal courts in Title IV cases routinely recognize that post-PPA conduct is sufficient to

8   draw the inference that an academic institution never intended to comply with the conditions in

9   the initial PPA. *See, e.g.*, *U.S. ex rel. Miller v. Weston Educ., Inc.*, No. 4:11-cv-00112-NKL,

10  2012 WL 6190307, at *5 (W.D. Mo. Dec. 12, 2012) (denying dismissal of FCA claim because

11  that institution defrauded Government by entering into PPA was sufficient to state a claim).

12      In *Miller*, two relators made allegations of FCA liability against an academic institution

13  based on conduct that, as here, both pre-dated and post-dated the PPA that granted full access to

14  complete financing of student loans. *Id.*  The *Miller* court found it significant that the complaint

15  alleged "widespread [Title IV] violations" because the allegations evinced that the institution

16  "knowingly" violated the conditions in the PPA to which it agreed to comply. *Id. Miller* also

17  undercuts the Infilaw Defendants' argument that because Bernier was not a CSOL employee

18  when CSOL entered into the initial PPA that she cannot, as a matter of law, state a Title IV FCA

19  claim.  As stated above, *Miller* involved two relators, one of whom was employed by the

20  academic institution from 2006 through 2011 (Relator Miller) and the other for five months in

21  2010 (Relator Sillman). *U.S. ex rel. Miller v. Weston Educ., Inc.*, 10 F. Supp. 3d 1046, 1051

22  (W.D. Mo. 2014), *aff'd in part, rev'd in part and remanded*, 784 F.3d 1198 (8th Cir. 2015), *cert.*

23  *granted, judgment vacated*, 136 S. Ct. 2505 (2016), and *aff'd in part, rev'd in part and*

24  *remanded sub nom. U.S. ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494 (8th Cir. 2016).  The

25  *Miller* court was unbothered that the institution employed the relator years after the PPA.

26      The second amended complaint alleges precisely the same caliber of "systemic and

27  deliberate" violations of the PPA that the *Miller* court found sufficient. *See Miller*, 2012 WL

28  6190307 at *5; *see also U.S. v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 453 (W.D. Pa. 2012)

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    (recognizing that FCA scienter can be pleaded generally and holding that because the relator's

2    theory was that there was corporate-wide scheme and the complaint alleged several "red flags"

3    that it was "not necessary to allege separate conduct by each of the affiliated schools"); *cf. U.S.*

4    *v. Chubb Inst.*, No. CIVA 06-3562, 2010 WL 1076228, at *9 (D.N.J. Mar. 22, 2010) (dismissing

5    complaint that failed to alleged systemic and deliberate violations of Title IV but explaining that

6    relator could have survived dismissal if he had provided examples of prohibited practices).

7        The Infilaw Defendants developed an infrastructure to defraud the Government, which

8    began in 2009 and continued through 2016. *See* Doc. 73 at 15.  This included Infilaw accessing

9    CSOL's bank account and wiping out the student loan disbursements from the DOE in order to

10   put those funds in its own bank account(s), despite CSOL's agreement in the PPA to be a

11   fiduciary of federal funds. *Id.*  "[A] relator need not always allege the specific identity of the

12   natural persons within the defendant corporation that submitted the false claims." *Bledsoe*, 501

13   F.3d at 509.  Under *Bledsoe*, it is irrelevant that Bernier does not know the name of the exact

14   person within the Infilaw Defendants corporate structure who wrongfully accessed federal

15   funds.[19]  Infilaw went so far as to attempt to change the loan disbursement schedule at CSOL so

16   that *it*, not CSOL's students, could have earlier access to federal funds.  *See* Doc. 73 at 15.

17       Similarly, the second amended complaint alleges that from 2012 through 2015, the

18   Infilaw Defendants openly instructed faculty and staff to violate copyright laws for law school

19   course books, *id.* at 17, and that despite the requirement to implement a code of conduct to

20   protect against conflicts of interest, CSOL never bothered to do this, *id.*  As a result, the Infilaw

21   Defendants actively recruited key persons from the ABA who were intimately involved with law

22   school accreditation issues while CSOL sought accreditation.  *Id.* at 8.  All of this raises the

23   inference of systemic and deliberate violations of the PPA that did not simply arise as an

24   administrative "oops," but was a fraudulent system implemented by design from the get go

25   wherein the Infilaw Defendants agreed to comply with all PPA conditions when they, in fact,

26

27        [19] Given that transfers are electronically made, it would be highly unlikely that any
person reviewing transactions from a distance could identify the electronic dasher of federal
28   funds, as transactions only appear as just that—transactions—not as a person associated with
     those transactions.

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    had no intention of doing so.  In short, Bernier did not need to be employed by CSOL in 2008 in

2    order to personally observe and become aware of practices that evince such reckless disregard

3    for the obligations of the PPA that it was obvious to anyone that CSOL never had a good faith

4    intention of complying with the PPA.  *See Urquilla-Diaz*, 780 F.3d at 1058.

5        Notwithstanding the foregoing, Bernier, an insider, has the requisite indicia of reliability

6    to support the complaint, in light of applicable case law.  In *Hill v. Morehouse Medical*

7    *Associates,* for example, the Eleventh Circuit held that, despite the absence of particular

8    allegations the defendants submitted the claims to the Government, the plaintiff's allegations

9    had the necessary indicia of reliability because she "was an employee within the billing and

10   coding department"; "was privy to [the defendant's] files, computer systems, and internal billing

11   practices that [were] vital to her legal theory."  *Hill v. Morehouse Med. Associates, Inc.*, No. 02-

12   14429, 2003 WL 22019936, at *3, *5 (11th Cir. Aug. 15, 2003); *see also U.S., ex rel. Powell v.*

13   *Am. Intercontinental Univ., Inc.*, No. CIV.A.1:08-cv- 2277RWS, 2010 WL 2245574, at *3 (N.D.

14   Ga. June 2, 2010) (relying on *Hill* to find indicia of reliability because "[p]laintiffs in the present

15   action were in positions during their employment to gain first hand knowledge of the facts

16   alleged in the Complaint").  Bernier is like the *Hill* insider because she was a CSOL professor

17   who "was privy to CSOL and Infilaw's policies, procedures, and conduct for CSOL's financial

18   aid and admissions practices that are not typically available to a law professor."  Doc. 73 at 2.

19       The Infilaw Defendants rely heavily on *Clausen* to attack the second amended complaint

20   under Rule 9(b).  *See* Doc. 88 at 35, 38, 39 (citing *U.S. ex rel. Clausen v. Lab. Corp. of Am.,*

21   *Inc.*, 290 F.3d 1301, 1309 (11th Cir. 2002)).  While *Clausen* may have, at one time, set an

22   exacting standard for purposes of FCA pleading, as the Fifth Circuit has observed, the Eleventh

23   Circuit has already "moved away from *Clausen's* most exacting language."  *U.S. ex rel. Grubbs*

24   *v. Kanneganti*, 565 F.3d 180, 187 (5th Cir. 2009).  This point is driven home by none other than

25   the Eleventh Circuit itself in *U.S. v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360

26   (11th Cir. 2005), wherein the court held that an FCA complaint met the requisite particularity

27   based on a nurse's allegations that she "*believed* [the hospital] submitted false or fraudulent

28   claims" by billing nurses' services as if performed by a doctor.  *Id.*  Importantly, the *R&F*

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1  *Properties* nurse did not come forward with any details of the contents of actually submitted

2  claims.  *Id.*  Although the *R&F Properties* court did not say as much, in the face of evidence of a

3  billing scheme in which it was likely that fraudulent bills were actually submitted, the court

4  found relatively skimpy details about the bills to be sufficient.  *Id.*  So too should this court.

5  " 'Allegations of date, time or place satisfy the Rule 9(b) requirement that the

6  circumstances of the alleged fraud must be pleaded with particularity, but alternative means are

7  also available to satisfy the rule.' "  *U.S. ex rel. Butler v. Magellan Health Services, Inc.*, 74 F.

8  Supp. 2d 1201, 1215 (M.D. Fla. 1999) (quoting *Durham v. Business Management*

9  *Associates,* 847 F.2d 1505, 1512 (11th Cir. 1988)).  "Courts recognize that if the alleged fraud

10  occurred over an extended period of time and consisted of numerous acts, the specificity

11  requirements are applied less stringently."  *Id.*  "A strict enforcement of Rule 9 would frustrate

12  the purpose of the FCA, so courts allow an exception whereby a plaintiff can plead information

13  that may be available only through discovery."  *Id.*; *see also U.S. ex rel. Prime v. Post, Buckley,*

14  *Schuh & Jernigan, Inc.*, No. 6:10-cv-1950ORL36DAB, 2012 WL 12902916, at *3 (M.D. Fla.

15  Sept. 14, 2012) (noting that Rule 9(b)'s heightened pleading standard may be applied less

16  stringently when specific information about the fraud is solely within the defendant's control).

17  "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provide[s] a

18  reasonable delineation of the underlying acts and transactions allegedly constituting the fraud'

19  such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon

20  which it is based."  *Id.* (external citations omitted).  Rule 9(b) does not require that Bernier plead

21  the specific terms of the PPA.  *See Vatan*, 721 F. App'x at 663 (recognizing that relator need not

22  possess Government contract to maintain *qui tam* claim).  "[T]he specific contractual language .

23  . . [is] immaterial to whether [a] claim is adequately pled."  *Id.*  This authority mutes the

24  argument that Bernier "fails to allege accurate details regarding th[e] [PPA]."  *See* Doc. 88 at 31.

25  The Infilaw Defendants' response to the allegations of the second amended complaint is

26  to simply attack them factually which, of course, is not permitted on a motion to dismiss.  That

27  the Infilaw Defendants simply disagree with the allegations against them is not surprising

28  considering that, predictably, all defendants do.  Noticeably, the Infilaw Defendants do not argue

1    that the complaint fails to give them "fair notice" of the nature of Bernier's claim and the

2    grounds upon which it is based," *Prime*, 2012 WL 12902916 at *3, they simply disagree that

3    Bernier is the *right* person to give them such notice under Rules 9(b) and 8, *see id.*

4         The second amended complaint identifies the false statements, the person(s) who

5    represented the false statements to the Government, where and when the Infilaw Defendants

6    made the statements, and how the statements are fraudulent, much like this court found

7    sufficient in *Inst. of Cardiovascular Excellence.  See* 2015 WL 12866448 at *3–5 (Dalton, J.).

8    No matter, the Infilaw Defendants would likely not be satisfied with the complaint even if

9    alleged every conceivable fact that will ultimately be discovered in this action.

10        Here, the complaint alleges that the Infilaw Defendants (1) presented to the Government

11   for approval, Doc. 73 at 14–21 (for Fall 2008/Spring 2009 and subsequent semesters); (2) false

12   and fraudulent claims, *id.* (PPAs and re-certifications); (3) with knowledge of their falsity, *id.*

13   (intent not to comply with conditions in the PPA based on deliberate ignorance or reckless

14   disregard).  The complaint contains allegations as to the time, place, and substance of the fraud.

15   For example, the complaint alleges that in every semester from Spring 2009 through Fall 2016,

16   CSOL permitted Infilaw to access federal student loan monies in its bank account for which

17   CSOL agreed to be a fiduciary in order to transfer those funds to Infilaw's and collect interest on

18   to use as a "slush fund" for Infilaw.  Doc. 73 at 15–16.  To avoid detection, Infilaw moved these

19   funds back to CSOL's accounts on the eve of the disbursement period to CSOL students.  *Id.*

20   The complaint also identifies Infilaw employees who authorized the transfers.  *Id.*

21        3.   <u>The statute of limitations for counts IV and V are governed by the discovery rule</u>
22             <u>and even that inquiry is so fact specific that it cannot be resolved at the *pleading*</u>
             <u>stage</u>.

23        According to the Infilaw Defendants, counts IV and V are barred because "[a]lthough the

24   basis of [the] claim is unclear" Bernier "does not allege any wrongful conduct that began after

25   2013."  Doc. 88 at 47, 51.  But the second complaint alleges that Bernier left her prior tenured

26   professorship to join CSOL.  *See* Doc. 73 at 2, 23, 24.  Thus, Bernier's claim for relief could not

27   have begun to accrue until she suffered damages, which happened at earliest in 2013.  In Florida,

28   there is a four-year limitations period for negligence and fraud.  § 95.11, Fla. Stat.  "[U]nder

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

Florida's 'last element' rule, actions for negligence do not accrue until the plaintiff suffers some type of damage." *F.D.I.C. v. Stahl*, 89 F.3d 1510, 1522 (11th Cir. 1996).  "Moreover, Florida courts have found that the limitations period does not begin to run until a plaintiff knew or should have known of the injury." *Id.*  The same applies to fraud. *See* § 95.031(2)(a), Fla. Stat.

4.  Bernier and Love properly filed counts IV and V with leave of court.

True, the court's scheduling order states that, "[t]he Court will strictly enforce the deadlines set in this CMSO.  Such deadlines are effective unless modified by a written Order." *See* Doc. 43 at 2.  But by dismissing the amended complaint, the court stated that, "[o]n or before Monday, May 7, 2018, Plaintiff may file a second amended complaint."  In so doing, this court modified its scheduling order concerning the deadline [for Plaintiffs] to file motions to add parties or to amend pleadings from December 1, 2017, to May 7, 2018.  Here, Bernier and Love amended the complaint pursuant to the court's order. *See* Doc. 71 at 20; *see also* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave."). *Id.*  Bernier and Love timely asserted counts IV and V with leave of court.

5.  Bernier states a claim for fraudulent inducement.

Fraud in the inducement must satisfy Rule 9(b). *John Hancock Life Ins. Co. (U.S.A.) v. Soudijn*, No. 8:15-cv-01277T27AEP, 2015 WL 12859315, at *1 (M.D. Fla. Dec. 11, 2015). Heightened pleading under Rule 9(b) means "the who, what, when[,] where, and how: the first paragraph of any newspaper story." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).  Count V satisfies these standards. *See* Doc. 73 at 21–27.  Infilaw and CSOL, through Dean Camille Davidson, Dean Spriggs, and Dennis Stone (*i.e.*, **who**) actively recruited Bernier and represented that CSOL was in compliance with ABA standards when it was not (*i.e.*, **what**).  Recruitment occurred in late 2011/early 2012 and culminated in a March 20, 2012 employment contract (*i.e.*, **when**) while Bernier was employed at another law school (*i.e.*, **where**).  Infilaw and CSOL caused Bernier to justifiably rely on their representations by holding out that they wanted to "deepen" their bench and that she would be a "primary contributor" to CSOL's success, in exchange for a tenured position (*i.e.*, **how**).

**D.  There Is A Common Nucleus Of Fact To Support Supplemental Jurisdiction.**

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1    Section 1367(a) gives courts "the power to exercise supplemental jurisdiction over all

2    claims that arise out of a common nucleus of operative fact with a substantial federal claim."

3    *Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 177

4    F.3d 1212, 1223 (11th Cir. 1999) (quotation marks omitted); *see also United Mine Workers of*

5    *Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a

6    common nucleus of operative fact.").  Defendants argue that Bernier has not established any

7    independent basis for federal jurisdiction over her state claims.  *See* Doc. 88 at 44.  However, *but*

8    *for* the Infilaw Defendants' false submissions to the Government contained in its PPA that it was

9    in full or substantial compliance with the PPA, then Bernier would not have chosen to work at

10   CSOL and lose her tenured status as a law professor, and Love would not have selected to work,

11   and attend, an institution at risk of losing its accreditation.  The symbiotic relationship between

12   CSOL's obligations under the PPA, and its effect on its students and faculty, is comparable to

13   the classic "chicken and egg dilemma."  Without one, there could not be the other.

14       Claims arising from a "common nucleus of operative facts" generally involve "the same

15   witnesses, presentation of the same evidence, and determination of the same, or very similar

16   facts."  *Palmer v Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64 (11th Cir. 1994); *but*

17   *see, e.g.*, *Palazon v. KFC Nat. Mgmt. Co.*, No. 80 C 4916, 1981 WL 376, at *2 (N.D. Ill. Feb.

18   17, 1981) ("The court does not believe *Gibbs'* requirement of a common nucleus of operative

19   facts dictates that the facts giving rise to the state and federal cause of action be identical.").

20       Counts IV and V incorporate the same factual allegations that are incorporated into

21   counts I and II, which allege violations of the FCA.  Doc. 73 at 2–18.  Counts IV and V arise

22   from a common nucleus of operative facts with counts I and II because they share the same

23   factual predicate.  Together, counts I, II, IV, and V, will all necessarily turn on the determination

24   of the same or similar facts as to whether the Defendants complied with their obligations under

25   Title IV.  To hear counts I, II, IV, and V in tandem, will further the court's interest in preserving

26   judicial efficiency and economy.  Thus, the presentation of the same set of facts from the same

27   witnesses will have simultaneous evidentiary effect on all counts.

28

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634

1

2

3

4

**WHEREFORE,** Relator/Plaintiff, BARBARA BERNIER, and Plaintiff, ESE LOVE, pursuant to M. D. Fla. R. 3.01(b), respectfully seek the entry of an order DENYING the motion to dismiss the second amended complaint served by Defendants, INFILAW CORPORATION and CHARLOTTE SCHOOL OF LAW, LLC.

5

6    **DATED** on June 18, 2018

7

8                                Respectfully submitted,

9                                WATSON LLP

10

11                                */s/ Coleman Watson*

12                                **Coleman W. Watson, Esq.**
                                 Florida Bar. No. 0087288

13                                California Bar No. 266015
                                 Georgia Bar No. 317133

14                                New York Bar Reg. No. 4850004
                                 Email: coleman@watsonllp.com

15                                          docketing@watsonllp.com
                                 **Leia V. Leitner, Esq.**

16                                Florida Bar No. 0105621
                                 Email**:** leia@watsonllp.com

17                                **Ronika J. Carter, Esq.**
                                 Florida Bar No. 0122358

18                                Email: ronika@watsonllp.com

19                                **WATSON LLP**
                                 189 S. Orange Avenue

20                                Suite 810
                                 Orlando, FL 32801

21                                Telephone: 407.377.6634
                                 Facsimile: 407.377.6688

22
                                 *Attorneys for Plaintiffs,*
23                                *Barbara Bernier and Ese Love*

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2018, pursuant to Fed. R. Civ. P. 5(b)(2)(E), I served an electronic copy of the foregoing document on the following counsel of record in this proceeding:

**LAW OFFICES OF MARK L. HORWITZ, P.A.**
Vincent A. Citro, Esq.
Email: vince@mlhorwitzlaw.com
*Attorneys for Defendants,*
*Infilaw Corporation and Charlotte School of Law, LLC*

**COOLEY, LLP**
David Mills, Esq.
Email: dmills@cooley.com
Mazda K. Anita, Esq.
Email: mantia@cooley.com
Erin Estevez, Esq.
Email: eestevez@cooley.com
Scott Stemetzki, Esq.
Email: sstemetzki@cooley.com
*Attorneys for Defendants,*
*Infilaw Corporation and Charlotte School of Law, LLC*

**CARLTON FIELDS JORDEN BURT, P.A.**
Johanna W. Clark, Esq.
Email: jclark@carltonfields.com
*Attorneys for Defendants,*
*American Bar Association*

**SIDLEY AUSTIN LLP**
Anne E. Rea, Esq.
Email: area@sidley.com
Steven J. Horowitz, Esq.
Email: shorowitz@sidley.com
Tacy F. Flint, Esq.
Email: tflint@sidley.com
Benjamin I, Friedman, Esq.
Email: benjamin.friedman@sidley.com
*Attorneys for Defendants,*
*American Bar Association*

**UNITED STATES ATTORNEY'S OFFICE**
Jeremy Bloor, Esq.
Email: jeremy.bloor@usdoj.gov

*/s/ Coleman Watson*
**Coleman W. Watson, Esq.**

WATSON LLP
189 S. Orange Avenue, Suite 810
Orlando, FL 32801
Telephone: 407.377.6634